UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

PLITEQ, INC.,
a Canadian corporation, and
PLITEQ BUILDING MATERIALS, LLC,
an Emirati corporation,

        Plaintiffs,

v.

MAGED MOSTAFA,
an individual,
        Defendant.
_____/

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiffs, Pliteq, Inc. and Pliteq Building Materials, LLC, through undersigned counsel, hereby sues Defendant MAGED MOSTAFA, and alleges as follows:

### Parties, Jurisdiction, and Venue

1.  Plaintiff Pliteq, Inc. ("Pliteq") is a corporation organized under the laws of the Province of Ontario, Canada, with its principal place of business in Toronto, Ontario, Canada.

2.  Plaintiff Pliteq Building Materials, LLC, ("PBM"), an affiliate of Pliteq, is a limited liability company organized under the laws of the United Arab Emirates, with its principal place of business in Dubai, United Arab Emirates.  (Pliteq and PBM may be referred to collectively as "Plaintiffs").

3.  Defendant Maged Mostafa ("Mostafa") is an individual residing, on information and belief, in Dubai, United Arab Emirates.

4.      Plaintiffs have been forced to bring this action seeking injunctive and other relief to protect their highly proprietary, confidential and trade secret information ("Information"). Mostafa, a disgruntled former employee, has breached his fiduciary duties and obligations to Plaintiffs, including the duty to protect the Information, by among other misconduct, threatening to disclose the Information to Plaintiffs' competitors in the United States. Plaintiffs seek injunctive relief to protect the Information, and ensure that its business is not irreparably harmed by the unauthorized, threatened disclosure of information to Pliteq's competitors in the United States.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and the principles of supplemental jurisdiction pursuant to U.S.C. § 1367. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

6.      This Court has personal jurisdiction over Defendant who has committed, and threatened to commit, tortious acts or omissions within this State; has committed, and threatened to commit, tortious injury in this State caused by an act or omission outside this State and regularly does or solicits business, or engages in other persistent courses of conduct, or derives substantial revenue from goods, purchased, used or consumed or services rendered in this State. This Court also has personal jurisdiction over Defendant, pursuant to Fed. R. Civ. P. 4(k), because (1) Plaintiffs' claims arise under federal law; (2) the Defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction comports with due process.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3).

8.      All conditions precedent to the bringing of this action have been satisfied, performed or excused.

COFFEY | BURLINGTON
2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

**PLITEQ AND PBM**

9.      Pliteq is a successful engineering services and manufacturing firm, employing more than 200 people, and operating its own state-of-the-art manufacturing facility for recycled rubber products in Toronto, Canada.

10.      Pliteq is widely recognized as an industry leader in sound reduction technology. It manufactures and sells a line of proprietary sound reduction products under the "GenieMat" brand, which are used to reduce sound transmission in residential, high-rise buildings throughout the world.

11.      Among Pliteq's 200 employees are more than 50 engineers and sales team support members stationed throughout major metropolitan areas in, among other countries, the United States and United Arab Emirates.

12.      Indeed, Pliteq's success in establishing a market for its products and services in South Florida's highly competitive construction industry has made it a litigation target for competing manufacturers and distributors of competing products. *See, e.g., Ecore Int'l, Inc. v. Paul Downey, et al.*, Case 5:11-cv-06843-RBS (E.D. Pa. 2011); *Ecore Int'l, Inc. v. Paul Downey et al.*, Case No. 5:12-cv-02729 (E.D. Pa. 2012); *Marjam Supply Co. of Fla, LLC v. Pliteq Inc., et al.*, Case No. 15-24363-CIV (S.D. Fla. 2015); *Pliteq, Inc. v. Marjam Supply Co. of Fla.*, Case No. 19-cv-24095 (S.D. Fla. 2019).

13.      Approximately 65% of Pliteq's annual revenues derive from projects in the United States, including projects in the South Florida area.

14.      As well, Pliteq's primary competitors also operate internationally, with substantial operations based in the United States.   Among others, Regupol America LLC and Ecore

COFFEY | BURLINGTON
2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

International, Inc., based in Pennsylvania, actively market their products throughout the United States and in South Florida.

15.     The success of Pliteq's products results, in large part, from the extensive engineering research and development behind its products and manufacturing processes.  With new inventions under development at all time, and multiple patents already registered in the United States and worldwide,  Pliteq's engineers have completed thousands of laboratory tests, with rigorous testing continuing on a monthly basis.

16.     Pliteq's research and development, design documents, formulas, manufacturing and facility plans and operations, and testing data is highly confidential and proprietary, extremely valuable and important to its business and reputation.  This critical information includes Pliteq's customer data, including price lists, customer lists and contacts, marketing information and target project data.  (Collectively, "Information").

**MOSTAFA'S EMPLOYMENT AND ACCESS TO INFORMATION**

17.     Mostafa is a disgruntled, former high-level employee of PBM.

18.     He was terminated for cause on or about November 21, 2023, following an investigation that disclosed, among other misconduct, that Mostafa had breached his duties and obligations to Pliteq through an authorized, massive download of Pliteq's Information.  Mostafa has failed and refused to return the Information to Pliteq, or certify its destruction.  Instead, he has persisted in retaining the Information on personal data accounts, which he has sought to conceal from Pliteq, while threatening (directly and indirectly) to disclose or sell the Information to Pliteq's competitors.

19.     Mostafa held various managerial positions throughout the segments of Pliteq's business.  He served as PBM's General Manager from 2018 to 2023.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

20.     He also served as a member of Pliteq's Corporate Executive Counsel from April 17, 2020 to 2023, and as Pliteq's Vice President, Corporate Development and Marketing, with responsibility for leading, managing and directing all of the strategy, business and marketing related activities for Pliteq worldwide.

21.     As well, Mostafa served as Pliteq's acting Director, Rail Business Unit from March 25, 2021 to 23, responsible for team development and strategy.

22.     Mostafa was employed as PBM's General Manager pursuant to a written employment contract beginning on March 1, 2018, attached as Exhibit "A" hereto.   The employment contract contained a strict confidentiality provision prohibiting the use or disclosure of PBM's confidential and trade secret information, specifically including "corporate strategy, business development plans, product designs, intellectual property, business contacts, terms of business with customers/suppliers or potential customers/suppliers, annual budgets, management accounts and other financial information[;]" "any confidential report or research undertaken by [PBM] before or during the course of [Mostafa's] employment[;]" "names and contact details of the individuals, clients, or partners with whom [PBM] does business[;]" and "[i]nformation designated as confidential by [PM], or which [Mostafa] knows or should know to have been supplied by the Company subject to any obligation of confidentiality."

23.     As further acknowledgement of the sensitivity of his position, Mostafa executed a stand-alone confidentiality agreement with Pliteq (Exhibit "B" hereto), covenanting to use Pliteq's Information "solely for the purpose of reasonably completing his or her employment or contractual duties, as applicable," and to maintain it "in confidence," and "not, directly or indirectly, disclose any Information to any third party or otherwise give any third party access to any Information, under any circumstances whatsoever, unless the Company's prior written approval is obtained."

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

24.     Further, as a member of Pliteq's Corporate Executive Board, Mostafa had knowledge of Pliteq's confidential and trade secret Information, including its corporate strategies, customer lists, sales forecasts, global budgets, product plans and designs, price lists, and cash flow forecasts. He also had access to Pliteq's Google Cloud-based storage system, situated in the United States, on which the Information was maintained.

25.     Mostafa also had access to Pliteq customer information database, called Netsuite, which is password-protected and contains non-public Information about Pliteq's projects, its marketing targets and prospective business opportunities.

26.     Pliteq's Information is all related to its business, the sound reduction products and engineering services Pliteq offers in interstate and foreign commerce.

27.     Mostafa's contractual confidentiality provisions were two of many measures Pliteq and PBM took to preserve the confidential nature of the Information to which Mostafa had access in his positions as General Manager and member of the Corporate Executive Committee. In addition to password-protecting access to its Google Cloud-based servers, Pliteq and PBM assign passwords to the limited employees given access to Netsuite, Pliteq's proprietary customer information database, and EchoOne, Pliteq's proprietary database of testing information for its sound reduction products, each of which are hosted on separate servers.

28.     As further information security measures, Pliteq and PBM enforce Strong Passwords and Two Factor Authentication to protect access to Pliteq systems.  Corporate antivirus and anti-phishing systems are also in place to protect Pliteq and PBM's data from being accessed improperly.   IT   personnel   are   regularly   engaged   to   audit   vulnerabilities   in Pliteq and PBM's systems; and physical access to PBM and Pliteq's offices is restricted by keycard access.  PBM and Pliteq promptly terminate departing employees' access to their email,

COFFEY | BURLINGTON
2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

customer and testing databases, and work-related software applications containing their Trade Secret information.

### MOSTAFA'S MISCONDUCT AND TERMINATION

29.     In or about September of 2023, issues came to a head with Mostafa's employment. A performance review in September of 2023 addressed critical issues related to the failure of PBM, under Mostafa's leadership, to reach conservative revenue targets that had been set as part of Mostafa's employment arrangement.

30.     Then, in response to a routine request to account for his company-related expenses, Mostafa began acting erratically. In particular, and among other concerning behavior, Mostafa demanded that PBM immediately pay advances on his bonuses, as well as accrued vacation and sick time.

31.     Finally, Pliteq learned in late October of 2023, that Mostafa had unilaterally requested a mass download of Pliteq Information, which the Company maintained on its password-restricted Google Business Workspace.  He then downloaded the data, consisting of more than 76 gigabytes of data.

32.     This unauthorized download, coupled with Mostafa's unusual and hostile demands for payment, triggered concerns that Mostafa would imminently depart PBM, potentially with PBM's Information, to use for his own personal gain and to PBM and Pliteq's disadvantage.

33.     Based on these concerns, Plaintiffs promptly commenced an internal investigation into Mostafa's activity. The investigation revealed that Mostafa had, without any justification, basis, or prior approval, recently used a third-party service through Google to download a treasure trove of confidential and trade secret Information, including the entirety of his @pliteq.com email

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

account; Pliteq's global corporate budgets; product plans; flooring tile designs; alloy product designs; customer lists; price lists; industry contact lists; cashflow forecasts; and sales forecasts, as well as marketing analyses, business plans, and technical information, such as testing data, product plans, product design documents, product formulas and manufacturing processes.

34.     The revelation of Mostafa's unauthorized mass-download of Plaintiffs' most sensitive financial and trade secret Information prompted an immediate suspension of Mostafa's access to all of Pliteq's systems, data and Information.  Mostafa was notified of the investigation and suspension in-person and in written correspondence dated October 31, 2023.

35.     At the in-person meeting at PBM's offices notifying  Mostafa of the suspension, Mostafa admitted that he had downloaded the Information to a personal cloud-based account, and refused to confirm he would return it or refrain from using it.

36.     The Information Mostafa downloaded would be invaluable in the hands of Pliteq's U.S. and international competitors.

37.     The October 31, 2023 correspondence included a written demand for the return of Mostafa's company-issued laptop and phone, as well as Mostafa's password to a company-issued laptop, together with a return of any and all company documents in Mostafa's possession.

38.     Mostafa did not cooperate with the investigation or comply with his employer's demands for the return of the Information. Instead, Mostafa took affirmative steps after being notified of his suspension to cover his tracks and sabotage Pliteq and PBM's investigation of his misconduct.

39.     First, Mostafa absconded with his company-issued phone. Then, when Pliteq and PBM recovered a company-issued laptop from PBM's office in Dubai, they learned that Mostafa had lodged a baseless criminal complaint alleging that the laptop had been stolen. Subsequently,

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

Mostafa held himself out as an employee in good standing to contact PBM's Dubai-based financial institution and make changes to PBM's account, resulting in PBM being locked out of the account.

40.     As well, an initial forensic review of the contents of the laptop confirm that Information was downloaded from the Google Takeout request, and saved into files on the laptop with a DropBox path, indicating that the Information has been synchronized to a personal DropBox account accessible from other devices.

41.     Mostafa's employment was terminated on November 21, 2023.

42.     Pliteq has been forced to expend significant resources to address Mostafa's misconduct, and has otherwise suffered harm as its direct and proximate result.

43.     All conditions precedent to the bringing of this action have been satisfied, performed, excused, waived or would be futile.

44.     Pliteq and PBM have been obligated to retain undersigned counsel and are obligated to pay their reasonable attorney's fees.

**COUNT I**

**<u>MISAPPROPRIATION OF TRADE SECRETS UNDER<br>THE DEFEND TRADE SECRETS ACT</u>**

45.     Pliteq and PBM incorporate the allegations in Paragraphs 1 through 44, above, as if set forth herein.

46.     This is an action for misappropriation of trade secrets pursuant to 18 U.S.C. § 1836, et. seq.

47.     Under 18 U.S.C. § 1836(b), the owner of a misappropriated trade secret may bring a civil action if the trade secret relates to a product or service used in, or intended for use in, interstate or foreign commerce.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

48.     18 U.S.C. § 1836(b)(3) authorizes a wide range of remedies for misappropriation, including (a) an injunction to prevent actual or threatened misappropriation; (b) an award of damages; (c) an award of exemplary damages if the trade secret was willfully and maliciously appropriated; and (d) an award of attorney's fees if the trade secret was willfully and maliciously appropriated.

49.     The Information accessed and downloaded by Mostafa without authorization constitutes Trade Secrets owned by Pliteq.  The Trade Secrets include

(a) financial documents such as Pliteq's budgets, monthly revenue and order details by customer, cashflow forecasts, sales forecasts and price lists;

(b) proprietary marketing documents, such as customer lists, industry contact lists, marketing analyses, and business plans; and

(c) technical information, such as testing data, product plans, product design documents, product formulas and manufacturing processes.

50.     On information and belief, Mostafa has accessed and obtained, without authorization, additional Information from Pliteq's Netsuite and EchoOne's systems, which is also Trade Secret.

51.     The Trade Secrets are information that derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.  This includes, but is not limited to Pliteq's competitors in the US market.

52.     Pliteq and PBM took reasonable measures to preserve the Trade Secrets, and not disclose them to third parties.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

53.     The Trade Secrets are related to products and services used, and intended to be used, in interstate and foreign commerce.

54.     Mostafa misappropriated Plaintiffs' Trade Secrets by improper means. Specifically, Mostafa performed a mass download of the Trade Secret Information without Plaintiffs' express or implied consent; without any legitimate business purpose; with the knowledge that the Trade Secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and/or limit their use; and for his own personal benefit, to Plaintiffs' detriment.

55.     Mostafa has failed and refused to return the Trade Secret Information to Pliteq, to certify its destruction or confirm it would not be disclosed without Pliteq's authorization.  Instead, he has threatened, directly and indirectly, to disseminate the Information for improper purposes.

56.     Mostafa's conduct has proximately caused damage to Plaintiffs.

57.     As well, Mostafa's misconduct, if not promptly stopped and enjoined, will result in further irreparable harm to Plaintiffs, for which there is no adequate remedy at law.

WHEREFORE, Plaintiffs request entry of judgment against Mostafa for preliminary and permanent injunctive relief enjoining Mostafa from possessing, using or disclosing Pliteq's Information (including but not limited to injunctive relief in the form of independent verification that none of Pliteq and PBM's Trade Secrets remain in Mostafa's possession, custody, or control, or the possession, custody, or control of any entity with which he is affiliated); monetary damages, disgorgement, and the return of Plaintiffs' Trade Secrets; punitive damages; damages addressing the consequences of Mostafa's misconduct, including but not limited to any lost profits, business loss or interruption suffered by Plaintiffs, and an award of attorney's fees, interest, and costs, along with any and all further relief the Court deems proper.

COFFEY | BURLINGTON
2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

## COUNT II

## UNFAIR COMPETITION

58.     Pliteq and PBM incorporate the allegations in Paragraphs 1 through 44, above, as if set forth herein.

59.     This is an action for unfair competition.

60.     Mostafa has improperly and without authorization accessed and downloaded Pliteq's confidential, proprietary and trade secret Information.  The Information includes the entirety of Mostafa's @pliteq.com email account; Pliteq's global corporate budgets; product plans; flooring tile designs; alloy product designs; customer lists; price lists; industry contact lists; cashflow forecasts; testing data, and sales forecasts.

61.     On information and belief, Mostafa has accessed and obtained, without authorization, additional Information from Pliteq's Netsuite and Enstar's systems, which is also Trade Secret.

62.     The Trade Secrets are information that derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.  This includes, but is not limited to Pliteq's competitors in the US market.

63.     Pliteq and PBM took reasonable measures to preserve the Trade Secrets, and not disclose them to third parties.

64.     The Trade Secrets are related to products and services used, and intended to be used, in interstate and foreign commerce.

65.     Mostafa misappropriated Plaintiffs' Trade Secrets by improper means. Specifically, Mostafa performed a mass download of the Trade Secret Information without Plaintiffs' express

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

or implied consent; without any legitimate business purpose; with the knowledge that the Trade Secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and/or limit their use; and for his own personal benefit, to Plaintiffs' detriment.

66.     Mostafa has failed and refused to return the Trade Secret Information to Pliteq, to certify its destruction or confirm it would not be disclosed without Pliteq's authorization. Instead, he has threatened, directly and indirectly, to disseminate the Information for improper purposes.

67.     Mostafa's conduct has proximately caused damage to Plaintiffs.

68.     As well, Mostafa's misconduct, if not promptly stopped and enjoined, will result in further irreparable harm to Plaintiffs, for which there is no adequate remedy at law.

69.     Mostafa's conduct constitutes unfair competition, and is not permitted.

WHEREFORE, Plaintiffs request entry of judgment against Mostafa for preliminary and permanent injunctive relief enjoining Mostafa from possessing, using or disclosing Pliteq's Information (including but not limited to injunctive relief in the form of independent verification that none of Pliteq and PBM's Trade Secrets remain in Mostafa's possession, custody, or control, or the possession, custody, or control of any entity with which he is affiliated); monetary damages, disgorgement, and the return of Plaintiffs' Trade Secrets; punitive damages; damages addressing the consequences of Mostafa's misconduct, including but not limited to any lost profits, business loss or interruption suffered by Plaintiffs, and an award of attorney's fees, interest, and costs, along with any and all further relief the Court deems proper.

## COUNT II

## INJUNCTIVE RELIEF

70.     Plaintiffs repeat and re-allege Paragraphs 1 through 41 as if set forth fully herein.

71.     This is an action for injunctive relief.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

72.     As alleged herein, the Trade Secrets misappropriated by Mostafa would be invaluable to any number of Plaintiffs' competitors.

73.     Plaintiffs will suffer irreparable injury if Mostafa has or continues to disclose the Trade Secrets to Plaintiff's competitors, for which Plaintiffs have no adequate remedy at law.

74.     If not enjoined, Mostafa will continue to violate the terms of his agreements with Plaintiffs, including by directly or indirectly publishing, disclosing, or using Plaintiffs' Trade Secrets to Plaintiffs' competitors, for Mostafa's personal gain.

75.     Plaintiffs seek an injunction preventing Mostafa from transferring, using, or disclosing any Trade Secrets belonging to Plaintiffs for Mostafa's benefit or the benefit of any competitor of Plaintiffs.

76.     Plaintiffs further seek an injunction requiring Mostafa to return to Plaintiffs any Trade Secrets remaining in his possession, custody, or control

WHEREFORE, Plaintiffs request entry of judgment against Mostafa for preliminary and permanent injunctive relief enjoining Mostafa from possessing, using or disclosing Pliteq's Information (including but not limited to injunctive relief in the form of independent verification that none of Pliteq and PBM's Trade Secrets remain in Mostafa's possession, custody, or control, or the possession, custody, or control of any entity with which he is affiliated); and an award of attorney's fees, interest, and costs, along with any and all further relief the Court deems proper.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues and claims so triable.


Dated:  December 22, 2023.

Respectfully submitted,

By: _/s/ *Kevin C. Kaplan*_

**Kevin C. Kaplan, Esq.**
Florida Bar No. 933848
kkaplan@coffeyburlington.com
**Jared W. Whaley, Esq.**
Florida Bar No. 107774
jwhaley@coffeyburlington.com
**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive, Penthouse One
Miami, Florida  33133
Telephone: (305) 858-2900
Facsimile:  (305) 858-5261

*Counsel for Plaintiffs*