**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-CV-24868-LENARD/Elfenbein

**PLITEQ, INC.**, *et al.*,

       Plaintiffs,

v.

**MAGED MOSTAFA**,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on three motions: (1) Plaintiff Pliteq, Inc. ("Pliteq") and Plaintiff Pliteq Building Materials, LLC ("PBM")'s Motion for Entry of Final Default Judgment ("Motion for Default Judgment"), ECF No. [25]; (2) Defendant Maged Mostafa's Motion to Vacate Clerk's Entry of Default and to Quash Service of Process ("Motion to Vacate and Quash"), ECF No. [27]; and (3) Defendant's Motion to Dismiss for Lack of Personal Jurisdiction ("Motion to Dismiss"), ECF No. [45]. The Honorable Joan A. Lenard referred all three motions to me "for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)."[1] *See* ECF No. [29]; ECF No. [52]. For the reasons explained below, I recommend that: (1) the Motion for Default Judgment,

---

[1] Judge Lenard also referred to me Plaintiffs' Verified Motion for Entry of TRO and Preliminary Injunction and Request to Expedite ("Motion for TRO and Preliminary Injunction"), ECF No. [50], for a Report and Recommendation. *See* ECF No. [52]. Because there are unresolved issues of fact central to the resolution of the Motion for TRO and Preliminary Injunction, the Court has set it for an evidentiary hearing on July 3, 2024, ECF No. [61]. *See, e.g.*, *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312 (11th Cir. 1998) ("[W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held."); *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1538 (11th Cir. 1989) ("An evidentiary hearing is not always required before the issuance of a preliminary injunction. Where the injunction turns on the resolution of bitterly disputed facts, however, an evidentiary hearing is normally required to decide credibility issues.") (citation omitted)). After that hearing, the Court will issue a separate Report and Recommendation on the Motion for TRO and Preliminary Injunction.

**ECF No. [25]**, be **DENIED**; (2) the Motion to Vacate and Quash, **ECF No. [27]**, be **GRANTED in part** and **DENIED in part**; and (3) the Motion to Dismiss, **ECF No. [45]**, be **DENIED**.

## I.     BACKGROUND

This case arises out of a dispute between an employer (Pliteq and PBM, collectively "Plaintiffs") and a former employee (Defendant).  According to its Complaint,[2] Pliteq is "a successful engineering services and manufacturing firm" that is "widely recognized as an industry leader in sound reduction technology."  *See* ECF No. [1] at 3.  Pliteq is a Canadian company, but it employs people in many other countries, including the United States and the United Arab Emirates ("UAE").  *See* ECF No. [1] at 3.  "Approximately 65% of Pliteq's annual revenues derive from projects in the United States, including projects in the South Florida area," and "Pliteq's success in establishing a market for its products and services in South Florida's highly competitive construction industry has made it a litigation target for competing manufacturers and distributors of competing products."  *See* ECF No. [1] at 3.  "[E]xtremely valuable and important to" Pliteq's "business and reputation" is "highly confidential and proprietary" data and information related to research, development, design, formulas, manufacturing, facility plans, operations, testing, and customer details like price lists, customer lists, contacts, marketing material, and target project particulars.  *See* ECF No. [1] at 4.

PBM is an affiliate of Pliteq based in and organized under the laws of the UAE.  *See* ECF No. [1] at 2.  Defendant is a "former high-level employee of PBM" who lives in Dubai.  *See* ECF No. [1] at 1, 4.  Specifically, Defendant "held various managerial positions," including as "PBM's

---

[2] Because this Report and Recommendation deals with a motion for default judgment and a motion to dismiss, the facts Plaintiffs allege in the Complaint are taken as true. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . [which are] assumed to be true."); *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff.").

CASE NO. 23-CV-24868-LENARD/Elfenbein

General Manager from 2018 to 2023," "a member of Pliteq's Corporate Executive Counsel" from 2020 to 2023, "Pliteq's acting Director, Rail Business Unit . . . responsible for team development and strategy" from 2021 to 2023, and "Pliteq's Vice President, Corporate Development and Marketing." *See* ECF No. [1] at 4–5. Defendant "was employed as PBM's General Manager pursuant to a written employment contract" that "contained a strict confidentiality provision prohibiting the use or disclosure of PBM's confidential and trade secret information." *See* ECF No. [1] at 5. Defendant also "executed a stand-alone confidentiality agreement with Pliteq" in which he agreed "to use Pliteq's proprietary information 'solely for the purpose of reasonably completing his or her employment,'" "to maintain it 'in confidence,'" and to "'not, directly or indirectly, disclose'" it. *See* ECF No. [1] at 5.

Defendant was terminated from his employment with Plaintiffs in November 2023. *See* ECF No. [1] at 4. Plaintiffs allege that Defendant's termination resulted from his "massive download" of Pliteq's proprietary information that he has kept on his "personal data accounts" and has "failed and refused to return" or destroy, instead "threatening (directly and indirectly) to disclose or sell" the information to Pliteq's competitors. *See* ECF No. [1] at 4. Plaintiffs also allege that Defendant has "admitted that he . . . downloaded the [i]nformation to a personal cloud-based account" but has failed to "cooperate" with their investigation into the downloads, instead taking "affirmative steps . . . to cover his tracks and sabotage" the investigation. *See* ECF No. [1] at 8.

As a result, Plaintiffs filed this action against Defendant in December 2023. *See generally* ECF No. [1]. They allege three counts: misappropriation of trade secrets pursuant to 18 U.S.C. § 836 (Count I), unfair competition under Florida common law (Count II), and injunctive relief

(Count III).[3]  *See* ECF No. [1] at 9–13.  They request both monetary and punitive damages, among other forms of damages, along with an injunction that prevents Defendant "from transferring, using, or disclosing" their trade secrets and requires him to return to them any trade secrets "remaining in his possession, custody, or control."  *See* ECF No. [1] at 13–14.

Because Defendant lives in Dubai, Plaintiffs asked the district court to authorize alternative service of process under Federal Rule of Civil Procedure 4(f)(3).  *See* ECF No. [4].  Specifically, Plaintiffs requested permission to serve Defendant "by e-mail to [him] and his counsel of record in the United Arab Emirates."  *See* ECF No. [4] at 1.  Plaintiffs asserted that email service would be reliable because "Defendant [had been] actively participating in legal proceedings in Dubai between himself and Pliteq, including certain proceedings initiated by Defendant," and Plaintiff had been "communicat[ing] with Defendant's UAE-based counsel . . . via email."  *See* ECF No. [4] at 3.

The Court denied Plaintiffs' request without prejudice because it lacked additional assurances regarding the accuracy and ownership of the email address and the existence of an agreement between the parties to receive legal notices via email.  *See* ECF No. [11] at 4.  The Court was also "unclear on whether Defendant's UAE-based counsel responded or otherwise acknowledged receipt of the" emails Plaintiffs claimed to have sent to those email addresses.  *Id.* at 5.  But it explicitly noted that Plaintiffs could "amend" their request "and address the issues outlined by the Court," including by providing proof that Defendant's UAE-based counsel had received the example emails or that a "UAE-based Power of Attorney" connected with one of the email addresses "turn[ed] the UAE-based Attorney into a registered agent responsible for

---

[3] The Complaint contains two "Count II" headings.  *See generally* ECF No. [1].  The Court interprets the count seeking injunctive relief as Count III.

accepting service of foreign complaints filed against Defendant." *See* ECF No. [11] at 5–6 & nn.3–4.

Plaintiffs did not amend their request or provide that proof.  Instead, they attempted to serve Defendant under Federal Rule of Civil Procedure 4(f)(2)(A) by "effectuat[ing] service on Defendant as prescribed by the UAE's law for service in an action in its courts of general jurisdiction." ECF No. [21] at 1–2; *see also* ECF No. [15]; ECF No. [17].  Plaintiffs asserted that the "process for serving legal notice under UAE law requires a written application to the Notary Public at Dubai Courts to serve a legal notice to a counterparty.  Once the Notary Public issues the legal notice, a third-party company assigned by the Dubai Courts, known as a bailiff, can serve the notice personally, by text message, or by e-mail." *See* ECF No. [21] at 2 (citations omitted).  They asserted that "[f]ollowing a written application . . . on behalf of PBM, the Notary Public at Dubai Courts issued a legal notice of this action, including the Complaint," which was then "validly served by the bailiff via text message . . . and by e-mail" in February 2024.  *See* ECF No. [21] at 2.

Based on that service of process and Defendant's failure "to appear or otherwise respond to the Complaint," Plaintiffs moved for clerk's entry of default, *see* ECF No. [21], which was entered, *see* ECF No. [22].  Plaintiffs then filed their Motion for Default Judgment.  *See* ECF No. [25].  In the Motion for Default Judgment, Plaintiffs argue that the factual allegations in the Complaint establish Defendant's liability for misappropriation of trade secrets and unfair competition.  *See* ECF No. [25] at 5–12.  They also argue that permanent injunctive relief is warranted because they meet the four-part test used to determine whether permanent injunctive relief is appropriate.  *See* ECF No. [25] at 12–14.

Six days after Plaintiffs filed their Motion for Default Judgment, Defendant filed his Motion to Vacate and Quash "[p]ursuant to Federal Rules of Civil Procedure 4(f), 12(b)(5), and 55(c)." *See* ECF No. [27] at 1. In the Motion to Vacate and Quash, Defendant argues that "[s]ervice of process . . . was insufficient under Rule 4(f)(2)(A)" because "the record lacks evidence that Plaintiffs' named process server . . . was engaged according to . . . the UAE's laws and procedures." *See* ECF No. [27] at 4–6. Specifically, Defendant argues Plaintiffs failed to establish that a Dubai court authorized the service of process, either generally or "with respect to this matter," or that a Dubai court authorized its bailiff as a process server. *See* ECF No. [27] at 6–8. Defendant argues that, because service of process was not proper, his default was neither culpable nor willful, so good cause exists to vacate the clerk's entry of default. *See* ECF No. [27] at 8–10. Defendant also argues that vacating the default would not prejudice Plaintiffs because they still have time to effectuate service properly and set the case in motion. *See* ECF No. [27] at 10–11.

About a month after filing the Motion to Vacate and Quash, Defendant filed the Motion to Dismiss "[p]ursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure." *See* ECF No. [45] at 1. In the Motion to Dismiss, Defendant argues that the Court lacks personal jurisdiction over him because the "Complaint fails to establish any substantial connection between Defendant's alleged conduct and the state of Florida or the United States as a whole." *See* ECF No. [45] at 1. He argues Florida's long-arm statute does not cover him, specifically arguing that there is no general jurisdiction over him under Florida's long-arm statute because he "did not commit tortious acts in or directed to Florida" and that there is no specific jurisdiction over him under Florida's long-arm statute because "Plaintiffs fail to allege physical property damage or personal bodily injury occurring in Florida." *See* ECF No. [45] at 3–8. Defendant also argues that the national

long-arm statute does not cover him because he "does not conduct activities in the United States." *See* ECF No. [45] at 8–10.  And Defendant argues that, even if the long-arm statutes authorized personal jurisdiction over him, he "does not maintain sufficient minimum contacts with Florida or the United States" to satisfy jurisdictional due process requirements.  *See* ECF No. [45] at 10–11.

## II.    LEGAL STANDARDS

### A.    Entry of Clerk's Default and Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55 (a).  After the clerk enters a default, the party seeking default "must apply to the court for a default judgment."  Fed. R. Civ. P. 55 (b)(1); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) ("When a defendant has failed to plead or defend, a district court may enter judgment by default.").  "While a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law.  Entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered."  *Surtain*, 789 F.3d at 1245 (cleaned up).

The Eleventh Circuit has "interpreted the standard" for evaluating whether a sufficient basis for default judgment exists "as being akin to that necessary to survive a motion to dismiss for failure to state a claim."  *Id.*; *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.").  Of course, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "This

plausibility standard is met 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Surtain*, 789 F.3d at 1245 (quoting *Iqbal*, 556 U.S. at 678).

## B.    Vacate Default

A court "may set aside an entry of [clerk's] default for good cause." Fed. R. Civ. P. 55(c). The good cause standard used in setting aside a clerk's entry of default is less stringent than the required showing to set aside a default judgment. *See E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990); Fed. R. Civ. P. 60(b).  As the Eleventh Circuit has explained:

> Good cause is a mutable standard, varying from situation to situation. It is also a liberal one—but not so elastic as to be devoid of substance. We recognize that good cause is not susceptible to a precise formula, but some general guidelines are commonly applied. Courts have considered whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense. We note, however, that these factors are not talismanic, and that courts have examined other factors including whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default. Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default. However, if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief.

*Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951–52 (11th Cir. 1996) (quotation marks and citations omitted).

Because "there is a strong policy of determining cases on their merits," courts in this Circuit "view defaults with disfavor."  *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Surtain*, 789 F.3d at 1244–45 ("Because of our strong policy of determining cases on their merits, however, default judgments are generally disfavored." (quotation marks omitted)); *Varnes v. Loc. 91, Glass Bottle Blowers Ass'n of U.S. & Can.*, 674 F.2d 1365, 1369–70 (11th Cir. 1982) (noting that "default judgments are disfavored" and that "the federal rules favor a decision

on the merits" and "[c]ourts prefer adjudication on the merits").  "For that reason, any doubts regarding whether to set aside an entry of default should be resolved in favor of the party seeking relief." *Insituform Techs., Inc. v. AMerik Supplies, Inc.*, 588 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008); *see also Davis v. Parkhill–Goodloe Co.*, 302 F.2d 489, 495 (5th Cir. 1962) ("[A]ny doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits." (quotation marks omitted)); *Chunara v. SOL Glob. Invs. Corp.*, No. 22-22167-CIV, 2023 WL 3171995, at *3 (S.D. Fla. Apr. 3, 2023) (same).  A defendant need only make "a bare minimum showing to support relief under Rule 55(c)."  *See Jones v. Harrell*, 858 F.2d 667, 668–69 (11th Cir. 1988) (explaining that a district court did not abuse its discretion by setting aside a clerk's default when a defendant "had made a bare minimum showing to support relief under Rule 55(c)").

## C.  Service of Process

        "[A]n individual or entity 'is not obliged to engage in litigation unless officially notified of the action under a court's authority, by formal process.'"  *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 (11th Cir.2003) (alterations adopted) (quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999)); *see also De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 817 F.3d 747, 749 (11th Cir. 2016).  Official notification happens by service of process under Federal Rule of Civil Procedure 4.  *See, e.g.*, *Prewitt Enters., Inc.*, 353 F.3d at 921 ("By definition, 'service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.'" (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946))); *Henderson v. United States*, 517 U.S. 654, 672 (1996) (noting that Rule 4 governs service and that "the core function of service is to supply notice of the pendency of a legal

action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections"); *Banco Latino, S.A.C.A. v. Gomez Lopez*, 53 F. Supp. 2d 1273, 1277 (S.D. Fla. 1999) ("The principle purpose of the service of process rule is to give the defendant notice that an action has been initiated.").

Service of process on an individual in a foreign jurisdiction is governed by Rule 4(f). "Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States: "(1) by any internationally agreed means of service that is reasonably calculated to give notice"; "(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;" or "(3) by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f).

Rule 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990); *see also Banco Latino*, 53 F. Supp. 2d at 1281 ("[O]nce a defendant has actual notice of the pendency of an action, the requirements of Fed. R. Civ. P. 4 are to be liberally construed."). But service of process that is not in "substantial compliance" with the requirements of the Federal Rules is ineffective to confer personal jurisdiction over the defendant, even when a defendant has actual notice of the filing of the suit. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("A defendant's actual notice is not sufficient to cure defectively executed service."); *Prewitt Enters., Inc.*, 353 F.3d at 925 (holding that, "even though [the defendant] had actual notice of the filing of the suit, service of process was ineffective because it was clearly not in substantial compliance with the requirements" of Rule 4(f)(2)); *id.* at 925 n.14 (explaining that

other courts considering whether service of process was adequate also concluded that "actual notice alone was not enough to allow the court personal jurisdiction over the defendant"). While actual notice of the lawsuit is not alone enough to confer personal jurisdiction over a party, "receipt of actual notice is an important factor in considering whether service of process is adequate." *Prewitt Enters., Inc.*, 353 F.3d at 925 n.14 (explaining that other courts considering whether service of process was adequate "were careful to determine that service of process was in substantial compliance with the formal requirements of the Federal Rules").

Of course, if a party believes a court does not have personal jurisdiction over it, whether because of insufficient service of process, inapplicability of long-arm statutes, lack of minimum contacts, or any other defect, that party "is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *See Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982); *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 854 (11th Cir. 2010) (concluding that a defendant had not "waived its personal jurisdiction defense through its 'lawyerly gamesmanship' in ignoring valid service, retaining counsel in the United States, monitoring court proceedings, and then filing a motion to vacate the judgment after a default judgment was rendered against it" because a "defendant normally only waives a personal jurisdiction defense if he or she has entered an appearance or was involved in overt wrongdoing to deceive the court and avoid service of process"). But the "Federal Rules do not contemplate that a party may simply ignore pleadings it receives." *Sanderford*, 902 F.2d at 900 (quotation marks omitted). On the contrary, the Federal Rules "contemplate that a court may have personal jurisdiction over a defendant served despite imperfect service of process." *Drill S., Inc. v. Int'l Fid. Ins. Co.*, 234 F.3d 1232, 1238 (11th Cir. 2000). So "a defendant that ignores faulty service of process might be found to have waived one

component of personal jurisdiction[—]the defense of improper service of process"—if that defendant does not timely and properly raise the defense. *See Baragona*, 594 F.3d at 855; *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) (noting that a "party is deemed to have waived any objection to personal jurisdiction or service of process if the party makes a pre-answer motion under Rule 12 and fails to include such objections in that motion"); *cf. Drill S., Inc.*, 234 F.3d at 1238 ("If a summons is in substantial compliance with the Federal Rules and a defendant has not been prejudiced by a defect in the summons, a defendant waives the insufficiency of process defense by not asserting it prior to the entry of default judgment" even if the summons was "technically defective."); *Sanderford*, 902 F.2d at 900 (concluding that "if a summons is in substantial compliance with Rule 4(b) . . . and a defendant has not been prejudiced by the defect in the summons, the defendant must raise his or her Rule 12(b)(4) . . . defense by motion or in a responsive pleading, or risk having waived that defense if he or she waits until final default judgment has been entered").

### D.    Motions to Dismiss for Lack of Personal Jurisdiction

"On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the initial burden of 'alleging sufficient facts to make out a prima facie case of jurisdiction' over the nonresident defendant." *Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1366–67 (S.D. Fla. 2016) (alteration adopted) (quoting *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999)).  "A prima facie case is established if the plaintiff presents enough evidence to withstand a

motion for directed verdict."[4]  *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (quotation marks omitted).

"If the plaintiff sufficiently alleges a prima facie case of jurisdiction, the defendant must raise 'through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction.'"  *Keim*, 199 F. Supp. 3d at 1366 (quoting *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009)).  "If the defendant does so, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'"  *Marshall*, 557 F.3d at 1295 (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996)).  Courts "must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits."  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  "Where the plaintiff's evidence and defendant's evidence conflict, all reasonable inferences must be construed in favor of the plaintiff."  *Keim*, 199 F. Supp. 3d at 1366.

## E.    Relationship Between Personal Jurisdiction, Service of Process, and Waiver

"Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served."  *Pardazi*, 896 F.2d at 1317; *see also Worldwide Web*, 328 F.3d at 1299 ("Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void."); *Sloss Indus. Corp. v. Eurisol*, 488

---

[4] "When considering a motion for directed verdict, a court must 'consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party.'"  *Greentree Fin. Grp., Inc. v. Long Fortune Valley Tourism*, 824 F. Supp. 2d 1363, 1367 n.4 (S.D. Fla. 2011) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989)).  "If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the motion should be granted. Conversely, if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions, then such a motion is due to be denied."  *Id.* (alteration adopted) (quoting *Carter*, 870 F.2d at 581).  "[A] mere scintilla of evidence does not create a jury question.  Motions for directed verdict . . . need not be reserved for situations where there is a complete absence of facts to support a jury verdict.  Rather, there must be a substantial conflict in evidence."  *Carter*, 870 F.2d at 581.

F.3d 922, 924 (11th Cir. 2007) (same).  "Objections to service of process, however, like any other objection to jurisdiction over the person, can be waived by the party over whom jurisdiction is sought." *Pardazi*, 896 F.2d at 1317.  A "party is deemed to have waived any objection to personal jurisdiction or service of process if the party makes a pre-answer motion under Rule 12 and fails to include such objections in that motion." *Id.*; *see also* Fed. R. Civ. P. 12(h)(1) (noting that a "party waives any defense listed in Rule 12(b)(2)–(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2); or . . . failing to either . . . make it by motion under this rule; or . . . include it in a responsive pleading"); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 n.21 (11th Cir. 2009) ("[A] party's right to dispute personal jurisdiction is waived if the party fails to assert that objection in its first Rule 12 motion, other responsive pleading or general appearance.").  "A party that fails to raise a defense of lack of personal jurisdiction at the appropriate time is deemed to have conferred personal jurisdiction on the court by consent." *Pardazi*, 896 F.2d at 1317.

Even though service of process is a jurisdictional requirement, an "objection to service of process does not preserve the issue of personal jurisdiction."  *Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1353 n.18 (11th Cir. 1982); *cf. Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008) (holding that the opposite is also true: "objecting to personal jurisdiction is not sufficient to raise an objection to service of process under Rule 12").  "[C]hallenges to service remain, as always, distinct from challenges to jurisdiction over the person." *Harris Corp.*, 691 F.2d at 1353 n.18.

Federal Rule of Civil Procedure 12(b) itself supports this principle: Rule 12(b) lists "lack of personal jurisdiction," "insufficient process," and "insufficient service of process" as separate defenses that a party can raise by motion.  *Compare* Fed. R. Civ. P. 12(b)(2) (noting that a party

can raise "lack of personal jurisdiction" as a defense by motion), *with* Fed. R. Civ. P. 12(b)(4)–(5) (noting that a party can raise "insufficient process" and "insufficient service of process" as defenses by motion). If a challenge to service of process were the same as a challenge to jurisdiction over the person, there would be no need for Rule 12(b) to set them out separately. *See Hemispherx*, 553 F.3d at 1360 ("Lack of personal jurisdiction, Rule 12(b)(2), and insufficiency of service of process, Rule 12(b)(5), are listed as separate defenses under Rule 12. Rule 12(b)(5) would be redundant if we recognized an objection to personal jurisdiction as an acceptable means of challenging the sufficiency of service of process." (citation omitted)).

"Simply put, a litigant must cite each separate Rule 12(b) defense in the pre-answer motion or if no pre-answer motion is filed, then in the responsive pleading. Citing one Rule 12(b) defense in the hope that it will sufficiently raise another defense is not permissible." *Id.* And a litigant must cite all his separate Rule 12(b)(2)–(5) defenses at the same time. *See Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) (noting that, as it relates to the defenses listed in Rule 12(b)(2)–(5), "Rule 12(g) specifically prohibits a party that has previously filed a motion to dismiss from filing a second pre-answer motion to dismiss raising an omitted defense that could have been presented in the first motion to dismiss"); Fed. R. Civ. P. 12(g)(2) (noting that, for the defenses listed in Rule 12(b)(2)–(5), "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion").

## III. DISCUSSION

As noted above, this Report addresses three motions: Plaintiffs' Motion for Default Judgment, ECF No. [25]; Defendant's Motion to Vacate and Quash, ECF No. [27]; and Defendant's Motion to Dismiss, ECF No. [45]. Although those motions were filed in the order

listed, the Court has determined that the most efficient way to analyze them is in the opposite order. Thus, the Court begins with the Motion to Dismiss.

### A.       Motion to Dismiss

Defendant argues in the Motion to Dismiss that the Court lacks personal jurisdiction over him. *See generally* ECF No. [45]. In response, before addressing the substance of Defendant's arguments about personal jurisdiction, Plaintiffs contend that Defendant waived the defense by failing to assert it in his earlier-filed Motion to Vacate and Quash. *See* ECF No. [58] at 7–9. Plaintiffs note that both Federal Rule of Civil Procedure 12 and "long-standing Eleventh Circuit precedent" demonstrate that Defendant's "failure to object to personal jurisdiction in his initial Rule 12(b) motion waives that defense." *See* ECF No. [58] at 7. The Court agrees.

"A party <u>waives any defense</u> listed in Rule 12(b)(2)–(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2)." Fed. R. Civ. P. 12(h)(1) (emphasis added). Lack of personal jurisdiction and insufficient service of process are among the four defenses listed in Rule 12(b)(2)–(5). *See* Fed. R. Civ. P. 12(b)(2), (5). And Rule 12(g)(2) makes clear that "a party that makes a motion under this rule <u>must not make another motion under this rule raising a defense</u> or objection <u>that was available to the party but omitted from its earlier motion</u>." Fed. R. Civ. P. 12(g)(2) (emphasis added).

Defendant filed his Motion to Vacate and Quash on April 25, 2024. *See* ECF No. [27]. In the Motion to Vacate and Quash, Defendant explicitly noted that he filed it "[p]ursuant to Federal Rules of Civil Procedure . . . 12(b)(5)," which gives parties permission to raise a defense of insufficient service of process. *See* ECF No. [27] at 1; Fed. R. Civ. P. 12(b)(5). Then, nearly one month later, on May 22, 2024, Defendant filed his Motion to Dismiss. *See* ECF No. [45]. And in the Motion to Dismiss, Defendant explicitly noted that he filed it "[p]ursuant to Rule 12(b)(2) of

the Federal Rules of Civil Procedure," which gives parties permission to raise a defense of lack of personal jurisdiction.  *See* ECF No. [45] at 1; Fed. R. Civ. P. 12(b)(2).  By the plain language of Rule 12, Defendant waived his right to assert a Rule 12(b)(2) personal jurisdiction defense if it "was available" to him when he filed the Motion to Vacate and Quash that asserted a Rule 12(b)(5) insufficient service of process defense.

The language of the Motion to Vacate and Quash itself demonstrates that Defendant was aware of the potential problems with personal jurisdiction in April 2024.  In one of its footnotes, Defendant notes that he "reserves the right to file a Motion to Dismiss under Federal Rule 12(b) in the future, if necessary."  *See* ECF No. [27] at 1 n.1.  And in the body of the motion, Defendant again says he "reserves the right to argue lack of personal jurisdiction."  *See* ECF No. [27] at 6. Those statements make clear that, when he filed the Motion to Vacate and Quash, Defendant knew he had a personal jurisdiction argument that he could raise under Rule 12(b), as he eventually did in his Motion to Dismiss.  In addition, the personal jurisdiction arguments Defendant raises in the Motion to Dismiss are all premised on facts that existed before the Motion to Vacate and Quash. *See generally* ECF No. [27]; ECF No. [45].  Because the Rule 12(b)(2) lack of personal jurisdiction defense was known and available to Defendant — but omitted — when he filed his Motion to Vacate and Quash, under the plain language of Rule 12, he waived it.

Binding precedent supports this conclusion.  The Eleventh Circuit has held that "a party's right to dispute personal jurisdiction is waived if the party fails to assert that objection in its first Rule 12 motion, other responsive pleading or general appearance."  *Oldfield*, 558 F.3d at 1218 n.21.  And it has found that an "objection to service of process does not preserve the issue of personal jurisdiction."  *Harris Corp.*, 691 F.2d at 1353 n.18.  "[C]hallenges to service remain, as always, distinct from challenges to jurisdiction over the person."  *Id.*

17

"Simply put, a litigant must cite each separate Rule 12(b) defense in the pre-answer motion or if no pre-answer motion is filed, then in the responsive pleading.  Citing one Rule 12(b) defense in the hope that it will sufficiently raise another defense is not permissible." *Hemispherx*, 553 F.3d at 1360.  And a litigant must cite all his separate Rule 12(b)(2)–(5) defenses at the same time.  *See Skrtich*, 280 F.3d at 1306.  "A party that fails to raise a defense of lack of personal jurisdiction at the appropriate time is deemed to have conferred personal jurisdiction on the court by consent." *Pardazi*, 896 F.2d at 1317.

Defendant acknowledges that "the Motion to Dismiss is successive to the Motion to Vacate and Quash" and that "both Motions arise under Rule 12(b) . . . seemingly in violation of Rule 12(g)." *See* ECF No. [62] at 2.  But he argues that "there is a line of precedent to support the Court overlooking the defect where doing so would better serve the purpose underlying" Rule 12(g).  *See* ECF No. [62] at 2 (quotation marks omitted).  The problem for Defendant is that the "line of precedent" is really not precedential at all.  In fact, it is made up of one secondary source and eight decisions from district courts in other circuits—half of them unpublished, only one of them issued within the last ten years.  *See* ECF No. [62] at 2–7 (citing Moore's Federal Practice and case law from California, Illinois, Maryland, Michigan, New York, Tennessee, and Texas issued between 1981 and 2016).

The Court's own research has revealed that the Eleventh Circuit has not adopted the "line of precedent" that these older, extra-circuit decisions have suggested.  Instead, as explained in detail above, our Circuit has adhered to the traditional view that a party must include all his separate Rule 12(b)(2)–(5) defenses at the same time in his initial Rule 12(b) pleading or motion, or he waives whatever defense or defenses he omits.  *See, e.g., Oldfield*, 558 F.3d at 1218 n.21;

*Hemispherx*, 553 F.3d at 1360; *Skrtich*, 280 F.3d at 1306; *Pardazi*, 896 F.2d at 1317; *Harris Corp.*, 691 F.2d at 1353 n.18.

In addition, seven of the decisions Defendant cites address successive Rule 12(b) motions based on subsection 12(b)(6), failure to state a claim upon which relief can be granted, and one of the decisions addresses a successive Rule 12(b) motion based on subsection 12(b)(7), failure to join a party under Rule 19.  *See* ECF No. [62] at 2–7.  While Rule 12(h)(1) explicitly notes that Rule 12(b)(2)–(5) defenses are waived if not asserted in a party's first responsive pleading or motion, Rule 12(h)(2) explicitly permits Rule 12(b)(6) and Rule 12(b)(7) defenses to be raised later and in different ways.  *Compare* Fed. R. Civ. P. 12(h)(1), *with* Fed. R. Civ. P. 12(h)(2) (allowing them to be raised in a pleading, a Rule 12(c) motion, or at trial).  Because Rule 12(b)(6) and (b)(7) defenses are not automatically waived if not asserted in a party's first responsive pleading, it makes sense that a court might choose to interpret the interplay between Rule 12(g)(2) and Rule 12(h) more flexibly if the successive Rule 12(b) motion is based on a Rule 12(b)(6) or (b)(7) defense.  But that is not the posture here.  Defendant's successive Rule 12(b) motion is based on a Rule 12(b)(2) defense, which Rule 12(h)(1) explicitly deems waived if not raised in a party's first Rule 12(b) motion.

The sum of these parts is that Defendant, by filing a Rule 12(b) motion with the Motion to Vacate and Quash that did not raise his Rule 12(b)(2) personal jurisdiction defense, waived his right to assert that personal jurisdiction defense in his Motion to Dismiss.  As the Eleventh Circuit instructed, the effect of that waiver is that Defendant "conferred personal jurisdiction on the court by consent."  *See Pardazi*, 896 F.2d at 1317.  Because Defendant consented to personal jurisdiction by failing to raise the issue at the appropriate time, I recommend that his Motion to Dismiss be **DENIED**.

### B.   Motion for Default Judgment/Motion to Vacate and Quash

Turning now to the issue of default, because the Motion for Default Judgment and the Motion to Vacate and Quash request opposing relief — the Court cannot both grant a default judgment as Plaintiffs request and vacate the clerk's entry of default as Defendant requests — the Court analyzes these two motions together.   The first consideration in this combined analysis is whether, as Defendant argues, there is "good cause" to set aside the clerk's entry of default.   *See* ECF No. [27] at 10; Fed. R. Civ. P. 55(c).   That is true because, if good cause exists to vacate the clerk's default, one of the required elements for granting a default judgment no longer exists.   *See* Fed. R. Civ. P. 55(a)–(c); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (3d ed. 2007) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a).").   On the other hand, if good cause to vacate the clerk's default is lacking, the Court may consider whether a default judgment is warranted.[5]   *See* Fed. R. Civ. P. 55(a)–(c); *Valle v. AA & K Restoration Grp., LLC*, No. 1:19-CV-20873-KMM, 2019 WL 13192198, at *1 (S.D. Fla. Oct. 23, 2019) ("[O]btaining a default judgment is a two-step process: first, the plaintiff must seek an entry of default from the clerk of court; and second, after entry of a clerk's default, the plaintiff can seek a default judgment.").

Defendant's main argument in support of there being good cause to vacate the clerk's default is that "there was an insufficient demonstration of service of process on" him.   *See* ECF

---

[5] In the Motion for TRO and Preliminary Injunction, Plaintiffs argue that "Defendant has filed no opposition to" the Motion for Default Judgment, so the Court should grant the Motion for Default Judgment "for that reason alone."   *See* ECF No. [50] at 3.   While it is true Defendant never filed a formal response to the Motion for Default Judgment, Defendant timely filed his own Motion to Vacate and Quash.   *See* ECF No. [27].   The Motion to Vacate and Quash is clearly an objection to the entry of a default judgment, as the first step in securing a default judgment is obtaining a clerk's default.   *See, e.g.*, *Valle*, 2019 WL 13192198, at *1.   That Defendant chose to assert his defenses in a standalone motion instead of in a response to Plaintiffs' motion is a formalistic distinction without a difference.

No. [27] at 10.  That's also the reason Defendant gives in support of his argument that the Court should quash service of process.  *See* ECF No. [27] at 3–8.  The Court agrees that whether Plaintiffs properly effectuated service on Defendant is central to its analysis of Plaintiffs' Motion for Default Judgment and Defendant's Motion to Vacate and Quash.  For that reason, the Court first addresses the service of process issue before addressing whether the clerk's default should be vacated (as Defendant contends) or a default judgment should issue (as Plaintiffs contend).

**1.      Whether Plaintiffs' Service of Process was Effective**

In Defendant's view, unless he is "properly served with process, he is under no obligation to respond to Plaintiffs' Complaint."  *See* ECF No. [27] at 10.  The Court disagrees.

While it is true that an individual "is not obliged to engage in litigation unless officially notified of the action under a court's authority, by formal process," *Murphy Bros., Inc.*, 526 U.S. at 347, the Federal Rules "contemplate that a court may have personal jurisdiction over a defendant served despite imperfect service of process," *Drill S., Inc.*, 234 F.3d at 1238.  Of course, a "defendant's actual notice is not sufficient to cure defectively executed service," *Albra*, 490 F.3d at 829, but "receipt of actual notice is an important factor in considering whether service of process is adequate," *Prewitt Enters., Inc.*, 353 F.3d at 925 n.14.  That is one reason "a defendant that ignores faulty service of process might be found to have waived . . . the defense of improper service of process."  *See Baragona*, 594 F.3d at 855; *Sanderford*, 902 F.2d at 900.  "[O]nce a defendant has actual notice of the pendency of an action, the requirements of Fed. R. Civ. P. 4 are to be liberally construed."  *Banco Latino*, 53 F. Supp. 2d at 1281.  Here, the record makes clear that Defendant had actual notice of this action.

In the affidavit attached to his reply in support of the Motion to Vacate and Quash, Defendant avers that in January 2024 his "attorney in Dubai informed [him] that there may be a

lawsuit filed against [him] in this Court. *See* ECF No. [34] at 12. He also understood that Judge Lenard "did not permit Plaintiffs to serve [him] via email to [his] attorney in Dubai." *See* ECF No. [34] at 12. Based in part on that denial of "alternative service of process via email to [his] attorney in Dubai," Defendant avers that he "did not think the case against [him] would proceed." *See* ECF No. [34] at 13. But "[o]nce the Clerk entered default and Plaintiffs moved for a final judgment of default," he "became concerned that the Court would enter a judgment against [him] even though" he has "no connection to the state of Florida." *See* ECF No. [34] at 13–14. So "through [his] counsel" he "moved to quash service of process while preserving the right to move to dismiss the case for lack of personal jurisdiction." *See* ECF No. [34] at 14. These averments support a conclusion that Defendant knew of this action at least as early as January 2024.

As additional support that Defendant had actual notice of this action, Defendant does not aver that he failed to receive emails from Pliteq's CEO and its legal department, sent in February 2024 to the same email address from which Defendant had written to Pliteq in October and November 2023.[6] *See generally* ECF No. [34]; ECF No. [24]. Those February 2024 emails attached the Complaint and Summons. On this record, the Court finds that Defendant had actual notice of this action; as a result, the requirements of Rule 4 "are to be liberally construed." *See* *Banco Latino*, 53 F. Supp. 2d at 1281.

The way courts have liberally construed Rule 4 as it relates to imperfect service of process is by determining whether "service of process was in substantial compliance with the formal requirements of the Federal Rules." *See Prewitt Enters., Inc.*, 353 F.3d at 925 n.14; *cf. Drill S.,*

---

[6] Defendant likely did not aver that he failed to receive the February 2024 emails from Pliteq's CEO and its legal department because he, in fact, received those emails. Attached as exhibits to Plaintiffs' Supplement to Notice of Hearing, which was filed on June 14 in advance of a discovery hearing held on June 17, are redacted emails between Defendant and his UAE-based counsel in which Defendant clearly acknowledges receiving the emails. *See* ECF No. [64-2].

*Inc.*, 234 F.3d at 1238 (noting the same in the context of insufficient process).  If it was, then Defendant "receive[d] sufficient notice of the complaint," *see Sanderford*, 902 F.2d at 900, and "the core function of service" has been met, *Henderson*, 517 U.S. at 672 (noting that service's function is to give notice that "affords the defendant a fair opportunity to answer the complaint and present defenses and objections").  The record here shows that Plaintiffs substantially complied with the formal requirements of Rule 4(f).

Plaintiffs and Defendant agree that Rule 4(f), which governs service of process on individuals in foreign countries, is the applicable provision here.  *See generally* ECF No. [27]; ECF No. [30].  They also agree that the UAE is not a party to the Hague Convention or any other treaty relating to service of process, which means that service had to be effectuated through either Rule 12(f)(2) or Rule 12(f)(3).  *See* ECF No. [27] at 4; ECF No. [30] at 6.  To effectuate service under Rule 12(f)(3), Plaintiffs had to use a method ordered by the Court.  *See* Fed. R. Civ. P. 12(f)(3).

Plaintiffs requested the Court to allow them to serve Defendant under Rule 12(f)(3) by emailing the Complaint and Summons to his UAE-based counsel, *see* ECF No. [4] at 3, but Judge Lenard denied that request because it was unclear whether Defendant's UAE-based counsel had received the emails Plaintiff purported to send or whether the parties had agreed to email service, *see* ECF No. [11] at 4–5.  Judge Lenard twice noted that Plaintiffs could "amend" their request "and address the issues outlined by the Court" — even explaining what more the Court would need to permit email service under Rule 12(f)(3) — but Plaintiffs did not take Judge Lenard up on her offer.  *See* ECF No. [11] at 5–6 & nn.3–4.  And without a court order, Rule 12(f)(3) simply does not apply.

CASE NO. 23-CV-24868-LENARD/Elfenbein

That leaves Rule 12(f)(2) as the final option for Plaintiffs to have effectuated service. Relevant here, to satisfy Rule 12(f)(2) Plaintiffs had to serve Defendant "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." *See* Fed. R. Civ. P. 12(f)(2)(A). The parties agree that Federal Decree Law No. (42) of 2022 on the Promulgation of the Civil Procedure Law ("UAE Law No. (42)") governs personal service on UAE residents like Defendant. *See* ECF No. [17-1]; ECF No. [27]; UAE Law No. (42), *available at* https://elaws.moj.gov.ae/UAE-MOJ_LC-En/00_CIVIL%20PROCEDURE%20LAW /UAE-LC-En_2022-10-03_00042_Markait.html (last visited Jun. 15, 2024).[7]

The portions of UAE Law No. (42) that address service on individuals residing within the UAE are Article 6 and Article 9. *See* UAE Law No. (42), art. 6, 9. Article 6 explains who can serve process in the UAE. *See generally* UAE Law No. (42), art. 6. Those authorized to serve process include: (1) "the process server" in "the manner specified by [UAE Law No. (42)]," upon

---

[7]     Both parties point the Court to an unpublished decision from the Central District of California, *Karroum v. Special Equip. Supplies, LLC*, No. 2:22-cv-00504-ODW (JCx), 2022 WL 18278621 (C.D. Cal. Oct. 19, 2022), in which that court addressed a similar issue about service of process in the UAE and the specific process server Plaintiffs used here. As part of its interpretation of the UAE's service of process requirements, the *Karroum* court cited to an article that a law firm authored discussing those requirements, *see id.* at *1, which Plaintiffs attached as an exhibit to their sur-reply to Defendant's Motion to Vacate and Quash, *see* ECF No. [39-1]. The Court has reviewed both the *Karroum* decision and the law firm article but finds neither persuasive. That is because the *Karrom* decision, which issued in 2022, and the law firm article were interpreting an older version of UAE civil procedure law, not the current version — UAE Law No. (42) — that went into effect on January 2, 2023. *See Karroum*, 2022 WL 18278621, at *1–2; UAE Law No. (42), art. 5.

In interpreting the old version of UAE civil procedure law, the *Karroum* court noted that service of process in the UAE involves the Ministry of Foreign Affairs and the Ministry of Justice. *See Karroum*, 2022 WL 18278621, at *1–2. And the law firm article referred to the need to use "diplomatic channels" when effectuating service. *See* ECF No. [39-1] at 10. But the Court's review of the current version of UAE civil procedure law reveals that use of these avenues to effectuate service applies to individuals residing <u>outside</u> of the UAE, not within it. *See* UAE Law No. (42), art. 10(6) ("With regard to persons who are abroad and cannot be notified by means of technology or through private companies or offices or as agreed by the parties, the copy shall be delivered to the Ministry of Justice so as to refer it to the Ministry of Foreign Affairs and the latter shall communicate it to them by diplomatic means, unless the notice serving methods in such case are regulated under special agreements."). Because Defendant is a UAE resident, these avenues do not apply to him.

the request of a party to the dispute or a competent court's order or an order of the case management office"; (2) "the plaintiff or his agent," when authorized by the "competent court, the case management office, or the supervising judge"; and (3) a "private company or office . . . in accordance with the provisions of [UAE Law No. (42)]" that the "Chairman of the Federal Judicial Council or the president of the local judicial authority" authorized through "a special regulation on process serving. . . . Any person entrusted with the process serving shall be considered a process server." *See* UAE Law No. (42), art. 6(1)–(3).

Article 9 explains how those people can serve process in the UAE. *See generally* UAE Law No. (42), art. 9. The authorized methods for effectuating service include: (1) by "[a]udio or video recorded calls, SMS, e-mail or fax, or any other means of modern technology or another means provided for in this Law and agreed upon by the parties"; (2) by personal delivery, by delivery to the party's residence if an adult who lives there accepts the service, or by "immediately post[ing] the notice clearly on the front door of his place of residence or list the same on the court's website"; (3) by delivery to the party's "elected domicile"; and (4) by delivery to the party's workplace or to his employer, manager, or co-worker (as long as those people are older than 18). *See* UAE Law No. (42), art. 9(1)–(2). If none of those methods of service is possible, Article 9 dictates that "the matter . . . be referred to the concerned case management office, the competent judge or the chief judge of the circuit, as the case may be, so as to investigate his domicile from at least one of the concerned parties and then notify him by listing on the court's website or publication in a daily newspaper widely circulated and issued in the State in Arabic." *See* UAE Law No. (42), art. 9(3).

The record shows that Plaintiffs substantially complied with Articles 6 and 9 of UAE Law No. (42). According to the declaration of PBM's UAE-based counsel, counsel "register[ed] an

application before the Notary Public at Dubai Courts to effectuate service of a notarized [L]egal [N]otice on Defendant" that contained the Complaint and a "Corrected Summons."  *See* ECF No. [17-1] at 1, 6.  After the "Notary Public accepted the application," a "bailiff assigned through Dubai Court served the Defendant with the Legal Notice and its attachments via text message at his registered mobile phone number."  *See* ECF No. [17-1] at 6.  The bailiff then "attempted to serve Defendant personally, at his registered address, however was unable to do so."  *See* ECF No. [17-1] at 7.  Finally, "the bailiff served Defendant with the Legal Notice issued by the Notary Public and the attachments at his e-mail address."  *See* ECF No. [17-1] at 7.

In his own affidavit, Defendant avers that "the alleged Tableegh Service Attempts to the 9000 Number . . . did not include a working link to the complaint or any supporting documents." *See* ECF No. [34] at 13.  And he notes "the failure of the Tableegh Service Attempts to properly convey case documents to" him.  *See* ECF No. [34] at 13.  Notably, while Defendant avers that his current phone number is different than the one the bailiff used to serve him with the Legal Notice, Complaint, and Summons, *see* ECF No. [34] at 13, he does not dispute receiving the bailiff's text with the Legal Notice, *see generally* ECF No. [34].  Instead, by averring that the bailiff's text "did not include a working link to the complaint," Defendant implicitly acknowledges that he received the bailiff's text.  *See* ECF No. [34] at 13.  And the attachments to the declaration of PBM's UAE-based counsel show that the bailiff's text message included a phone number to call with any "inquiries."  *See* ECF No. [17-1] at 18–21.  So even if the link included in the bailiff's text message did not work, Defendant was aware that he was being served with legal documents and had a way to obtain those documents.  As a result, the Court finds that the bailiff's text message service substantially complied with Articles 6 and 9 of UAE Law No. (42).

Defendant also avers that the "alleged Tableegh Service Attempts to . . . [his] email address did not include a working link to the complaint or any supporting documents." *See* ECF No. [34] at 13.  But he does not dispute that the email address the bailiff used, which is the same email address Defendant used to communicate with Pliteq's CEO in late 2023, belongs to him or that he received the bailiff's email with the Legal Notice.  *See generally* ECF No. [34].  And as he does with the bailiff's text message notice, by averring that the bailiff's email "did not include a working link to the complaint," Defendant implicitly acknowledges he received the bailiff's email.  *See* ECF No. [34] at 13.  The attachments to the declaration of PBM's UAE-based counsel show that the bailiff's email message, like the bailiff's text message, included a phone number to call with any "inquiries."  *See* ECF No. [17-1] at 27–29.  So even if the link included in the bailiff's email did not work, Defendant was once again made aware that he was being served with legal documents and once again given a way to obtain those documents.  As a result, the Court finds that the bailiff's email service substantially complied with Articles 6 and 9 of UAE Law No. (42).[8]

Because the Court finds that the bailiff's text and email service substantially complied with Articles 6 and 9 of UAE Law No. (42), Plaintiff's service under Rule 4(f)(2)(A) was effective.  For that reason — keeping in mind the well-established precedent that the requirements of Rule 4 "should be liberally construed so long as a party receives sufficient notice of the complaint," *see Sanderford*, 902 F.2d at 900; *Banco Latino*, 53 F. Supp. 2d at 1281 — I recommend that the Motion to Quash Service of Process portion of Defendant's Motion to Vacate and Quash be **DENIED**.

---

[8] As an additional bit of support for its finding, the Court notes that Defendant failed to address the issues of imperfect service, substantial compliance, or actual notice in his Reply in Support of the Motion to Vacate and Quash, *see generally* ECF No. [34], even though Plaintiffs clearly raised those issues in their Response in Opposition to the Motion to Vacate and Quash, *see* ECF No. [30] at 5–11.

**2.    Whether the Clerk's Default Should be Vacated or Default Judgment Should Issue**

Having found that Plaintiffs' service of process was effective because Defendant had actual

notice of this action and Plaintiffs substantially complied with Rule 4(f)(2)(A) and UAE Law No.

(42), the Court must now address whether the clerk's default should be vacated or a default

judgment should issue.  As noted above, the first consideration in the analysis is whether there is

good cause to vacate the clerk's entry of default.  If good cause exists to vacate the clerk's default,

one of the required elements for granting a default judgment no longer exists.  *See* Fed. R. Civ. P.

55(a)–(c); 10A Wright & Miller, Federal Practice and Procedure § 2682; *Valle*, 2019 WL

13192198, at *1.

Good cause is a mutable, flexible standard that varies from situation to situation.  *See*

*Compania Interamericana*, 88 F.3d at 951.  In deciding whether it exists, courts "have considered

whether the default was culpable or willful, whether setting it aside would prejudice the

adversary," "whether the defaulting party presents a meritorious defense," "whether the public

interest was implicated, whether there was significant financial loss to the defaulting party, and

whether the defaulting party acted promptly to correct the default."  *Id.*  Here, good cause exists

to vacate the clerk's default.

First, nothing in the record indicates that Defendant's default was culpable or willful;

instead, Defendant's averments about why he failed to respond to the Complaint demonstrate that

he chose not to respond because he believed he had meritorious service of process and personal

jurisdiction defenses.  *See* ECF No. [34] at 13.  While I have found that Defendant waived his

potential Rule 12(b)(2) personal jurisdiction defense by failing to include it in his Motion to Vacate

and Quash, this Report and Recommendation made (and makes) no finding about whether that

defense would be meritorious had it been preserved.  And a properly made, meritorious lack of

personal jurisdiction defense would have justified Defendant's decision not to respond to the Complaint. *See, e.g.*, *Bauxites*, 456 U.S. at 706; *Worldwide Web*, 328 F.3d at 1299; *Baragona*, 594 F.3d at 854 (11th Cir. 2010).   Defendant also advances several potentially valid defenses as to the merits. *See* ECF No. [34] at 11–12 (averring that he "never threatened to disclose Pliteq's confidential information or trade secrets").

Second, the record indicates that vacating the clerk's default and requiring Plaintiffs to proceed on the merits would not prejudice them.   Plaintiffs argue that Defendant's discovery positions — including a refusal to meet and confer to discuss the Joint Scheduling Report or respond to an evidentiary preservation request — indicate that they will be prejudiced if the clerk's default is vacated. *See* ECF No. [30] at 14–15.   But as the Parties represented to the Court at a May 23, 2024 discovery hearing, the Parties have now conferred about and begun to engage in discovery. *See* ECF No. [51].   As a result, the discovery-related prejudice Plaintiffs suggest is no longer a concern.   And in any event, discovery-related prejudice is not the sort of prejudice case law contemplates as a reason negating good cause. *See, e.g.*, *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1357 (11th Cir. 2009) (noting that the good cause inquiry is "whether prejudice results from the <u>delay</u>, not from having to continue to litigate the case"); *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960) ("[T]he setting aside of the default has done no harm to plaintiff except to require it to prove its case. . . . [It] will not prevent plaintiff's making its proof and obtaining the decree to which it is entitled.").

Third, Defendant acted promptly to correct the clerk's default.   The clerk's default was entered on March 29, 2024, *see* ECF No. [22], and Defendant filed the Motion to Vacate and Quash on April 25, 2024, *see* ECF No. [27].   That means Defendant waited less than a month to attempt to correct the clerk's default.   I find that Defendant acted promptly. *See, e.g.*, *Bent v. Smith, Dean*

*& Assocs., Inc.*, No. 3:11-CV-66-J-TEM, 2012 WL 1325031, at *2 (M.D. Fla. Apr. 17, 2012) (finding insufficient evidence that default was culpable or willful because defendant moved to set aside default less than one month after being defaulted); *cf. Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783–84 (11th Cir. 1993) (affirming district court's finding that defendant did not demonstrate good cause to grant Rule 60(b) motion to set aside entry of default judgment when he waited almost a year to challenge it).

Finally, courts in this Circuit have "a strong policy of determining cases on their merits" and "view defaults with disfavor." *See, e.g.*, *Worldwide Web*, 328 F.3d at 1295; *Surtain*, 789 F.3d at 1244–45; *Varnes*, 674 F.2d at 1369–70 (11th Cir. 1982). "For that reason, any doubts regarding whether to set aside an entry of default should be resolved in favor of the party seeking relief." *Insituform Techs.*, 588 F. Supp. 2d at 1352; *see also Davis*, 302 F.2d 489 at 495. Indeed, a defendant need only make "a bare minimum showing to support relief under Rule 55(c)." *See Jones*, 858 F.2d at 668–69. Defendant has done that here.

Accordingly, I find that good cause exists to vacate the clerk's entry of default against Defendant. Thus, I recommend that the Motion to Vacate Clerk's Entry of Default portion of Defendant's Motion to Vacate and Quash be **GRANTED**. And because the Court cannot enter a final default judgment without a valid entry of clerk's default, I recommend that Plaintiffs' Motion for Default Judgment be **DENIED**.

## IV.   CONCLUSION

Accordingly, I respectfully **RECOMMEND** that:

1.      Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, **ECF No. [45]**, be **DENIED**.

2.      Defendant's Motion to Vacate Clerk's Entry of Default and to Quash Service of Process, **ECF No. [27]**, be **GRANTED in part** and **DENIED in part** as explained above.

3.      Plaintiffs' Motion for Entry of Final Default Judgment, **ECF No. [25]**, be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on June 19, 2024.

_____

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record