**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-CV-24868-ELFENBEIN

**PLITEQ, INC.**, *et al.*,

    Plaintiffs,

v.

**MAGED MOSTAFA**,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO STRIKE PORTIONS OF EXPERT WITNESS REPORT AND EXCLUDE IMPROPERLY OBTAINED EVIDENCE

**THIS CAUSE** is before the Court on Defendant's Motion to Strike Portions of Plaintiff's Expert Witness Report and Exclude Improperly Obtained Evidence (the "Motion to Strike"), ECF No. [150]. Plaintiffs Pliteq, Inc. and Pliteq Building Materials, LLC's (collectively "Plaintiffs") filed their Response in Opposition to the Motion to Strike (the "Response"), ECF No. [154], and Defendant thereafter filed his Reply and Memorandum of Law in Support of Motion to Strike Plaintiffs' Exhibits ("Reply"), ECF No. [158]. The Motion is now ripe for review. For the reasons explained below, the Motion to Strike, **ECF No. [150]**, is **DENIED**.

### I. BACKGROUND

This case arises out of a dispute between an employer (Plaintiffs) and a former employee (Defendant). According to the Amended Complaint, Pliteq is "a successful engineering services and manufacturing firm" that is "widely recognized as an industry leader in sound reduction technology." *See* ECF No. [120] at 3. Pliteq is a Canadian company, but it employs people in many other countries, including the United States and the United Arab Emirates ("UAE"). *See* ECF No. [120] at 2-3. PBM is an affiliate of Pliteq based in and organized under the laws of the

UAE.  *See* ECF No. [120] at 2.  Defendant is a "former high-level employee of PBM" who lives in Dubai.  *See* ECF No. [120] at 2, 5.  Specifically, Defendant held various managerial positions, including as "PBM's General Manager from 2018 to 2023," "a member of Pliteq's Corporate Executive Counsel" from 2020 to 2023, "Pliteq's acting Director, Rail Business Unit . . . responsible for team development and strategy" from 2021 to 2023, and "Pliteq's Vice President, Corporate Development and Marketing."  *See* ECF No. [120] at 5.  According to the Amended Complaint, Defendant "was employed as PBM's General Manager pursuant to a written employment contract" that "contained a strict confidentiality provision prohibiting the use or disclosure of PBM's confidential and trade secret information."  *See* ECF No. [120] at 5.  Defendant also allegedly "executed a stand-alone confidentiality agreement with Pliteq" in which he agreed "to use Pliteq's proprietary information 'solely for the purpose of reasonably completing his or her employment,'" "to maintain it 'in confidence,'" and to "'not, directly or indirectly, disclose'" it.  *See* ECF No. [120] at 6.

Defendant was terminated from his employment with Plaintiffs in November 2023.  *See* ECF No. [120] at 5.  Plaintiffs allege that Defendant's termination resulted from his "massive download" of Pliteq's proprietary information that he has kept on his "personal data accounts" and has "failed and refused to return" or destroy, instead "threatening (directly and indirectly) to disclose or sell" the information to Pliteq's competitors.  *See* ECF No. [120] at 5.  Plaintiffs also allege that Defendant has "admitted that he . . . downloaded the [i]nformation to a personal cloud-based account" but has failed to "cooperate" with their investigation into the downloads, instead taking "affirmative steps . . . to cover his tracks and sabotage" the investigation.  *See* ECF No. [120] at 8.

As a result, Plaintiffs filed this action against Defendant alleging seven counts: misappropriation of trade secrets pursuant to 18 U.S.C. § 1836 (Count I), unfair competition under Florida common law (Count II), injunctive relief (Count III), breach of employment contract (Count IV), breach of confidentiality agreement (Count V), breach of fiduciary duty (Count VI), and conversion (Count VII). *See* ECF No. [120] at 10–20.

Against this backdrop, Defendant seeks to strike portions of Plaintiffs' expert witness report and exclude improperly obtained evidence, but Defendant never identifies the expert by name or provides a copy of the expert report he seeks to strike. *See generally* ECF No. [150] and [158]. In their Response, Plaintiffs do not mention their expert by name either or otherwise provide his report. *See generally* ECF No. [154]. All the Court knows about this expert and his report is that Plaintiffs produced his expert witness report to Defendant on October 30, 2024, and that the "expert witness report relies heavily on and includes private data and personal information from Defendant's personal laptop that was unlawfully seized." *See* ECF No. [150] at 1.[1]

Specifically, Defendant seeks to strike portions of the expert report and certain "improperly obtained evidence" for three reasons. First, Defendant argues that the "expert report improperly includes and relies on," among other things, "private and personal photos that were password protected;" "deleted personal data forensically recovered without authorization;" "information obtained through criminally proven theft;" "private communications unrelated to any business purpose;" and data accessed after Pliteq's CEO, Paul Downey ("Downey"), signed a "police

---

[1] As a preliminary matter, without a copy of the expert report at issue, the Court lacks necessary information to understand the context for the opinions or information that Defendant seeks to strike. For example, the Motion asks the Court to "[s]trike all portions of Plaintiff's expert report relying on unlawfully obtained data" and to "[s]trike all portions of Plaintiff's expert report that mentions any data that is unrelated to a business purpose" but, without a copy of the report, even if the Court were inclined to grant the Motion to Strike, the Court has no way of knowing which part of the report would satisfy this criteria. Nonetheless, as explained below, the failure to identify the expert or provide a copy of his expert report are not the reasons the Motion is denied.

declaration not to access the laptop." ECF No. [150] at 6.  In light of the foregoing, Defendant argues that the evidence must be excluded under "[t]he fruit of the poisonous tree doctrine" because "the Dubai Criminal Court has conclusively established through criminal conviction that Plaintiffs obtained the laptop through theft." *Id.* at 5.  As the evidence Plaintiffs seek to use was "derived from a criminally proven illegal seizure" and no exceptions to this doctrine apply, such as "[n]o [i]ndependent [s]ource," "[n]o [i]nevitable [d]iscovery," "[n]o [i]ntervening [a]ct," and "[n]o [g]ood [f]aith," Defendant argues that "the data included in" the expert witness report "should be excluded to uphold this fundamental principle." *Id.* (citing *Sun v. United States*, 371 U.S. 471 (1963)).  Next, the Motion to Strike relies on principles of international comity and asks this Court to recognize Dubai's judicial ruling that "[a]ffirmed Defendant's ownership [of the laptop] based on purchase records and shipping information," that "[e]stablished the criminal conviction of Paul Downey for theft," which "substantiates the unlawfulness of the seizure," and that, based on the Dubai Police Forensics Report, "the Defendant committed no wrongdoing" so the Court should reject a claim of trade secret misappropriation. *Id.* at 6.  Finally, Defendant argues that the exclusion of this evidence would be [c]onsistent with [e]stablished [p]rivacy [p]rotections for [p]ersonal [e]lectronic [d]ata," citing to *Riley v. California*, 573 U.S. 373 (2014) for the proposition that there is a heightened expectation of privacy in personal electronic devices and that accessing such data without authorization is a violation of one's privacy rights.

In their Response, Plaintiffs argue that there is no legal basis to strike an expert witness report, as such a procedure does not exist under Federal Rule of Civil Procedure 12(f).  *See* ECF No. [154] at 2.  They next argue that the Fourth Amendment does not apply to a dispute between two private litigants and cannot, therefore, serve as the basis to exclude evidence and, even if the Fourth Amendment's protections were at issue, those protections do not confer rights to non-

4

citizens or non-residents outside of the United States. *Id.* at 2-3. Finally, Plaintiffs take the view that the proceedings in Dubai are not entitled to comity because (1) the documents attached to the motion are unauthenticated hearsay and are mischaracterized; (2) Defendant did not raise the matter of comity as an affirmative defense under res judicata or collateral estoppel principles in his pleading and has, therefore, waived the issue; (3) the parallelism requirement of comity is not satisfied when the actions involve materially different issues, documents, and parties; and (4) the proceedings in Dubai do not offer the same rights to due process in criminal proceedings as a criminal defendant would receive in the United States. *Id.* at 4-7.

Finally, in Reply, Defendant denies relying upon Rule 12(f) or the Fourth Amendment as a basis to strike the evidence on which the expert witness relies, explaining that he "seeks exclusion of improperly obtained evidence based on well-established principles of inadmissibility and international comity, as clearly demonstrated by authenticated rulings." *See* ECF No. [158] at 3. Defendant further elaborates that the evidence is inadmissible because of other "compounding defects," involving Plaintiffs' unauthorized access that violated the instructions of the Dubai police and a compromised chain of custody during that unauthorized possession. *Id.* at 4. In response to Plaintiffs' argument that the proceedings in Dubai are not final and are not deserving of comity, Defendant attaches additional documents from the proceedings in Dubai and argues that courts in the United States defer to foreign judicial proceedings "where 'the foreign court was competent and used proceedings consistent with civilized jurisprudence.'" *Id.* at 6 (quoting *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227 (11th Cir. 2004)). Also, in the Reply, Defendant raises several arguments for the first time. For example, he states that "Plaintiffs rely on inadmissible evidence suffering from fatal authentication defects," such as a lack of "chain of custody documentation for the laptop after its unlawful seizure," "[u]nauthorized access to password-

5

protected data without proper documentation, "[f]orensic analysis conducted without required permissions," and "[d]eclaration from counsel retained after proceedings concluded." *Id.* at 4. He also argues that Plaintiffs engaged in a systematic pattern of evidence manipulation and fabricated evidence "exposed by witness statements claiming delivery at Pliteq's Toronto office . . . during budget meetings." *Id.* at 8. And, Defendant also argues for the first time that "UAE Personal Data Protection Law" "provides additional context for evaluating the impropriety of Plaintiffs' conduct." *Id.* at 11.

## II. DISCUSSION

Defendant's arguments can be distilled into three areas: (1) any evidence derived from Plaintiffs' alleged illegal seizure and search of Defendant's laptop is subject to exclusion under the fruit of the poisonous tree doctrine and as a violation of Defendant's right to privacy; (2) international comity requires that this Court recognize the findings from the proceedings before the Dubai court; and (3) Plaintiffs' laptop evidence has not been properly authenticated and is the subject of evidence manipulation.[2] The Court will address each of these arguments in turn.

### a. Fruit of the Poisonous Tree and Right to Privacy

In the Motion to Strike, Defendant first argues that the "expert report improperly includes and relies on," among other things, "private and personal photos that were password protected;" "deleted personal data forensically recovered without authorization;" "information obtained through criminally proven theft;" "private communications unrelated to any business purpose;" and data accessed after Downey signed a "police declaration not to access the laptop." *See* ECF No. [150] at 6. With this factual background, Defendant argues that the exclusion of the laptop

---

[2] The Court does not address Plaintiffs' arguments under Rule 12(f) for motions to strike pleadings as Defendant agrees in the Reply that he is not seeking to strike the evidence in the expert witness report on this basis.

evidence is mandatory under "[t]he fruit of the poisonous tree doctrine." *Id.* at 5. In particular, Defendant explained that "the Dubai Criminal Court has conclusively established through criminal conviction that Plaintiffs obtained the laptop through theft," so the evidence within the laptop was "derived from a criminally proven illegal seizure," requiring the exclusion of the evidence. *Id.* at 5. Further, citing to *Sun v. United States*, 371 U.S. 471 (1963), Defendant adds that no exceptions to this doctrine apply, such as the existence of an independent source or intervening act, the inevitable discovery doctrine, or the good faith exception, so "the data included in" the expert witness report "should be excluded to uphold this fundamental principle." *Id.* On a related note, Defendant also argues for the exclusion of any evidence derived from the laptop under privacy protections in place for personal electronic data, citing to *Riley v. California*, 573 U.S. 373 (2014) to support the argument that accessing data within personal devices without authorization is a violation of one's privacy rights and subject to exclusion. *Id.*

Starting first with Defendant's argument seeking exclusion under the doctrine of the fruit of the poisonous tree, the Court agrees with Plaintiffs that this concept does not apply to private civil litigants. Indeed, the only case on which Defendant relies, *Sun*, applied the fruit of the poisonous tree doctrine, an exclusory rule that bars "from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion" of one's Fourth Amendment right, to evidence the Government obtained. 371 U.S. at 484. In *Sun*, the Supreme Court explained that the "*Government*" may "not make use of information obtained during an unlawful search." *Id.* (emphasis added). This means that the exclusionary rule does not merely apply to the use of evidence the *Government* acquired unlawfully, but also applies to the *Government's* use of such evidence at all. *Id.* With that said, the exclusionary rule does not apply if "the *Government*" learns of the evidence "from an independent source" or if the connection between the unlawful conduct

7

"of the *police* and the discovery of the challenged evidence has 'become so attenuated to dissipate the taint.'" *Id.* at 487 (emphasis added) (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)).

The foregoing makes clear that the fruit of the poisonous tree rule of exclusion does not apply between two private parties, which is the case here, and instead applies only to unlawful actions taken by the Government (which can be in the form of local, state, or federal law enforcement) in violation of the Fourth Amendment rights of a citizen. Indeed, the Supreme Court has "consistently construed this protection as proscribing only governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *United States v. Jacobsen*, 466 U.S. 109, 113–14 (1984) (quoting *Walter v. United States,* 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)). *See also United States v. Meister*, 596 F. App'x 790, 792 (11th Cir. 2015) (citing *United States v. Young,* 350 F.3d 1302, 1306–07 (11th Cir. 2003) ("Once a private individual, acting of his own accord, conducts a search — even one that frustrates a defendant's reasonable expectation of privacy — the Fourth Amendment does not forbid the government from replicating the search."); *United States v. Marquez*, No. 04-20159-CR, 2005 WL 8162672, at *2–3 (S.D. Fla. Nov. 17, 2005) (denying motion to exclude illegally obtained evidence, consisting of a conversation illegally recorded by a private individual, because it was "not made with the knowledge and involvement of any law enforcement officials;" therefore, the exclusionary rule under the Fourth Amendment did not apply). Thus, the fruit of the poisonous tree doctrine does not serve as a basis to support Defendant's request, as a private citizen, to strike or exclude evidence obtained by Plaintiffs, two private actors, in this civil lawsuit.

For similar reasons, Defendant's privacy argument does not support the exclusion of the evidence either. Citing to *Riley v. California*, 573 U.S. 373, 378 (2014), Defendant argues that accessing data within personal devices, such as the laptop at issue, without authorization is a violation of one's privacy rights and is subject to exclusion. But *Riley* does not support Defendant's position either. The issue in *Riley* was "whether the *police* may, *without a warrant*, search digital information on a cell phone seized from an individual who has been arrested." 573 U.S. at 378 (emphasis added). Although the Supreme Court held that "officers must generally secure a warrant before conducting such a search" of a cellular phone seized incident to arrest, *id.* at 386, it further clarified that its holding was not that "information on a cell phone is immune from search," *id.* at 401. Rather, its holding was that "a warrant is generally required before such a search, even when a cell phone is seized incident to arrest." *Id.* The Supreme Court's cases "have historically recognized that the warrant requirement is 'an important working part of our machinery of *government*,' not merely 'an inconvenience to be somehow 'weighed' against the claims of *police* efficiency.'" *Id.* at 401 (emphasis added) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 481 (1971)). Clearly, *Riley*'s holding and discussion of privacy rights within personal devices was limited to the context of criminal matters, not civil disputes such as this one. And, importantly, the Supreme Court in *Riley* did not extend this principle, which is based on the Fourth Amendment, to private actors, such as Plaintiffs.

In his Reply, Defendant argues that "[c]ourts *consistently exclude* evidence obtained through unlawful means to maintain judicial integrity," *see* ECF No. [158] at 7 (emphasis added), and "courts possess inherent authority to exclude improperly obtained evidence" based on "*well-established principles* governing the admissibility of evidence obtained through improper means," *id.* at 9 (emphasis added). However, Defendant does not cite to a single authority to support these

propositions. It would seem that, if courts are consistently excluding such evidence or such well-established principles exist, Defendant would have provided the Court with ample authority to support these arguments seeking to exclude evidence under the fruit of the poisonous tree doctrine or the right to privacy. But Defendant did not, and the Court will not do Defendant's legal research for him to determine whether such case law indeed exists. And, to the extent Defendant relies upon *Sun* and *Riley* as his "well-established principles," indeed these principles are well established, but only in the criminal context. These two cases do not help Defendant's cause to strike evidence contained within the laptop and referenced in the expert witness report for all the reasons discussed above.

### b. International Comity

Next, the Motion to Strike relies on principles of international comity to strike the laptop evidence referenced in the expert witness report, asking this Court to recognize Dubai's judicial ruling that "[a]ffirmed Defendant's ownership [of the laptop] based on purchase records and shipping information," that "[e]stablished the criminal conviction of Paul Downey for theft," which "substantiates the unlawfulness of the seizure," and that, based on the Dubai Police Forensics Report, "the Defendant committed no wrongdoing," so this Court should reject a claim of trade secret misappropriation. *Id.* at 6. Although Defendant is asking the Court to strike the evidence obtained from the laptop, Defendant is also effectively requesting that this Court abstain from exercising jurisdiction for a determination of the ultimate issues involving trade secret misappropriation based on the findings of the Dubai court. These arguments seem more appropriate for a motion for summary judgment or a motion to dismiss. Nonetheless, the Court

will address the concept of international comity here as it finds it does not apply on the current record.

As discussed above, Plaintiffs object to the application of international comity for the Dubai proceedings because (1) the documents attached to the motion are unauthenticated hearsay and are mischaracterized; (2) Defendant did not raise the matter of comity as an affirmative defense under res judicata or collateral estoppel principles in his pleading and has, therefore, waived the issue; (3) the parallelism requirement of comity is not satisfied when the actions involve materially different issues, documents, and parties; and (4) the proceedings in Dubai do not offer the same rights to due process in criminal proceedings as a criminal defendant would receive in the United States.  *See* ECF No. [154] at 4-7.

The Court starts its analysis with the notion that "[f]ederal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred upon them."  *See Turner Ent. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994) (quoting *Colorado River Water Conser. Dist. v. United States,* 424 U.S. 800, 817 (1976)).  Despite that obligation, "in some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction" so "federal courts have begun to fashion principles that guide courts' actions in cases of concurrent jurisdiction in a federal court and the court of a foreign nation."  *Id.*  Creating those guiding principles, the Eleventh Circuit has identified three factors courts must consider when deciding whether to recognize judgments rendered in a foreign country under international comity abstention: "(1) whether the judgment was rendered via fraud," (2) "whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence," and (3) "whether the foreign judgment is prejudicial, in the sense of violating American public policy because it is repugnant to fundamental principles of what is decent and just." *Id.* at 1519.

*See also Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) ("Federal courts generally extend comity whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy."). Adding to the three *Turner* factors, "[c]ourts also consider whether the central issue in dispute is a matter of foreign law and whether there is a prospect of conflicting judgments." *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238-40 (11th Cir. 2004) (finding that prospective international comity was appropriate when the American and German governments entered into extensive negotiations over the subject matter of the litigation affecting thousands of victims of the Nazi regime, all events took place in Germany, the matter involved German law, and the plaintiff had an alternate forum to seek redress for her claims).

Importantly, though, when evaluating matters of international comity, the Eleventh Circuit has explained that the question is whether it "'should exercise its jurisdiction where *parallel* proceedings are ongoing in a foreign nation.'" *See Seguros Del Estado, S.A. v. Sci. Games, Inc.*, 262 F.3d 1164, 1169–70 (11th Cir. 2001) (emphasis in original) (quoting *Turner*, 25 F.3d at 1518)). Thus, "the threshold question" is whether the case in the United States is "parallel" to the case in the foreign country, and two cases will not be parallel if they "involve materially different issues, documents, and parties." *Id.* at 1170. In *Seguros del Estado*, the Eleventh Circuit declined to abstain under international comity because the case pending in the United States and the one pending in Columbia "directly involve neither the same issues nor the same parties," noting that in other cases where comity applied, the same parties and same issue were involved thereby satisfying the requirement of parallelism. *Id.* at 1171.

Addressing the three *Turner* factors first, neither party argues here that the judgment in the criminal proceedings in Dubai was procured by fraud. However, Plaintiffs appear to dispute that

the second and third factors favor international comity, that is "whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence" and "whether the foreign judgment is prejudicial, in the sense of violating American public policy because it is repugnant to fundamental principles of what is decent and just," *see Turner*, 25 F.3d at 1519. Plaintiffs specifically argue that in the criminal proceedings in Dubai, Downey was denied his basic due process and other constitutional rights, such as the right to counsel at all stages of the proceedings, the right to confront and cross-examine witnesses, and the right to a jury trial, among others. All these rights would have been available to Downey in the United States. In support of its argument, Plaintiffs attach the declaration of an attorney in Dubai, as further discussed below.

Defendant, on the other hand, states that Dubai gives "[f]ull opportunities for both parties to present evidence," "[r]epresentation by counsel throughout the proceedings," "[m]ultiple levels of appellate review," and "[f]inal judgments based on [a] comprehensive record." *See* ECF No. [158] at 6. Although Defendant attaches a series of documents from the foreign tribunal in Dubai to support his position,[3] he provides almost no background information to understand any of these documents in context. And, other than Defendant's *ipse dixit* assertion, Defendant fails to provide any substantive information, through an attorney or expert affidavit or through the provision of authorities under UAE law, as to how criminal law works in the UAE, what due process rights a criminal defendant may have in proceedings in the UAE, whether a right to counsel exists, whether a right against self-incrimination exists, whether a right to confront and cross-examine witnesses exists in a criminal proceeding, whether a defendant has a right to a jury trial in criminal proceedings, how the findings were made in this particular criminal prosecution, etc. Defendant

---

[3] The Court need not decide the issue of whether the documents from the foreign tribunal have been properly authenticated as the Court lacks the necessary information to understand the documents in context, even if they are authentic.

13

also asks the Court to adopt the "Dubai Police Forensics Report" for the laptop, but the Court does not have any information as to whether Downey was allowed to present his own forensic evidence in his defense. This Court will not simply assume that proceedings in the UAE follow the same due process principles that exist in the United States or provide the same constitutional guarantees. Plaintiffs have directed the Court to one decision demonstrating that the laws in the United States and Dubai have significant differences at least in the bankruptcy context. *See Drexel Burnham Lambert Grp., Inc. v. Galadari*, 127 B.R. 87, 107 (S.D.N.Y. 1991) (declining to abstain under principles of international comity for bankruptcy proceedings in Dubai because the "Dubai proceedings do not provide any similar protection for creditors" as they do in the United States as the judge in Dubai was "both the trier of the facts and law and the trustee" and concluding that the "Dubai proceedings are not in substantial conformity with our notions of fundamental fairness and due process").

On the other hand, Plaintiffs have provided the Court with some limited information regarding UAE criminal law and procedures through the sworn Declaration of Haleema Al Marzooqi ("Al Marzooqi"), Downey's attorney who is admitted to practice in the criminal courts of Dubai. *See* ECF No. [154-1]. In the Declaration, Al Marzooqi explains that "[t]here is no right to a jury trial in the UAE, regardless of the potential punishment, for any crime;" "[i]n accordance with UAE law, Mr. Downey was required to attend and provide an investigative statement to the police in this matter" but "[h]is counsel was not allowed to be present during questioning by the police;" "[i]n the UAE, the opportunity to cross-examine is at the discretion and under the control of the trial judge;" "Mr. Downey was not given the opportunity to cross-examine the witnesses against him at his criminal trial;" and "[t]he evidence presented against Mr. Downey at trial consisted of the out-of-court investigative statements provided by Maged Mostafa and Ahmad

Shalaby," but "[n]either Mr. Mostafa nor Mr. Shalaby testified at Mr. Downey's trial." *See* ECF No. [154-1]. Thus, based on the limited information in the record about criminal law and procedure in the UAE, Downey was not provided with a jury trial, was not allowed to have counsel present at all stages of the proceedings (specifically, during his interview by law enforcement), and he did not have the right to cross-examine and confront the witnesses as out-of-court statements were introduced at his trial. Such a process does not comport with American constitutional guarantees and is not, therefore, in substantial conformity with our notions of fundamental fair play and justice. In light of the limited information in the record, the Court declines to abstain under the third international comity factor under *Turner*.

In addition, the Court declines to abstain because there is no true parallelism between the criminal proceedings in Dubai and this proceeding. As explained in *Seguros Del Estado*, "the threshold question" is whether the case in the United States is "parallel" to the case in Dubai, meaning they involve materially similar issues, documents, and parties. Here, the criminal proceeding does not involve the same parties as this civil action. According to the documents attached to the Motion to Strike, the complainant in that matter is Defendant, and the defendant is Downey. But Downey is not a party to these civil proceedings. While he may be the CEO of Pliteq, Pliteq and PBM are two entities separate and apart from Downey, a Pliteq executive employee. And, although the cases share a common issue – the laptop, the criminal proceedings involve the question of whether Downey committed theft of the laptop and should be held criminally liable for that conduct whereas the issues here involve not only the misappropriation of Plaintiffs' trade secrets on that laptop but also Defendant's alleged violation of several contractual employment agreements. Thus, the evidentiary issues may have some overlap (the laptop), but the legal issues will be quite different in the two cases. As a result, as a "threshold issue," there is

no parallelism between the two proceedings, making abstention based on international comity inapplicable.

### c. New Arguments Raised for the First Time in Reply

Finally, the Court declines to consider new arguments raised for the first time in a Reply. Specifically, Defendant argued that "Plaintiffs rely on inadmissible evidence suffering from fatal authentication defects," such as a lack of "chain of custody documentation for the laptop after its unlawful seizure," "[u]nauthorized access to password-protected data without proper documentation, "[f]orensic analysis conducted without required permissions," and "[d]eclaration from counsel retained after proceedings concluded." *See* ECF No. [158] at 4. In his Motion to Strike, Defendant did not seek to exclude evidence obtained from the laptop because of authentication defects, such as those enumerated above. Indeed, this is a new argument raised for the first time in the Reply, so the Court will not consider this argument. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'" (alteration in original; quoting *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994); other citations omitted)); *Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012) ("Because it is improper for Defendant to raise this new argument in its Reply brief, the argument will not be considered." (citations omitted)). The same is true for Defendant's argument that Plaintiffs engaged in a systematic pattern of evidence manipulation, attaching an "Article 11 Memo," Defendant's argument that Plaintiffs fabricated evidence "exposed by witness statements claiming delivery at Pliteq's Toronto office . . . during budget meetings," and Defendant's arguments about the "UAE Personal Data Protection Law." *Id.* at 8-11. As Defendant raises all

these arguments for the first time in his Reply, the Court declines to consider them under well-established principles of law.

### III. CONCLUSION

For the reasons explained above, Defendant's Motion to Strike Portions of Plaintiff's Expert Witness Report and Exclude Improperly Obtained Evidence, **ECF No. [150]**, is **DENIED**.

**DONE and ORDERED** in Chambers in Miami, Florida on February 25, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record