**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-CV-24868-ELFENBEIN

**PLITEQ, INC.**, *et al.*,

    Plaintiffs,

v.

**MAGED MOSTAFA**,

    Defendant.

_____/

## ORDER ON MOTION FOR ORDER TO SHOW CAUSE

**THIS CAUSE** is before the Court on Plaintiffs Pliteq, Inc. and Pliteq Building Materials Trading, LLC's Motion for Order to Show Cause, in which Plaintiffs ask the Court to order Defendant Maged Mostafa to "show cause why he should not be held in contempt for violating the injunctive relief provisions of the Final Judgment, ECF No. [288]." *See* ECF No. [320] at 1. Specifically, Plaintiffs assert Defendant has "failed and refused to follow a number" of "specific procedures designed to ensure" that Plaintiffs' "confidential and trade secret information" is "no longer accessible to" him "on any physical device or cloud-based storage account." *See* ECF No. [320] at 1.

Prompted by Plaintiffs' Motion for Order to Show Cause, the Court ordered Defendant to appear in person for a civil contempt hearing. *See* ECF No. [321] at 1–2. The Court held that civil contempt hearing on July 21, 2025 (the "Hearing"). *See* ECF No. [321]. During the Hearing, Plaintiffs argued, as part of their Motion for Order to Show Cause, that Defendant should be held in civil contempt for failing to comply with the Final Judgment and offered into evidence reports from their forensic computer expert and declarations from both that expert and Plaintiffs' Dubai

counsel. *See* ECF No. [290-43]; ECF No. [320-1]; ECF No. [323]; ECF No. [325-1]. In opposition, Defendant offered into evidence the declaration of his Dubai counsel, *see* ECF No. [322-2], and his own live testimony.

"Contempt of court is the disregard of judicial authority." *Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 180 F.R.D. 461, 465 (S.D. Fla. 1998); *see also Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007) (defining "civil contempt" as the "willful disregard of the authority" of the court). When a party fails to comply with an order of the court, the court "may use the remedy of a citation of contempt to enforce" that order. *See Combs v. Ryan's Coal Co.*, 785 F.2d 970, 980 (11th Cir. 1986); *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (noting that civil contempt proceedings are brought to enforce a court order that requires a party to act in some defined manner). A court's power to use a citation of civil contempt to compel compliance with its directives comes both from its inherent authority, *see Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (noting courts "have embraced an inherent contempt authority as a power necessary to the exercise of all others" (citations and quotation marks omitted)); *Popular Bank*, 180 F.R.D. at 465 ("The court's power to enforce compliance with its lawful orders is inherent."), and from the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 70(e) (noting a court may hold a "disobedient party in contempt"); Fed. R. Civ. P. 37(b)(2)(A)(vii) (allowing a court to treat "as contempt of court the failure to obey any" discovery "order except an order to submit to a physical or mental examination"). Either way, "[c]ivil contempt proceedings may be employed to coerce a contemnor into compliance with the court's order and to compensate a complainant for losses sustained."[1] *Popular Bank*, 180 F.R.D. at 465.

---

[1] The animating purpose behind a contempt sanction, and "the character of the relief itself," determine whether it is civil or criminal. *See Bagwell*, 512 U.S. at 828–29 (quotation marks omitted). A "contempt sanction is considered civil if it is remedial, and for the benefit of the complainant." *Id.* at 827 (quotation marks omitted); *see also id.* (defining "civil contempt sanctions" as "those penalties designed to compel

"A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992). "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Ga. Power Co.*, 484 F.3d at 1291 (emphasis omitted). "Once a prima facie showing of a violation has been made, the burden of production shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply." *Wellington Precious Metals*, 950 F.2d at 1529. That is because, "[w]here compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." *United States v. Rylander*, 460 U.S. 752, 757 (1983); *see also Combs*, 785 F.2d at 983 ("[I]t is improper to impose contempt sanctions of any sort if the alleged contemnor is not able to satisfy the court's directives.").

To "succeed on the inability defense, the alleged contemnor must go beyond a mere assertion of inability and establish that he has made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid." *Wellington Precious Metals*, 950 F.2d at 1529 (citation and quotation marks omitted). Indeed, "the alleged contemnor" must "produce detailed evidence specifically explaining why he cannot comply." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 740 (11th Cir. 2006). "[E]vasive and incomplete testimony will not satisfy" the alleged contemnor's "burden of production." *See Wellington Precious Metals*, 950 F.2d at 1530. This is a "high standard" that courts "construe . . . strictly." *See Combs*, 785 F.2d at 984. "Even

---

future compliance with a court order," which "are considered to be coercive and avoidable through obedience"); *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006). In contrast, a contempt sanction is criminal if it "is punitive, to vindicate the authority of the court." *See Bagwell*, 512 U.S. at 828 (quotation marks omitted).

if the efforts" a party "did make were substantial, diligent or in good faith, the fact that he did not make all reasonable efforts" would prevent him from "rebut[ting] the prima facie showing of contempt." *See id.* (cleaned up).

If "the alleged contemnor" makes "a sufficient showing," however, the "burden shifts back to the initiating party" to prove "ability to comply." *Wellington Precious Metals*, 950 F.2d at 1529; *see also Combs*, 785 F.2d at 984 (noting that the party seeking to show contempt "retains the ultimate burden of proof"). The court's "focus in a civil contempt proceeding is not on the subjective beliefs or intent of the alleged contemners in complying with the order, but whether in fact their conduct complied with the order at issue." *Ga. Power Co.*, 484 F.3d at 1291 (quotation marks omitted). While due process requires "a hearing in which the alleged contemnor may explain why the court should not make a contempt finding," *see Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991), that hearing can be an ordinary civil proceeding, *see Serra Chevrolet*, 446 F.3d at 1147 ("Civil contempt may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard"); *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 821 (11th Cir. 2010) (noting the alleged contemnor can "explain his noncompliance at a show cause hearing").

If, after hearing from the alleged contemnor, the court decides to impose civil contempt sanctions, they may be "compensatory" or "coercive." *See Watkins*, 943 F.2d at 1304. When a court chooses "to impose sanctions designed to ensure compliance, the sanctions cannot be any greater than necessary to ensure such compliance." *Id.* "When fashioning a sanction to secure compliance, a district court should consider the character and magnitude of the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.* (quotation marks omitted).

For the reasons explained on the record at the Hearing, the Court **FINDS** that although the Final Judgment, ECF No. [288], was a valid and lawful order, it was not clear and unambiguous. *See Ga. Power Co.*, 484 F.3d at 1291. Specifically, the Court finds that the language requiring Defendant to "immediately take such action *as is required* to obtain custody of the Laptop," *see* ECF No. [288] at 4 (emphasis added), is unclear and ambiguous as it does not specify what actions are "required" and leaves room for difference of opinion. As a result, Plaintiffs could not meet their burden of making a prima facie showing that Defendant violated a clear and unambiguous order, as is required for the Court to hold Defendant in civil contempt.[2] *See id.*; *Wellington Precious Metals*, 950 F.2d at 1529. Accordingly, Plaintiffs' Motion for Order to Show Cause seeking civil contempt sanctions against Defendant, **ECF No. [320]**, is **DENIED**.

During the Hearing, however, the Parties agreed to clarify the specific actions Defendant must take to comply with the Final Judgment as follows:

**A. Beelink Computer**[3]

    a. Defendant will deliver the Beelink computer identified in Plaintiffs' expert's declaration, *see* ECF No. [323], to Plaintiffs' Dubai counsel care of Wissam Dagher at DLA Piper by <u>**no later than July 24, 2025 at 5:00 p.m. Gulf Standard Time**</u>.

    b. Plaintiffs' expert will perform the Procedures defined in the Amended Final Judgment, *see* ECF No. [328]; ECF No. [323] at 4, on the Beelink computer.

    c. Plaintiffs' expert will not upload anything, including tracking software, onto the

---

[2] As Plaintiffs did not satisfy the second required element of the prima facie showing, the Court need not analyze whether Plaintiffs satisfied the third element.

[3] Although Plaintiffs also requested a finding of civil contempt against Defendant related to the Beelink computer, the Court declined to make such a finding as Plaintiffs did not specify that they were requesting the Beelink computer until they filed their Reply, ECF No. [324], one business day before the Hearing. At the commencement of the Hearing, Defendant agreed to make the Beelink Computer available for a forensic examination by Plaintiffs' expert.

CASE NO. 23-CV-24868-ELFENBEIN

   Beelink computer.

   d. Plaintiffs will return the Beelink computer to Defendant within 14 days of when Dagher receives it and, in any event, **no later than August 7, 2025**.

**B. Acer Laptop**

   a. Defendant will drop the criminal charges he filed in March 2025 against Plaintiffs and their CEO, Paul Downey, with prejudice.

   b. Defendant will instruct his Dubai counsel to cooperate with Plaintiffs' Dubai counsel (consisting of DLA Piper and Plaintiff's local Dubai counsel) to secure the release of the Acer Laptop, including by contacting the Dubai Police and the Dubai Public Prosecution to provide them with a copy of the Amended Final Judgment and to request that the Acer Laptop be returned to Plaintiffs' Dubai counsel.

**DONE and ORDERED** in Chambers in Miami, Florida on July 21, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record