UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-24868-ELFENBEIN

**PLITEQ, INC.**, *et al.*,

    Plaintiffs,

v.

**MAGED MOSTAFA**,

    Defendant.
_____/

## ORDER ON RENEWED MOTION FOR ORDER TO SHOW CAUSE

**THIS CAUSE** is before the Court on Plaintiffs Pliteq, Inc. and Pliteq Building Materials Trading, LLC's Renewed Motion for Order to Show Cause, in which Plaintiffs ask the Court to order Defendant Maged Mostafa to "to show cause why he should not be held in criminal contempt for violating the injunctive relief provisions of the Amended Final Judgment, ECF No. [327] and Order on Motion to Show Cause, ECF No. [328]" (the "Renewed Motion"). *See* ECF No. [335] at 1. In the Renewed Motion, Plaintiffs assert "Defendant has refused to comply" with both the Amended Final Judgment and the Court's order clarifying his obligations under the Amended Final Judgment by taking "affirmative steps to thwart this Court's orders, including by misleading this Court and the Dubai authorities." *See* ECF No. [335] at 1–2. Plaintiffs specify that Defendant has failed to "submit a clear request to the Dubai Authorities to withdraw his March 2025 criminal complaint and request the return of Pliteq's laptop," instead continuing "to advance his claims of criminal conduct by Pliteq." *See* ECF No. [335] at 2.

About three weeks after Plaintiffs filed the Renewed Motion, they filed a Request for Expedited Consideration (the "Request"). *See* ECF No. [338]. In the Request, they ask for "an

expedited ruling" on one specific aspect of the Renewed Motion: whether Defendant should be compelled to take the actions Plaintiffs identify to effectuate the withdrawal of "the criminal complaint he instituted in Dubai against Pliteq and Paul Downey." *See* ECF No. [338] at 1–2. Those actions include: (1) filing with the Dubai Criminal Court "a notarized withdrawal limited to stating" his name, his capacity, the case number, and that he "wishes to withdraw the case against Mr. Downey, without any substantive liability, and requests the Court to close the proceedings"; and (2) appearing at a November 5, 2025 hearing before the Dubai Criminal Court to "request the withdrawal of the case and that the withdrawal be formally recorded in the hearing minutes." *See* ECF No. [338] at 2.

Prompted by the Renewed Motion and the Request, the Court ordered Defendant to appear in person for a contempt hearing. *See* ECF No. [340] at 1. The Court held that contempt hearing on October 28, 2025 (the "Hearing"). *See* ECF No. [354]. During the Hearing, Plaintiffs asked the Court to initiate criminal contempt proceedings against Defendant and to require him to do several things: (1) submit the notarized withdrawal to the Dubai Criminal Court; (2) appear at the November 5 Dubai hearing to request that the withdrawal be formally recorded in the hearing minutes; and (3) deposit $100,000 into this Court's registry as a substantial security to ensure his appearance at the November 5 Dubai hearing. In support of that relief, Plaintiffs offered into evidence live testimony from their forensic computer expert, various communications between Defendant and the Dubai police, various communications between Defendant's lawyers and Plaintiffs' lawyers, and two declarations from Plaintiffs' Dubai lawyers. *See* ECF No. [334]; ECF No. [354].

Defendant, for his part, argued that he had complied with the Court's orders and, for that reason, he asked the Court to deny all of Plaintiffs' requested relief. In support, Defendant offered

2

live testimony from his Dubai lawyer (which the Court took over Zoom) and his own live testimony. At the close of evidence, both sides offered closing arguments, and the Court ruled on the Renewed Motion and the Request, as explained below.

"Contempt of court is the disregard of judicial authority." *Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 180 F.R.D. 461, 465 (S.D. Fla. 1998); *see also Bloom v. Illinois*, 391 U.S. 194, 201 (1968) (noting "criminal contempt is a crime in every fundamental respect" and exists as "protection of the institutions of our government and enforcement of their mandates"); *Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007) (defining "civil contempt" as the "willful disregard of the authority" of the court). When a party fails to comply with an order of the court, the court "may use the remedy of a citation of contempt to enforce" that order. *See Combs v. Ryan's Coal Co.*, 785 F.2d 970, 980 (11th Cir. 1986); *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (noting that civil contempt proceedings are brought to enforce a court order that requires a party to act in some defined manner); *Romero v. Drummond Co.*, 480 F.3d 1234, 1242–43 (11th Cir. 2007); 18 U.S.C. § 402 (allowing the willful disobedience of "any lawful writ, process, order, rule, decree, or command" to be punished as a crime). A court's power to use a citation of contempt to compel compliance with its directives comes both from its inherent authority, *see Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (noting courts "have embraced an inherent contempt authority as a power necessary to the exercise of all others" (citations and quotation marks omitted)); *Popular Bank*, 180 F.R.D. at 465 ("The court's power to enforce compliance with its lawful orders is inherent."), and from the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 70(e) (noting a court may hold a "disobedient party in contempt"); Fed. R. Civ. P. 37(b)(2)(A)(vii) (allowing a court to treat "as contempt of court the failure to obey any" discovery "order except an order to submit to a physical or mental

examination"); Fed. R. Crim. P. 42 (a) ("Any person who commits criminal contempt may be punished for that contempt after prosecution on notice.).

Contempt can be civil or criminal, and there are different purposes behind, and procedures to impose, each. *See Ga. Power Co.*, 484 F.3d at 1291; *Romero*, 480 F.3d at 1242–43. Starting with the different purposes, the animating purpose behind a contempt sanction, and "the character of the relief itself," determine whether it is civil or criminal. *See Bagwell*, 512 U.S. at 828–29 (quotation marks omitted). A "contempt sanction is considered civil if it is remedial, and for the benefit of the complainant." *Id.* at 827 (quotation marks omitted); *see also id.* (defining "civil contempt sanctions" as "those penalties designed to compel future compliance with a court order," which "are considered to be coercive and avoidable through obedience"); *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006); *Popular Bank*, 180 F.R.D. at 465 ("Civil contempt proceedings may be employed to coerce a contemnor into compliance with the court's order and to compensate a complainant for losses sustained."). By contrast, a contempt sanction is criminal if it "is punitive, to vindicate the authority of the court." *See Bagwell*, 512 U.S. at 828 (quotation marks omitted); *Romero*, 480 F.3d at 1242.

"The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance." *Bagwell*, 512 U.S. at 828 (quotation marks omitted). "Imprisonment for a fixed term similarly is coercive when the contemnor is given the option of earlier release if he complies." *Id.* "In these circumstances, the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." *Id.* (quotation marks omitted). Likewise, a fine is "civil and remedial if it either coerces the defendant into compliance

with the court's order, or compensates the complainant for losses sustained." *Id.* at 829 (citation modified). This can include "a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order," which "exert a constant coercive pressure" but "are purged" when "the jural command is obeyed." *See id.* "Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Id.*

"By contrast, a fixed sentence of imprisonment is punitive and criminal if it is imposed retrospectively for a completed act of disobedience, such that the contemnor cannot avoid or abbreviate the confinement through later compliance." *See id.* at 828–29 (citation and quotation marks omitted). That is because "[w]hen a contempt involves the prior conduct of an isolated, prohibited act, the resulting sanction has no coercive effect." *See id.* at 829. "The defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense." *Id.* (alteration adopted, citation omitted). As it relates to fines, a "flat, unconditional fine totaling even as little as $50 . . . is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Id.* (quotation marks omitted).

In sum, "[i]f the relief provided is a sentence of imprisonment, it is remedial" and therefore civil "if the defendant stands committed unless and until he performs the affirmative act required by the court's order," and it "is punitive" and therefore criminal "if the sentence is limited to imprisonment for a definite period." *See Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 632 (1988) (quotation marks omitted). "If the relief provided is a fine, it is remedial" and therefore civil "when it is paid to the complainant, and" it is "punitive" and therefore criminal "when it is paid to the court, though a fine that would be payable to the court is also remedial" and therefore civil "when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *See id.*

Moving to the different procedures, a "party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order." *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992). "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Ga. Power Co.*, 484 F.3d at 1291 (emphasis omitted). "Once a prima facie showing of a violation has been made, the burden of production shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply." *Wellington Precious Metals*, 950 F.2d at 1529. That is because, "[w]here compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." *United States v. Rylander*, 460 U.S. 752, 757 (1983); *see also Combs*, 785 F.2d at 983 ("[I]t is improper to impose contempt sanctions of any sort if the alleged contemnor is not able to satisfy the court's directives.").

To "succeed on the inability defense, the alleged contemnor must go beyond a mere assertion of inability and establish that he has made in good faith all reasonable efforts to meet the terms of the court order he is seeking to avoid." *Wellington Precious Metals*, 950 F.2d at 1529 (citation and quotation marks omitted). Indeed, "the alleged contemnor" must "produce detailed evidence specifically explaining why he cannot comply." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 740 (11th Cir. 2006). "[E]vasive and incomplete testimony will not satisfy" the alleged contemnor's "burden of production." *See Wellington Precious Metals*, 950 F.2d at 1530. This is a "high standard" that courts "construe . . . strictly." *See Combs*, 785 F.2d at 984. "Even if the efforts" a party "did make were substantial, diligent or in good faith, the fact that he did not make all reasonable efforts" would prevent him from "rebut[ting] the prima facie showing of

6

contempt." *See id.* (citation modified).

If "the alleged contemnor" makes "a sufficient showing," however, the "burden shifts back to the initiating party" to prove "ability to comply." *Wellington Precious Metals*, 950 F.2d at 1529; *see also Combs*, 785 F.2d at 984 (noting that the party seeking to show contempt "retains the ultimate burden of proof"). The court's "focus in a civil contempt proceeding is not on the subjective beliefs or intent of the alleged contemners in complying with the order, but whether in fact their conduct complied with the order at issue." *Ga. Power Co.*, 484 F.3d at 1291 (quotation marks omitted). While due process requires "a hearing in which the alleged contemnor may explain why the court should not make a contempt finding," *see Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991), that hearing can be an ordinary civil proceeding, *see Serra Chevrolet*, 446 F.3d at 1147 ("Civil contempt may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard"); *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 821 (11th Cir. 2010) (noting the alleged contemnor can "explain his noncompliance at a show cause hearing").

If, after hearing from the alleged contemnor, the court decides to impose civil contempt sanctions, they may be "compensatory" or "coercive." *See Watkins*, 943 F.2d at 1304. When a court chooses "to impose sanctions designed to ensure compliance, the sanctions cannot be any greater than necessary to ensure such compliance." *Id.* "When fashioning a sanction to secure compliance, a district court should consider the character and magnitude of the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.* (quotation marks omitted).

On the other hand, the "three elements of criminal contempt are (1) a lawful and reasonably specific order that (2) the defendant has violated (3) willfully." *Romero*, 480 F.3d at 1242. "A

7

federal court may punish contemptuous conduct that occurs outside its presence only after giving notice of the essential facts constituting the charged criminal contempt, requesting that the contempt be prosecuted by an attorney for the government, and affording other procedural protections." *Id.* (alteration adopted, quotation marks omitted); *see also* Fed. R. Crim. P. 42. "The defendant is not only entitled to be informed of the nature of the charge against him, but to know that it is a charge, and not a civil suit." *Id.* at 1242–43 (alteration adopted, quotation marks omitted). "In proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and [he] cannot be compelled to testify against himself." *Id.* at 1243 (alteration adopted) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 444 (1911)).

For the reasons explained on the record at the Hearing and memorialized briefly below, the Renewed Motion, **ECF No. [335]**, is **GRANTED in part and DENIED in part** and Plaintiff's Request for Expedited Consideration, **ECF No. [338]**, is **GRANTED**. Specifically, the Court **GRANTED in part and DENIED in part** Plaintiffs' request that Defendant be held in civil contempt, **DENIED WITHOUT PREJUDICE** Plaintiffs' request to initiate criminal contempt proceedings against Defendant, and granted the request for expedited consideration.

The Court found Defendant in civil contempt because it concluded Plaintiffs had carried their burden to prove by clear and convincing evidence that Defendant violated the Amended Final Judgment, ECF No. [327], and the Order on Motion to Show Cause, ECF No. [328]; that those Orders were clear and unambiguous; and that Defendant had the ability to comply with them. *See Ga. Power Co.*, 484 F.3d at 1291; *Wellington Precious Metals*, 950 F.2d at 1529. In reaching those findings, the Court noted it had already given Defendant the benefit of the doubt once when it declined to hold him in contempt the first time Plaintiffs requested that sanction and, to ensure

there was no further ambiguity, had clarified his obligations by entering the Amended Final Judgment and the Order on Motion to Show Cause.

The Court also found Defendant had not carried his burden of showing he was unable to comply with those orders. *See Wellington Precious Metals*, 950 F.2d at 1529. On that point, the Court noted Defendant did not even argue he was unable to comply; instead, he argued he did comply by submitting a memorandum to the Dubai police requesting the charges against Downey be waived. But as the Court explained at the Hearing, that memorandum is a weak, less than half-hearted attempt to have the charges waived. After reiterating over multiple pages Defendant's view that the laptop forming the basis for the charges belongs to him and was stolen by Downey, the memorandum ends with a one-sentence request to waive the charges "to avoid any action being taken against him by" this Court. *See* ECF No. [334-7] at 2–11. Even worse, Defendant later confirmed during an interview with the Dubai prosecutor that he views the laptop as his property that Downey stole, that the memorandum sets forth the evidence to support his claims against Downey, and that he does not wish to withdraw the charges. *See* ECF No. [334-9] at 2–4.

Contrary to Defendant's view, those actions do not comply with the Amended Final Judgment and the Order on Motion to Show Cause. Accordingly, because Plaintiffs carried their burden but Defendant did not, the Court **FOUND** Defendant in civil contempt. *See Ga. Power Co.*, 484 F.3d at 1291; *Wellington Precious Metals*, 950 F.2d at 1529. Having made that finding, the Court imposed the following coercive civil sanctions:

1. **No later than November 3, 2025**, Defendant **SHALL DEPOSIT** into this Court's registry $50,000 as security to ensure: (1) his submission of the withdrawal form described in paragraph 2 below, (2) his submission of the request to return and release the Acer laptop described in paragraph 3 below, and (3) his appearance at the November 5 hearing

9

described in paragraph 4 below.

2. Before the November 5, 2025 hearing, Defendant **SHALL SIGN** a notarized withdrawal of Criminal Case No. 26195/2025 to the Dubai Court of First Instance using the form found at ECF No. [337-1] at 7 and submit the withdrawal through the Court's electronic filing system.

3. Before the November 5, 2025 hearing, Defendant **SHALL SIGN** a notarized request for the release and return of the Acer laptop to the Dubai Public Prosecution, using the form found at ECF No. [334-5] at 2.

4. Defendant **SHALL APPEAR** at the November 5 hearing and present a hard copy of the withdrawal of Criminal Case No. 26195/2025 and have it formally recorded in the minutes. If the Dubai Criminal Court makes clear before November 5 that it will not allow Defendant to attend the hearing, or if on November 5 it does not allow Defendant to attend the hearing, Defendant **SHALL** promptly notify the Court of that fact.

5. Immediately after the November 5 hearing, Defendant **SHALL** electronically submit the request for the release and return of the Acer laptop to the Dubai Public Prosecution and the Jebel Ali Police Station.

6. After Defendant has (1) submitted the withdrawal form described in paragraph 2 above, (2) submitted the request to return and release the Acer laptop described in paragraph 3 above, and (3) appeared at the November 5 hearing described in paragraph 4 above, Defendant **SHALL FILE** an affidavit signed under penalty of perjury confirming that he has done those things and, after conferring with Plaintiffs' counsel, a motion requesting the release of the $50,000 security back to him.  If Defendant does not file that affidavit and motion, Plaintiffs may file a motion alerting the Court to Defendant's noncompliance

and requesting the release of the $50,000 security to them as partial compensation for the losses they have sustained. *See Hicks*, 485 U.S. at 632 (explaining a fine is remedial and therefore civil when it is paid to the complainant); *Bagwell*, 512 U.S. at 828; *Watkins*, 943 F.2d at 1304; *Popular Bank*, 180 F.R.D. at 465; ECF No. [327] at 1 (awarding Plaintiffs $3,100,000 in monetary damages).

As for Plaintiffs' request to initiate criminal contempt proceedings against Defendant, while the Court **FOUND** Defendant did willfully violate a lawful and reasonably specific order, *see Romero*, 480 F.3d at 1242, the Court chose not to exercise its discretion to order that relief at this time. Criminal contempt is the most severe of sanctions. *See Bloom*, 391 U.S. at 201 (noting "criminal contempt is a crime in every fundamental respect"). While the Court has the authority to initiate criminal contempt proceedings in this situation, *see Bagwell*, 512 U.S. at 831; *Romero*, 480 F.3d at 1242–43; *Popular Bank*, 180 F.R.D. at 465; 18 U.S.C. § 402; Fed. R. Civ. P. 70(e); Fed. R. Crim. P. 42(a), it will not use that authority just yet. Accordingly, the Court **DENIED WITHOUT PREJUDICE** Plaintiffs' request that the Court initiate criminal contempt proceedings against Defendant.

Finally, because the Request asked the Court to rule by October 31, 2025 on the part of the Renewed Motion relating to whether Defendant will be compelled to file a notarized withdrawal with, and appear at the November 5 hearing in front of, the Dubai Criminal Court, *see* ECF No. [338] at 2, and because this Order addresses that specific request for relief, the Request, **ECF No. [338]**, is **GRANTED**.

Now, a warning. With this Order, the Court has found Defendant in civil contempt and has imposed coercive sanctions crafted to ensure he purges that contempt. The Court finds that those actions are the most appropriate step at this stage. *See Watkins*, 943 F.2d at 1304 (noting

courts can fashion sanctions that fit the situation but that those sanctions cannot be any greater than necessary to ensure compliance).  But the Court **CAUTIONS** Defendant that if he does not purge his civil contempt by complying with the mandates in this Order, Plaintiffs are free to renew their request that the Court initiate criminal contempt proceedings against him.

    **DONE and ORDERED** in Chambers in Miami, Florida on October 29, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record