**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-CV-24868-ELFENBEIN

**PLITEQ, INC.**, *et al.*,

      Plaintiffs,

v.

**MAGED MOSTAFA**,

      Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION**
**FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL**

**THIS CAUSE** is before the Court on Defendant Maged Mostafa's Motion for Judgment

as a Matter of Law (the "Rule 50(b) Motion"), or alternatively, an Order Granting a New Trial (the

"Rule 59 Motion") (collectively, the "Motion"). ECF No. [300].  In the Rule 50(b) Motion,

Defendant seeks a judgment as a matter of law under Federal Rule of Civil Procedure 50(b) on

two bases: (1) certain testimony from the president/CEO of Plaintiffs Pliteq, Inc. ("Pliteq") and

Pliteq Building Materials Trading, LLC ("PBM") was improper, so the Court should have either

stricken it or issued a curative instruction to the jury to ameliorate its impact; and (2) the total

evidence overwhelmingly showed that Plaintiffs had suffered no actual damages, so no reasonable

jury could have arrived at the verdict in this case.  *See* ECF No. [300] at 7.  Alternatively, in the

Rule 59 Motion, Defendant seeks a new trial under Rule 59 on two bases: (1) the Court's denial

of his request to testify remotely unduly prejudiced him; and (2) the verdict is contrary to the law

and the evidence.  *See* ECF No. [300] at 7.  For the reasons explained below, the Motion, **ECF**

**No. [300]**, is **DENIED**.

## I.    RELEVANT BACKGROUND[1]

Because the Parties are familiar with the facts and the Court has recounted them in several earlier orders, *see* ECF No. [73]; ECF No. [214]; ECF No. [251], it includes only the most relevant details here.  As the Court has noted before, this case arose out of a dispute between an employer (Pliteq and PBM, collectively "Plaintiffs") and a former employee (Defendant). Pliteq is a Canadian corporation that operates in the engineering and manufacturing fields.  *See* ECF No. [120] at 2.  PBM is a Pliteq affiliate limited liability company organized under the laws of the United Arab Emirates ("UAE") and based in Dubai.  *See* ECF No. [120] at 2. Defendant is a resident of Dubai, who from 2018 to 2023 was PBM's General Manager.  *See* ECF No. [120] at 2, 5.

During his employment with Plaintiffs, Defendant signed two documents important to this case: an employment contract, *see* ECF No. [121-1], and a standalone confidentiality agreement, *see* ECF No. [121-2].  *See* ECF No. [120] at 16–17.  In those documents, Defendant agreed to "a strict confidentiality provision prohibiting the use or disclosure of PBM's confidential and trade secret information." *See* ECF No. [120] at 5–6. After an investigation revealed Defendant had performed an "unauthorized mass-download of Plaintiffs' most sensitive financial and trade secret Information," Plaintiffs fired Defendant in November 2023. *See* ECF No. [120] at 7–10. When Defendant refused to confirm that he had deleted Plaintiffs' proprietary information and refused to return his company-issued cellphone and laptop, Plaintiffs filed this lawsuit in December 2023. *See* ECF No. [1] at 7–9; ECF No. [120] at 2, 7–10.

---

[1] At the pretrial conference, Defendant "stipulated to liability on all counts of the Amended Complaint," including the allegations supporting those counts. *See* ECF No. [268]. But Defendant did not stipulate to allegations that he "acted willfully" or that Plaintiffs sustained damages, which were decided at trial. *See* ECF No. [268]. For that reason, the Court takes the facts in this section either from the Amended Complaint, ECF No. [120], or from the pretrial and trial transcripts, ECF No. [282]; ECF No. [293]; ECF No. [294].

In their Amended Complaint, filed in August 2024, Plaintiffs asserted seven claims: misappropriation of trade secrets under the Defend Trade Secrets Act, unfair competition, injunctive relief, breach of employment contract, breach of confidentiality agreement, breach of fiduciary duty, and conversion. *See* ECF No. [120] at 10–20. Plaintiffs sought punitive damages in their misappropriation, unfair competition, and breach of fiduciary duty claims. *See* ECF No. [120] at 10–15, 18–19. Plaintiffs also requested "damages addressing the consequences of Mostafa's misconduct" in their misappropriation and unjust enrichment claims, *see* ECF No. [120] at 12–15, and damages addressing the harm to their "reputation and goodwill" in the breach of fiduciary duty claim, *see* ECF No. [120] at 19.

## A. Defendant's Original Motion for Defendant to Testify Remotely

Although Defendant initially contested Plaintiffs' claims, at the pretrial conference, he "stipulated to liability on all counts of the Amended Complaint," so jury trial proceeded "only on the issues of whether Defendant acted willfully and whether Plaintiffs sustained any damages, including compensatory and punitive damages." *See* ECF No. [268]. Also at the pretrial conference, which occurred on Friday, April 4, 2025, defense counsel represented that Defendant had "confirmed" he would appear in person for the trial the following Monday, April 7. *See* ECF No. [282] at 47. On the morning of April 7, however, defense counsel informed the Court that Defendant was no longer planning to attend the trial in person because he was having "some issues" with his new company and the flight from Dubai was expensive, so he "made a decision that he didn't want to spend the effort to come" to Miami. *See* ECF No. [293] at 4–6. But Defendant did not object to the trial "moving forward" without him. *See* ECF No. [293] at 6.

Defense counsel requested that the Court allow Defendant to testify remotely from Dubai over Zoom. *See* ECF No. [293] at 4–5. The Court made clear Defendant would "have to brief"

the issue and explain why he should be allowed to testify remotely instead of in open court, as Rule 43(a) typically requires. *See* ECF No. [293] at 4–5. After considering case law from Plaintiffs, which Defendant agreed laid out the correct "good cause standard," the Court denied Defendant's request because he had not "demonstrated good cause or compelling circumstances." *See* ECF No. [293] at 6–7, 137–38, 142–43. Defendant had many months' notice of the trial date, and no "unexpected reasons" like "an accident or illness" had arisen to impair his ability to travel for the trial; instead, Defendant chose not to attend in person "merely for his own convenience" and to minimize his costs. *See* ECF No. [293] at 142–43.

In response to the Court's ruling, defense counsel noted he had talked to Defendant earlier in the day to explain that the Court might not allow him to testify remotely, and counsel learned during that conversation that Defendant had a trial set for April 10 in a related matter in Dubai court. *See* ECF No. [293] at 144–46. For that reason, Defendant argued he could not travel to Miami for this Court's April 7 trial and make it back to Dubai in time for that court's April 10 trial. *See* ECF No. [293] at 144–46. That detail did not change the Court's ruling, but the Court reminded defense counsel there was "still time if" Defendant wanted to "come testify live." *See* ECF No. [293] at 144–47. Defendant did not appear in Miami for trial, so the only witness testimony presented at trial came from Plaintiffs' Founder, President, and CEO Paul Downey ("Downey") and Plaintiffs' forensic expert Santiago Ayala ("Ayala"). *See* ECF No. [293] at 176–79; ECF No. [294] at 8–10.

**B. Defendant's Objection to Plaintiffs' Damages Assessment & Renewed Motion for Defendant to Testify Remotely**

During Downey's testimony on direct examination, he explained that Plaintiffs had spent $26 million on the research and development of their proprietary products and information. *See* ECF No. [293] at 183–85. The Court also admitted an exhibit acknowledging Plaintiffs' $26

4

million research and development costs.  *See* ECF No. [293] at 175–76; ECF No. [290-4] at 2. Downey testified that Plaintiffs' factory, equipment, formulas, consultant/customer database, test reports, and manufacturing process are "trade secrets" that provide them with a "competitive advantage."  *See* ECF No. [293] at 185–88.  He explained that Plaintiffs take precautions, including forbidding employees from transferring trade secret information to a "non-Pliteq system," to ensure their "confidential information stays within" their "control and is not at risk."  *See* ECF No. [293] at 197.  And Downey confirmed that Defendant had, without authorization, downloaded Plaintiffs' "confidential and trade secret information" in October 2023, which led to Plaintiffs firing Defendant in November 2023. *See* ECF No. [293] at 200–04, 213.

Downey testified that Defendant's misconduct in downloading Plaintiffs' proprietary information had "caused damage" to their "reputation and good will" because it had "an adverse effect on the value" of their research and development "through the threat and exposure of" their "trade secret information." *See* ECF No. [293] at 222.  In Downey's assessment, Plaintiffs had suffered damages in the amount of "ten percent" of their research and development expenditure, which equated to $2.6 million.  *See* ECF No. [293] at 222.  Defendant did not object when that testimony was elicited.  *See* ECF No. [293] at 222–23.  Instead, Defendant cross-examined Downey without asking about or mentioning the 10% damages assessment.  *See* ECF No. [293] at 223–63.

Although Plaintiffs originally indicated that they would present portions of Defendant's deposition testimony because he would no longer be in the courtroom to testify live, *see* ECF No. [293] at 7, 143–49, they ultimately decided not to do so, *see* ECF No. [294] at 84.  When Plaintiffs rested their case after testimony from Downey and Ayala, defense counsel indicated that he intended to present portions of Defendant's deposition testimony during Defendant's case in chief.

5

*See* ECF No. [294] at 85. Plaintiffs objected to Defendant's use of his own deposition testimony as improper under Rule 32 because Defendant's failure to attend the trial in person was his own choice. *See* ECF No. [294] at 85–91.

Defense counsel argued the Court should allow him to use Defendant's deposition testimony because Defendant did not choose the forum and had filed many related lawsuits in his preferred forum of Dubai, where he had a court hearing that formed part of the reason he chose not to attend the trial in person. *See* ECF No. [294] at 89. He also renewed his motion for Defendant to testify by Zoom, arguing that there was no difference between remote live testimony and live testimony in the courtroom and that Defendant had given deposition testimony by Zoom multiple times without objection. *See* ECF No. [294] at 89–96. The Court agreed with Plaintiffs and sustained the objection, finding that Defendant "procured his own absence" from the courtroom and had not shown a financial inability to attend in person. *See* ECF No. [294] at 91–96. So instead of reading parts of Defendant's deposition testimony into the record, defense counsel recalled Downey as a defense witness on the second day of trial in his case in chief. *See* ECF No. [294] at 112.

During Downey's direct testimony as a defense witness, defense counsel asked him about the $26 million Plaintiffs had spent on research and development over the 19 years they had been in business. *See* ECF No. [294] at 116–17. Defense counsel also asked Downey when he arrived at the damages assessment of 10% of that $26 million, and Downey answered that it was "before this litigation."[2] *See* ECF No. [294] at 117. After being refreshed by his own deposition transcript, which indicated Plaintiffs' damages estimate was still being formulated in December 2024, Downey explained that he had settled on the 10% assessment before the trial. *See* ECF No. [294]

---

[2] Altogether, defense counsel mentioned the $2.6 million estimate five separate times while examining Downey as a defense witness. *See* ECF No. [294] at 116–23.

at 117–21. Downey admitted that his testimony during the first day of trial was the first time Plaintiffs had suggested their damages were $2.6 million and that Plaintiffs had not submitted "the 2.6 million dollar number in response to any discovery." *See* ECF No. [294] at 121–22.

Prompted by that revelation, defense counsel asked for a sidebar and explained to the Court and Plaintiffs' counsel that Defendant had been "ambushed" by Plaintiffs' failure to disclose their $2.6 million damages assessment before trial. *See* ECF No. [294] at 122. The Court reviewed Plaintiffs' Rule 26 initial disclosures and remarked that they contained "no actual computation" and were simply "a regurgitation of the allegations" of the Amended Complaint. *See* ECF No. [294] at 122–24. As a result, the Court instructed Plaintiffs that they could tell the jury about the $26 million they spent on research and development, which was disclosed before trial, but they could not "tether" Downey's 10% assessment to the $26 million or tell the jury that Plaintiffs' amount of damages "is ten percent" of the research and development number because that estimate had not been disclosed before trial. *See* ECF No. [294] at 125–26. Defense counsel requested that the Court also issue a curative instruction because the jury had been "left with the impression" that Plaintiffs' "damages are 2.6 million dollars," which the Court indicated it would consider at the charge conference. *See* ECF No. [294] at 125–26.

### C. Defendant's Rule 50(a) Motion

After Defendant rested his case, defense counsel moved for partial judgment as a matter of law under Rule 50(a) as to the damages component of Plaintiffs' misappropriation, breach of fiduciary duty, and conversion claims (the "Rule 50(a) Motion"). *See* ECF No. [294] at 130–32. First, he argued Plaintiffs' $2.6 million damages estimate "should have been disclosed at the deposition or some time during the case, not on the first day of trial." *See* ECF No. [294] at 130. Second, he argued Plaintiffs had "not established any damages other than attorney's fees" and

"maybe" expert costs.  *See* ECF No. [294] at 130.  In response, Plaintiffs argued four points: (1) Defendant's Rule 50(a) Motion was untimely because he should have made it at the close of Plaintiff's case; (2) Defendant had stipulated that Plaintiffs had sustained damages but not the amount of damages they sustained; (3) Plaintiffs were entitled to at least nominal damages, which would support an award of punitive damages; and (4) Plaintiffs had shown compensatory damages through Downey's testimony about the harm to their reputation and goodwill that came from the impairment of the value of their $26 million research and development investment.  *See* ECF No. [294] at 132–40.

The Court denied Defendant's Rule 50(a) Motion.  *See* ECF No. [294] at 140–42.  As to the two procedural arguments, the Court found that Rule 50(a) allows Defendant to make his motion "at any time before the case is submitted to the jury," Fed. R. Civ. P. 50(a)(2), which he had done, and that the pretrial stipulation left open for trial the question of "whether Plaintiffs sustained any damages."  *See* ECF No. [294] at 132–35; ECF No. [268].  As to the substantive arguments, the Court agreed with Plaintiffs that nominal damages are available for breach of fiduciary duty and breach of contract claims under Florida law, which meant that Plaintiffs' breach of fiduciary duty claim could go to the jury.  *See* ECF No. [294] at 135–42.  The Court also found that the issue of Plaintiffs' entitlement to punitive damages could go to the jury because those damages were "tethered to the breach of fiduciary duty" in the Amended Complaint.  *See* ECF No. [294] at 139.  The Court noted that the jury might find Downey's 10% estimate "speculative" but concluded that, when viewed in the light most favorable to Plaintiffs, Downey's testimony about the harm to Plaintiffs' reputation, goodwill, and the value of their research and development gave the jury a legally sufficient evidentiary basis on which it could find Plaintiffs had sustained compensatory damages.  *See* ECF No. [294] at 139–41.

Finally, on Plaintiffs' failure to disclose the $2.6 million damages estimate before trial, the Court agreed with Plaintiffs that Defendant had waited too long to request a "curative instruction" striking the testimony and telling the jury to "disregard" it.  *See* ECF No. [294] at 141–42. The Court found that the "appropriate time to request a curative instruction would have been at the moment" Downey "initially testified" about the $2.6 million damages estimate on the first day of trial, not after Defendant's own examination of Downey on the second day of trial when counsel repeatedly brought it up again. *See* ECF No. [294] at 142.  For those reasons, the Court denied Defendant's request for a curative instruction, "but given the failure to disclose" the number "in discovery," the Court reiterated its ruling that Plaintiffs could not "give the jury a specific percentage amount of" research and development as a "calculus of what the damages are." *See* ECF No. [294] at 142.

### D.  The Jury Verdict

The Court then instructed the jury.  *See* ECF No. [294] at 143–74.  Relevant here, the Court told the jury that the goal of compensatory damages is to "make the injured party whole to the extent it is possible [to] measure the injury sustained in terms of money." *See* ECF No. [294] at 168. The Court also explained to the jury that it could award exemplary damages if it found Defendant had "engaged in willful and malicious misappropriation" of Plaintiffs' trade secrets but that the amount of exemplary damages it awarded could not be "more than two times the amount" it "awarded for compensatory damages." *See* ECF No. [294] at 168–69.

After the Court instructed the jury, the Parties gave their closing arguments. *See* ECF No. [294] at 174–203.  In Plaintiffs' closing argument, they reviewed the verdict form with the jury. *See* ECF No. [294] at 184–86.  The form asked a series of four questions, each about whether Plaintiffs sustained a specific type of damage: compensatory, nominal, exemplary, and punitive.

9

*See* ECF No. [294] at 185–86.  In discussing those damage categories, Plaintiffs explained that compensatory damages "are to compensate" them for the "harm that occurred" to their "innovation," on which they "spent $26 million."  *See* ECF No. [294] at 184.  And in response to defense counsel's suggestion that their compensatory damage evidence was based on speculation, *see* ECF No. [294] at 187–88, Plaintiffs acknowledged that it is "difficult to put a dollar figure on betrayal" but argued that the damage to their reputation and goodwill was "real" and "not speculative," so the jury could "place a reasonable value on that damage," *see* ECF No. [294] at 201–02.  Plaintiffs also argued the jury should award exemplary damages because Defendant's misappropriation of their proprietary information was "willful and malicious" and should award punitive damages because Defendant's breach of his fiduciary duty was deliberate.  *See* ECF No. [294] at 186.

When the jury returned a verdict, the Court called counsel to sidebar and explained that the verdict was "inconsistent."  *See* ECF No. [294] at 214.  The verdict was inconsistent because the jury had awarded an amount for exemplary damages that was "more than two times of the compensatory damages," which the law does not allow.  *See* ECF No. [294] at 214.  The Court explained that it had to reinstruct the jury on the law to ensure that it understood the legal inconsistency of its answers on the verdict form and asked the parties how they wanted to proceed.  *See* ECF No. [294] at 214–15.  The Parties agreed that the verdict should be published and that the jury should then be reinstructed.  *See* ECF No. [294] at 214–16.  The original verdict found that Plaintiffs had not sustained any compensatory damages but that Plaintiffs had sustained nominal, exemplary, and punitive damages.  *See* ECF No. [294] at 216–17.  As part of that original verdict, the jury awarded Plaintiffs no compensatory damages, $100 in nominal damages, $1 million in

exemplary damages, and $1.6 million in punitive damages.[3]  *See* ECF No. [294] at 216–17.

Once the Court read the verdict, it called counsel back to sidebar.  *See* ECF No. [294] at 218.  Plaintiffs asked the Court to "provide a clarifying instruction to the jury and request [it] to redeliberate" limited to "Questions 1 and 3."  *See* ECF No. [294] at 218.  Defendant argued that the Court "can't really fix this, put it back in, so" the parties would "have to deal with the verdict the way it is" and file "post-trial motions," including for a new trial.  *See* ECF No. [294] at 218.  Plaintiffs suggested "Rule 51(b) provides" that the Court can choose to reinstruct the jury, and the Court agreed that it could "re-read the exemplary damages instruction" and tell the jury to "return a verdict that is consistent with that instruction as it relates to Questions 1 and 3."  *See* ECF No. [294] at 219.  Though Defendant again noted he did not "see any way to fix it," he agreed with the Court's proposed approach.  *See* ECF No. [294] at 220–21.

With agreement of the Parties, the Court told the jury that there was "an inconsistency in the verdict in the way" it had "answered Questions 1 and 3."  *See* ECF No. [294] at 221.  The Court then "re-read the law as it relates to exemplary damages" and asked the jury "to retire to the jury room and to continue" deliberations "to provide answers to Questions 1 and 3 that are consistent with the law."  *See* ECF No. [294] at 221. The Court also sent "the jury instructions back to the jury room" and told the jury to indicate when it had "rendered a verdict consistent with" the exemplary damage instruction.  *See* ECF No. [294] at 221–22.

---

[3] The jury also purported to award Plaintiffs "attorney's fees" as part of its nominal damages award, *see* ECF No. [294] at 217, "but the entitlement to and amount of attorney's fees are a matter of law to be decided by the Court," *see* ECF No. [288] at 1 n.1; Fed. R. Civ. P. 54(d)(2) (noting that a claim for attorney's fees "must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages" and that the motion must "be filed no later than 14 days after the entry of judgment"); *Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1578–79 (11th Cir. 1990) ("This Court has held that there is no constitutional right to have a jury decide whether or not to award attorneys' fees."); *Bos. Sci. Corp. v. Ruiz*, No. 05-CV-21270, 2005 WL 8155008, at *1–*3 (S.D. Fla. July 18, 2005) (recognizing that entitlement to and the amount of attorney's fees is not properly a jury question and instead is a post-judgment matter for the judge to decide).

While deliberating, the jury sent a question to the Court: "Is it correct to say that you must agree to compensatory damages in order to award exemplary damages?" *See* ECF No. [294] at 222; ECF No. [285] at 1.  After consulting with the Parties, the Court sent back this answer: "The jury must agree unanimously to compensatory damages in order to award exemplary damages." *See* ECF No. [294] at 226; ECF No. [285] at 1.  The jury then returned with an updated verdict. *See* ECF No. [294] at 228. The updated verdict found that Plaintiffs had sustained all four categories of damages (compensatory, nominal, exemplary, and punitive).  *See* ECF No. [294] at 228–29; ECF No. [286].  As part of the updated verdict, the jury awarded Plaintiffs $500,000 in compensatory damages, $100 in nominal damages, $1 million in exemplary damages, and $1.6 million in punitive damages.[4]  *See* ECF No. [294] at 228–29; ECF No. [286].

### E.  Defendant's Rule 50(b) Motion

After the jury rendered its updated verdict, Defendant renewed his Rule 50(a) Motion based on "the issue of the 2.6 million dollar amount," arguing that the jury "heard that and that's what [it] awarded is the 2.6 when you add the one and the 1.6."  *See* ECF No. [294] at 233.  When Defendant clarified that the relief he sought through the renewed Rule 50(a) Motion was a new trial, the Court instructed Defendant he would "have to do that by way of written motion."  *See* ECF No. [294] at 233.  Defendant then filed the combined Rule 50(b) Motion and Rule 59 Motion.

In the Rule 50(b) Motion, Defendant asks the Court to enter judgment as a matter of law in his favor under Rule 50(b) for two reasons: (1) Plaintiffs failed to disclose before trial "the amount of damages they were seeking or how those damages were calculated," so the Court should have stricken or given the jury a curative instruction about Downey's "improper" damages testimony; and (2) the "evidence was overwhelming" that Plaintiffs "suffered no actual damages,"

---

[4] The jury again tried to award "attorney's fees" as part of nominal damages. *See* ECF No. [294] at 229.

so "no reasonable jury could have" rendered the verdict here. *See* ECF No. [300] at 4–7.

In their Response, Plaintiffs contend Defendant's Rule 50(b) Motion fails for several reasons. *See* ECF No. [305] at 2–16. Procedurally, Plaintiffs argue that evidentiary issues are not a proper basis for a Rule 50 motion in general and that Defendant failed to include the damages issue involving Downey's testimony as part of his Rule 50(a) motion, which means he cannot raise it now. *See* ECF No. [305] at 2–5. Substantively, Plaintiffs argue the Court did not err in allowing Downey's testimony to stand uncorrected because "Rule 26 does not require disclosure of specific legal theories or numbers to support non-pecuniary damages" like harm to reputation or goodwill. *See* ECF No. [305] at 5–8. Plaintiffs also argue Defendant failed to timely object to Downey's damage estimate because the testimony was first elicited during Plaintiffs' direct examination of Downey as a plaintiff witness on the first day of trial, but Defendant did not object until after Defendant's direct examination of Downey as a defense witness on the second day of trial. *See* ECF No. [305] at 8–11. They argue defense counsel invited any error because he himself "specifically referenced and elicited" the same damages testimony from Downey five separate times during his direct examination off the witness. *See* ECF No. [305] at 11–14. Finally, Plaintiffs argue their evidence supporting compensatory damages is sufficient because liability was based on Defendant's "unauthorized use" of their trade secret information and "his threat to disclose it, not actual disclosure," so the absence of proof that Defendant trafficked their information does not mean they suffered no damages. *See* ECF No. [305] at 15–16. In fact, they argue that Downey testified Defendant's possession and possible disclosure of their information devalued their research and development, which caused harm to Plaintiffs' reputation and goodwill. *See* ECF No. [305] at 15–16.

In his Reply, Defendant argues that the Court's "failure to strike testimony or issue" a

"curative instruction is" a "proper basis for judgment as a matter of law" under this Circuit's precedent and "was argued at trial." *See* ECF No. [308] at 2–5. Similarly, he argues that this Circuit's precedent "requires disclosure of loss of goodwill or reputation damages" under Rule 26 and that the "complex financial calculations" involved in quantifying those damages "require expert testimony." *See* ECF No. [308] at 5–6. Defendant argues he did not waive his right to object to Downey's testimony because his objection was timely under Circuit caselaw permitting delayed objections when they were "sufficiently contemporaneous to give the trial court the opportunity to correct errors that might otherwise require a new trial." *See* ECF No. [308] at 6–7. Finally, Defendant argues he did not invite any error because he had to elicit from Downey testimony showing a discovery violation (the failure to disclose the $2.6 damages estimate before trial) had occurred to alert the Court to the "ambush" Plaintiffs attempted. *See* ECF No. [308] at 8.

## F. Defendant's Rule 59 Motion

Alternatively, in the Rule 59 Motion, Defendant asks the Court to grant him a new trial under Rule 59 for two reasons: (1) he was "unduly prejudiced" by the Court's decision not to allow him to testify remotely from Dubai over Zoom, so the trial was "unfair"; and (2) the "verdict is contrary to the law and the evidence" because it "improperly awards both compensatory and nominal damages" and "improperly awards attorney's fees as nominal damages." *See* ECF No. [300] at 7, 17–20.

In their Response, Plaintiffs argue that Defendant gave "no good cause" or "compelling circumstances to permit remote testimony" — instead resting on "grounds of expense and inconvenience" — and that his inability to offer live testimony was a consequence "of his own strategic, last-minute decision not to appear at trial." *See* ECF No. [305] at 16–19. They argue

14

"the jury's award of both nominal and compensatory damages" was proper because the law would allow the jury to award nominal damages on Plaintiffs' "claim for breach of fiduciary duty" while at the same time "awarding compensatory damages for misappropriation." *See* ECF No. [305] at 19–20. Finally, they argue the verdict form's reference to attorney's fees "is not grounds for a new trial" because Defendant, not Plaintiffs, raised that issue with the jury. *See* ECF No. [305] at 20. For that reason, Defendant invited any error in the jury's attempt to award attorney's fees as part of nominal damages.[5] *See* ECF No. [305] at 20.

In his Reply, Defendant argues Plaintiffs fail to appreciate the difference between his original motion to allow remote testimony, which occurred before jury selection, and his renewed motion to allow remote testimony, which occurred when Plaintiffs rested their case without using Defendant's deposition testimony as they had initially intended to do. *See* ECF No. [308] at 8. He argues "the change in circumstances when Plaintiffs rested their case" without using Defendant's deposition testimony "established the good cause and compelling circumstances to permit remote testimony" at that point. *See* ECF No. [308] at 8. Defendant also argues that, although he "ultimately acquiesced to the simple version of verdict form prepared by the Court," he initially "sought to avoid" a situation where it was unclear for "which counts" the jury awarded damages because he worried the jury could be confused by the verdict form's request for "just one set of numbers" despite the "overlapping claims." *See* ECF No. [308] at 8–10. He asserts that comparing the jury's first and second verdicts makes clear it was indeed "confused and misapplied the law." *See* ECF No. [308] at 8–10. Finally, he argues that the "jury was plainly confused and misapplied the law" when it awarded attorney's fees and that "the solution to this error is not for the parties (and the Court) to pick and choose what parts of the verdict it should follow" but instead to hold a

---

[5] Plaintiffs acknowledge that "entitlement to and amount of attorney's fees are matters of law to be decided by the Court, post-trial, and not by the jury." *See* ECF No. [305] at 20.

15

new trial. *See* ECF No. [308] at 10.

## II.  LEGAL STANDARDS

### A.  Judgment as a Matter of Law After Jury Trial (Rule 50)

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1).  A party may move for judgment as a matter of law "at any time before the case is submitted to the jury" and "must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2).  If the court does not grant the motion, "the movant may file a renewed motion for judgment as a matter of law" as long as he files it no "later than 28 days after the entry of judgment." *See* Fed. R. Civ. P. 50(b).  A renewed motion "may include an alternative or joint request for a new trial under Rule 59." *See* Fed. R. Civ. P. 50(b).

"A Rule 50(b) motion is a renewal of a Rule 50(a) motion." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004).  For that reason, the Eleventh Circuit "repeatedly has made clear that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury." *See id.*  A "party cannot assert grounds in the renewed motion that it did not raise in the earlier motion" because Rule 50(b) is designed "to avoid making a trap out of" a motion for judgment as a matter of law, so it must ensure "opposing counsel will not be ambushed or sandbagged regarding the sufficiency of the evidence adduced at a point in the trial proceedings when it is too late to address

16

possible insufficiencies."[6]  *See id.* (quotation marks omitted).  "Strict identity of issues, however, is not required. So long as they are closely related, such that opposing counsel and the trial court may be deemed to have notice of the deficiencies asserted by the moving party, the purposes of the rule will be satisfied."  *Howard v. Walgreen Co.*, 605 F.3d 1239, 1243 (11th Cir. 2010) (quotation marks omitted).

"In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *See* Fed. R. Civ. P. 50(b).  "Judgment as a matter of law is appropriate only if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 591 (11th Cir. 2019) (quotation marks omitted).  "If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed. The court must state the grounds for conditionally granting or denying the motion for a new trial."  *See* Fed. R. Civ. P. 50(c)(1).

"A district court should grant judgment as a matter of law when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272, 1278 (11th Cir. 2005) (citation omitted); *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) ("[I]n ruling on a party's renewed motion under Rule 50(b) after the jury has rendered a verdict, a court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence.").  On the other hand, the "court should deny it if the plaintiff presents enough evidence to create a substantial conflict in the evidence on an essential element of the plaintiff's case."

---

[6] For the same reason, "a district court does not have the authority under Rule 50(b) to rule *sua sponte* on issues not raised by the parties." *See Doe*, 394 F.3d at 903.

*Pickett*, 420 F.3d at 1278 (citation omitted); *see also Campbell v. Rainbow City*, 434 F.3d 1306, 1312 (11th Cir. 2006) (considering "whether sufficient conflict exists in the evidence to necessitate submitting the matter to the jury or whether the evidence is so weighted in favor of one side that that party is entitled to succeed in his or her own position as a matter of law" (quotation marks omitted)); *XTec, Inc. v. Hembree Consulting Servs., Inc.*, 183 F. Supp. 3d 1245, 1252 (S.D. Fla. 2016). Although courts "look at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts." *Campbell*, 434 F.3d at 1312 (quotation marks omitted).

## B. New Trial (Rule 59)

After a jury trial, the "court may, on motion, grant a new trial on all or some of the issues" to any party for "any reason for which a new trial has heretofore been granted in an action at law in federal court." *See* Fed. R. Civ. P. 59(a)(1)(A). "A motion for a new trial must be filed no later than 28 days after the entry of judgment." *See* Fed. R. Civ. P. 59(b). "The decision to grant a new trial pursuant to Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure is committed to the discretion of the trial court." *SEC v. Complete Bus. Sols. Grp., Inc.*, 608 F. Supp. 3d 1231, 1239 (S.D. Fla. 2022) (quotation marks omitted); *see also Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1334 (S.D. Fla. 2006) ("A trial judge has greater discretion in ruling on a motion for new trial than when ruling on a motion for judgment as a matter of law. This is because even if the evidence in support of the verdict is substantial, a new trial may be ordered if the verdict is against the great weight of the evidence, if damages are excessive and shock the conscience of the court, if substantial errors occurred during the proceedings, or to prevent injustice.").

"When ruling on a motion for a new trial, a trial judge must determine if in his opinion, the

verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *See Ins. Co. of N. Am. v. Valente*, 933 F.2d 921, 922–23 (11th Cir. 1991) (citation modified). "To assure that the judge does not simply substitute his judgment for that of the jury," "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *See id.* at 923 (citation modified). "Although a comprehensive list of the grounds for granting a new trial is elusive, the Supreme Court has held that a motion for a new trial may rest on the fact that 'the verdict is against the weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.'" *Alphamed*, 432 F. Supp. 2d at 1334 (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

"The erroneous admission of evidence or the failure to admit highly probative evidence can at times warrant a new trial. To grant a new trial based on these grounds the moving party must (1) clearly establish that the Court improperly admitted or excluded evidence, and (2) that the admission or exclusion of this evidence had a substantial prejudicial effect on the verdict." *Lockaby v. JLG Indus., Inc.*, No. 04-CV-60040, 2005 WL 8154687, at *4 (S.D. Fla. Dec. 13, 2005); *see also Martin-Viana v. Royal Caribbean Cruises Ltd.*, No. 23-CV-21171, 2025 WL 253414, at *3 (S.D. Fla. Jan. 21, 2025). "In assessing evidentiary rulings already made," the "question is whether the exclusion or admission of evidence affected" a party's "substantial rights." *See Complete Bus. Sols.*, 608 F. Supp. 3d at 1239; *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1446 (11th Cir. 1984). "Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties." *Perry*, 734 F.2d at 1446. "The burden of demonstrating

that substantial rights were affected rests with the party asserting error." *Id.*; *see also Complete Bus. Sols.*, 608 F. Supp. 3d at 1239.

### III.    DISCUSSION

#### A.  Judgment as a Matter of Law After Jury Trial Under Rule 50

As an initial matter, the Court agrees with Defendant that evidentiary issues can be raised in Rule 50(b) motions, *see Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1338–42 (11th Cir. 2020), and that he sufficiently raised Downey's testimony as part of his Rule 50(a) Motion so as to preserve the argument for his Rule 50(b) Motion, *see* ECF No. [294] at 130, 141. The Eleventh Circuit has considered evidentiary issues raised as bases for Rule 50(b) Motions. *See Crawford*, 977 F.3d at 1338–42 (analyzing an evidentiary issue involving expert testimony raised in a Rule 50(b) Motion).  And Defendant offered enough argument about Plaintiffs' failure to disclose the $2.6 million damages estimate to put the Court on notice of what he considered to be erroneous, *see* ECF No. [294] at 130 ("There's really the 2.6 million dollars is troubling that that occurred. That should have been -- our position is that should have been disclosed at the deposition or some time during the case, not on the first day of trial."); ECF No. [294] at 141 ("And the only other issue would be the failure to disclose any damage number before trial and ambush that we talked about."), and what relief he sought to remedy that error, *see* ECF No. [294] at 141 (requesting a "curative instruction" and to "strike the testimony and tell the jury to disregard it").

#### 1.  The Court did not abuse its discretion in allowing Downey's damages testimony

Moving to the merits, the Court agrees with Plaintiffs that Defendant's Rule 50(b) Motion is due to be denied.  Starting with Downey's damages testimony, Defendant both waited too long to object to it and invited any error that occurred because of it.  First, though Defendant is correct that the Eleventh Circuit has in some cases considered the merits of delayed objections, *see, e.g.*,

*Murphy v. City of Flagler Beach*, 761 F.2d 622, 626 (11th Cir. 1985) (reaching the merits of an evidentiary objection because, while delayed, it still gave "the trial judge a chance to correct errors" and "reevaluate his ruling," so it was "clearly sufficient to serve the purposes" of the "contemporaneous objection" requirements of Federal Rule of Evidence 103(a)), more recent cases make clear that "trial judges have a lot of discretion in ruling a belated objection untimely," *Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1297 (11th Cir. 2014). Indeed, the Eleventh Circuit has explained that if a party "sits on his objection until the close of the" offensive "testimony, the trial judge can—and very likely will—call it untimely, a decision" it would then review only for plain error. *See id.* (noting that a party "can wait and try to object later" but that doing so "risks losing the argument entirely to the contemporaneous-objection rule").

The Court's language in *Bates* reaffirms the well-settled principle that the trial judge has broad discretion to decide whether an objection is timely. *See, e.g.*, *Henderson v. Ford Motor Co.*, 72 F.4th 1237, 1243 (11th Cir. 2023) (noting the district court has "wide" and "considerable discretion in determining" Rule 26 evidentiary issues). And under the circumstances here, where Defendant waited an entire day to object to Downey's testimony about a damages assessment Plaintiffs had not disclosed before trial, the Court acted well within its wide discretion in deeming that objection untimely. As Plaintiffs point out, between Downey's first mention of the $2.6 million and Defendant's objection to it, Plaintiffs presented their entire case in chief and Defendant began his own. *See* ECF No. [305] at 8–11. Indeed, Defendant waited to raise this objection until after: (1) Plaintiffs completed Downey's examination on Day 1 of trial; (2) Plaintiffs called and examined a second witness, Ayala, on Day 2 of trial; (3) Plaintiffs admitted additional exhibits into evidence on Day 2 of trial; (4) Plaintiffs rested their case in chief on Day 2 of trial; and (5) Defendant called Downey as a witness in his case in chief. In fact, it was not until Defendant

elicited additional testimony regarding the $2.6 million in damages from Downey, during which defense counsel himself mentioned or elicited the supposedly erroneous damages assessment five separate times, that Defendant finally objected to the testimony at sidebar. *See* ECF No. [294] at 116–23.

Although the Court acknowledges the difficult position defense counsel was in after joining the defense team the morning trial began, *see* ECF No. [293] at 4, counsel's unfamiliarity with the case (including the scope of Plaintiffs' Rule 26 disclosures) does not excuse his belated objection. And contrary to Defendant's assertion, defense counsel did not need to elicit testimony about the discovery violation to argue that Plaintiffs were trying to "ambush" Defendant. *See* ECF No. [308] at 8. Indeed, defense counsel could have raised that issue with the Court outside the presence of the jury — at sidebar or in any of the many conferences the Court held with counsel during the trial — just as the parties did with a host of other matters that had the potential to prejudice deliberations. Accordingly, the Court finds Defendant's objection to Downey's testimony about the $2.6 million damages assessment was untimely, waived, and, as a result, does not support judgment as a matter of law. *See, e.g.*, *United States v. Olano*, 507 US 725, 733 (1993) (recognizing that waiver, which is an "intentional relinquishment or abandonment of a known right," precludes a party from later asserting the waived issue was error (citation omitted)).

Second, even assuming Defendant's objection was timely, he invited any error. As the Court has explained several times, Defendant's case in chief included additional testimony from Downey about the $2.6 million damages assessment; in fact, defense counsel mentioned or elicited that testimony five separate times during his direct examination of Downey. *See* ECF No. [294] at 116–23. Those instances served to highlight the testimony, effectively drawing more and more attention to Downey's assessment, as Plaintiffs' CEO, of what Defendant's conduct had cost them.

And it is hornbook law that when defense counsel's own questions "elicit[] the very testimony about which he now complains, he is entitled to no relief." *See United States v. Sarras*, 575 F.3d 1191, 1216 (11th Cir. 2009); *cf. United States v. Jernigan*, 341 F.3d 1273, 1289 (11th Cir. 2003) ("In the context of a district court's decision to admit certain evidence, the accepted rule is that where the injection of allegedly inadmissible evidence is attributable to the action of the defense, its introduction does not constitute reversible error." (citation modified)). Defendant's "claimed error is 'invited error,'" which means it is likely "unreviewable" in a Rule 50(b) Motion.[7]  *See Sarras*, 575 F.3d at 1216.

Finally, even if Defendant's objection had been timely and not invited, Downey's testimony would still not be grounds for granting him judgment as a matter of law.  That is because the Court recognized at trial the potential prejudicial effect to Defendant of Plaintiffs' belated disclosure of the $2.6 million damages assessment and remedied that potential prejudice in the way it found most appropriate.  Specifically, during the sidebar in which Defendant first objected to the testimony, the Court noted it had "a major issue" with Plaintiffs providing "no information about the damages" assessment earlier such that Defendant was "hearing about it for the first time here in trial."  *See* ECF No. [294] at 124–25.  The Court then ruled that Plaintiffs would not be allowed "to tether" Downey's 10% assessment to the $26 million they had spent on research and development in their arguments to the jury because Plaintiffs had not given Defendant "notice" of that amount, so they would not be permitted to ask the jury for $2.6 million "for the first time here in trial."  *See* ECF No. [294] at 125–26.

---

[7] The Court also notes that Defendant's requested relief — for the Court to strike the testimony and instruct the jury not to consider it — was unlikely to cure any problem with the jury having heard it, as the Court would have had to strike not only Downey's isolated mention of the $2.6 million in damages during Plaintiff's case in chief, *see* ECF No. [293] at 222–23, but also all the testimony about that assessment Defendant himself elicited during his own case in chief, *see* ECF No. [294] at 116–23.

That limitation to Plaintiffs' closing argument was the Court's remedy to punish Plaintiffs' failure to fully comply with their Rule 26 disclosure obligations and to prevent a "trial by ambush." *See* ECF No. [294] at 126.  And as the Eleventh Circuit has made clear, "Rule 37 gives a trial court discretion to decide how best to respond to a litigant's failure to make a required disclosure under Rule 26." *See Taylor*, 940 F.3d at 593.  Forbidding Plaintiffs from tying Downey's testimony about the 10% assessment to his testimony about the value of their research and development expenditure was a permissible and appropriate sanction for their inadequate Rule 26 disclosure. *See id.*; Fed. R. Civ. P. 37(c)(1) (recognizing that, in "addition to or instead of" the sanction of exclusion, the court may "impose other appropriate sanctions").  It may not have been the sanction Defendant wanted, but it was certainly within the Court's considerable discretion.[8]   *See Henderson*, 72 F.4th at 1243.

For all those reasons, the Court was not required to strike, exclude, or tell the jury to disregard Downey's testimony about the $2.6 million damages assessment.   Accordingly, judgment as a matter of law is not appropriate based on the Court's decision not to give such a curative instruction. *See Taylor*, 940 F.3d at 591.

### 2.  Plaintiffs' evidence of compensatory damages was sufficient

Defendant's second argument in support of judgment as a matter of law — that Plaintiffs' evidence of compensatory damages was insufficient — fares no better.  Defendant asserts no reasonable jury could have rendered the verdict here because, in his view, the evidence was overwhelming that Plaintiffs suffered no actual damages. *See* ECF No. [300] at 4–7.  But

---

[8] As Defendant himself notes, ECF No. [300] at 11 n.2, the Eleventh Circuit has not yet decided "whether or not, even in the absence of substantial justification or harmlessness, the fact of an untimely disclosure under Rule 26 automatically requires exclusion of the evidence rather than one of the 'other appropriate sanctions' suggested in Rule 37(c)(1)(C)." *See Crawford*, 977 F.3d at 1342. And until it does so, the Court retains its discretion to fashion the sanctions remedy it finds most appropriate in each situation.

Defendant confuses "actual" damages with "tangible" damages. *See, e.g.*, *Johnston v. Borders*, 36 F.4th 1254, 1269 n.24 (11th Cir. 2022) (noting "compensatory damages cover both mental and physical aspects of the injury, tangible and intangible," including "damage" to "career and reputation" (citation modified)); *Scheib v. Fla. Sanitarium & Benev. Ass'n*, 759 F.2d 859, 863 (11th Cir. 1985) (recognizing that there are "'tangible' and 'intangible' elements of damages"); *cf. F.A.A. v. Cooper*, 566 U.S. 284, 294 n.4 (2012) ("If 'actual damages' can mean 'tangible damages,' then it can be construed not to include intangible harm, like mental and emotional distress.").

Plaintiffs admittedly presented no evidence showing they suffered tangible damages like lost profits. ECF No. [294] at 136; *see also Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023) (recognizing "tangible harms" include "physical or monetary harms" (quotation marks omitted)). But Plaintiffs presented evidence showing they suffered intangible damages to their reputation, their goodwill, and the value of their research and development. *See* ECF No. [294] at 136–37; *see also Fabry v. Comm'r*, 223 F.3d 1261, 1266 n.15 (11th Cir. 2000) (recognizing "intangible loss" includes "loss of reputation"); *Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 1086, 1088 (11th Cir. 1986) ("Actual injury need not be a pecuniary loss, however. Humiliation, embarrassment, harm to reputation and other intangible losses constitute actual injuries as well."); *Zhang v. GA Telesis, LLC*, No. 17-CV-61984-UU, 2018 WL 11476109, at *5 (S.D. Fla. May 22, 2018) ("Although goodwill is intangible, and the allegation therefore somewhat vague, loss of goodwill is a recoverable damage."). And as Plaintiffs argue and caselaw confirms, those intangible damages are both "real" and "actual." *See* ECF No. [294] at 201–02; *Nutradose Labs, LLC v. Bio Dose Pharma, LLC*, 710 F. Supp. 3d 1200, 1234 (S.D. Fla. 2024) (recognizing "damage to the goodwill" as a component of "actual damages").

As the Court has already explained, Downey testified that Defendant's misconduct in downloading Plaintiffs' proprietary information "caused damage" to their "reputation and good will" because it had "an adverse effect on the value" of their research and development "through the threat and exposure of" their "trade secret information." *See* ECF No. [293] at 222. In Downey's assessment as Plaintiffs' founder, president, and CEO, they suffered damages in the amount of 10% of their research and development expenditure, which equated to $2.6 million. *See* ECF No. [293] at 222.  Because, "[g]enerally speaking, an owner of a business is competent to give his opinion on the value of his property," *see Taxinet Corp. v. Leon*, 114 F.4th 1212, 1225 (11th Cir. 2024) (citation modified), Downey's testimony on the impact of Defendant's actions on Plaintiffs' goodwill and reputation is sufficient evidence to support the jury's award of compensatory damages. *See Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 698 (5th Cir. 1975) (explaining that the Federal Rules of Evidence permit testimony by a corporate owner about his business' goodwill).

Along with Downey's testimony, Plaintiffs offered as evidence an email chain that included Downey and Plaintiffs' CFO and showed Plaintiffs' research and development expenditures.  *See* ECF No. [290-4] at 2; ECF No. [293] at 184–85. That email corroborated Downey's testimony that Plaintiffs had spent $26 million on those areas. *See* ECF No. [290-4] at 2; *Taxinet Corp.*, 114 F.4th at 1225 ("The owner of a business may give an opinion on value even if that opinion is partially informed by what others have said or written.").  Taken together, Downey's testimony and the email showing Plaintiffs' $26 million research and development spending provide sufficient support for the jury's award of compensatory damages to Plaintiffs. For that reason, judgment as a matter of law is not appropriate based on insufficient evidence. *See Chaney*, 483 F.3d at 1227 (noting that, on a Rule 50(b) motion, "a court's sole consideration of

the jury verdict is to assess whether that verdict is supported by sufficient evidence"). Accordingly, Defendant's Rule 50(b) Motion, **ECF No. [300]**, is **DENIED**.

## B.  New Trial Under Rule 59

Rule 50(b) permits a party to "include an alternative or joint request for a new trial under Rule 59" in a Rule 50(b) motion, *see* Fed. R. Civ. P. 50(b), and Defendant has done that here, *see* ECF No. [300] at 7, 17–20.  In the Rule 59 Motion, Defendant asks the Court to grant him a new trial under Rule 59 because: (1) the Court's decision not to allow him to testify remotely from Dubai over Zoom unduly prejudiced him, so he argues the trial was unfair; and (2) the verdict is contrary to the law and the evidence because it improperly awards both compensatory and nominal damages and improperly awards attorney's fees as nominal damages.  *See* ECF No. [300] at 7, 17–20.  The Court disagrees.

### 1.  The Court's denial of Defendant's motion to testify by Zoom was proper

Although defense counsel indicated during the final pretrial conference that Defendant would appear at trial in person, *see* ECF No. [282] at 47, he decided not to do so, *see* ECF No. [293] at 4–6.  Instead, on the morning trial was set to begin — a trial that had been specially set for seven months — defense counsel informed the Court and Plaintiffs that Defendant was having issues with his new company and did not want to buy the expensive airplane ticket from Dubai to Miami, so he had decided "he didn't want to spend the effort to come."  *See* ECF No. [293] at 4–6.  Defense counsel then asked the Court to allow Defendant to testify remotely from Dubai over Zoom.  *See* ECF No. [293] at 4–5.

After considering case law provided by Plaintiffs — case law Defendant did not challenge, the Court denied Defendant's oral motion to testify by Zoom.  *See* ECF No. [293] at 6–7, 137–38, 142–43.   The Court found Defendant had not "demonstrated good cause or compelling

27

circumstances" because he had not shown that "unexpected reasons" like "an accident or illness" had arisen to keep him from traveling for trial. *See* ECF No. [293] at 142–43. Defendant had just chosen not to attend in person "merely for his own convenience" and to minimize his costs. *See* ECF No. [293] at 142–43. The Court reiterated its denial after defense counsel explained that Defendant wanted to attend a hearing in a separate case in Dubai court the same week as this trial because Defendant had many months' notice of the specially set trial date (which was chosen by the Parties themselves) and could have asked for accommodations (like moving the trial date to later in the two-week trial period or testifying out of order) to be able to attend both proceedings in person. *See* ECF No. [293] at 6–7, 137–38, 142–47.

Later in the trial, after Plaintiffs rested their case without presenting portions of Defendant's deposition testimony, defense counsel made a second motion for Defendant to testify by Zoom. *See* ECF No. [294] at 85–91. The Court again denied the motion because Defendant's failure to attend the trial in person was his own choice, and Rule 32 does not permit the use of Defendant's deposition testimony when he "procured his own absence." *See* ECF No. [294] at 85–96; Fed. R. Civ. P. 32(a)(4)(B) (prohibiting use of deposition testimony if "it appears that the witness's absence was procured by the party offering the deposition"). The Court acknowledged defense counsel's contention that there is little difference between live testimony by Zoom and live testimony in the courtroom, but the Court noted neither Rule 32, Rule 43, nor the Parties' caselaw indicated live Zoom testimony is an appropriate substitute for live courtroom testimony. *See* ECF No. [294] at 85–96.

The Court's decision to deny Defendant's motion to testify by Zoom was an evidentiary ruling, and the "failure to admit highly probative evidence can at times warrant a new trial." *See* *Lockaby*, 2005 WL 8154687, at *4. But for that to be true, Defendant would have to meet a two-

step test: he would have to show that the Court improperly excluded evidence and that the exclusion had a substantial prejudicial effect on the verdict. *See id.*; *Martin-Viana*, 2025 WL 253414, at *3; *Complete Bus. Sols.*, 608 F. Supp. 3d at 1239.  Defendant cannot even meet step one.

Federal Rule of Civil Procedure 43 makes it abundantly clear that witness "testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence," the Rules themselves, "or other rules adopted by the Supreme Court provide otherwise." *See* Fed. R. Civ. P. 43(a).  Indeed, "the court may permit testimony in open court by contemporaneous transmission from a different location" only for "good cause in compelling circumstances." *See* Fed. R. Civ. P. 43(a).   The Court explained why Defendant had not shown good cause or compelling circumstances three different times, which can be summarized this way: Defendant made his own (last-minute) strategic choice not to appear in person for trial, and he based that choice on an evaluation of the potential benefits and detriments of appearing versus the potential benefits and detriments of not appearing.  *See* ECF No. [293] at 6–7, 137–38, 142–47; ECF No. [294] at 85–96.  In the end, Defendant decided that he was willing to forgo the ability to participate in his trial, including by testifying, in favor of saving himself the money and effort of flying to Miami and of attending the Dubai court proceeding instead.  *See* ECF No. [293] at 6–7, 137–38, 142–47; ECF No. [294] at 85–96.

Defendant argues the Court should have granted his second motion to testify by Zoom because "the change in circumstances when Plaintiffs rested their case" without using his deposition testimony "established the good cause and compelling circumstances to permit remote testimony" at that point.  *See* ECF No. [308] at 8.  But Defendant's second motion was no stronger than his first.  As the Court explained then, how a party presents evidence "is a strategy call," and

there was nothing improper about Plaintiffs deciding they did not need or want to use Defendant's deposition testimony in their case in chief. *See* ECF No. [294] at 92. Although Defendant thought trial "was going to go differently" and had "to pivot" when he learned of Plaintiffs' choice, the same was true when Defendant revealed at the last minute that he would not be attending in person. *See* ECF No. [294] at 92–93. In that situation, Plaintiffs "were a little bit blindsided" because they intended to call Defendant to testify, and "they had to pivot" their case. *See* ECF No. [294] at 92–93. Defendant had to do the same, but because he "procured his own nonappearance at trial" and could not meet the requirements of Rule 32(a)(4)(B) or Rule 43(a), he had to do so without being able to testify by Zoom. *See* ECF No. [294] at 92–93.

For those reasons, Defendant cannot show that the Court improperly excluded his testimony by Zoom, so Defendant cannot satisfy the two-step test required to demonstrate that an evidentiary ruling warrants a new trial. *See Lockaby*, 2005 WL 8154687, at *4; *Martin-Viana*, 2025 WL 253414, at *3. Accordingly, the Court concludes that Defendant has not shown his entitlement to a new trial based on the Court's rejection of his Zoom testimony. *See Alphamed*, 432 F. Supp. 2d at 1334; *Complete Bus. Sols.*, 608 F. Supp. 3d at 1239; *Lockaby*, 2005 WL 8154687, at *4; *Martin-Viana*, 2025 WL 253414, at *3.

### 2.   The Verdict Properly Awards Both Compensatory and Nominal Damages

Defendant's final argument is that the verdict is contrary to the law and the evidence because it improperly awards both compensatory and nominal damages and improperly awards attorney's fees as nominal damages. *See* ECF No. [300] at 7, 17–20. Plaintiffs contend, however, that the jury's award of both nominal and compensatory damages is proper because the law permits awarding nominal damages on their breach of fiduciary duty while at the same time awarding compensatory damages on their misappropriation claim. *See* ECF No. [305] at 19–20. The Court

30

agrees with Plaintiffs.

In the Amended Complaint, Plaintiffs sought punitive damages in their misappropriation, unfair competition, and breach of fiduciary duty claims. *See* ECF No. [120] at 10–15, 18–19.  But the jury instructions made clear that Plaintiffs' punitive damages request to the jury was tied to liability on their breach of fiduciary duty claim.  *See* ECF No. [284] at 12 ("You must decide whether, in addition to compensatory damages, or nominal damages, punitive damages are warranted as punishment to [Defendant] and as a deterrent to others. [Defendant] has admitted that he breached his fiduciary duty to [Plaintiffs] and that he unfairly competed against [Plaintiffs]. [Plaintiffs] claim[] that punitive damages should be awarded against [Defendant] for this conduct."). Similarly, the jury instructions made clear that Plaintiffs' exemplary damages request was tied to liability on their misappropriation claim.  *See* ECF No. [284] at 11 ("If you find that [Defendant] has engaged in willful and malicious misappropriation of the trade secrets, you may award 'exemplary' damages, that is, damages meant to make an example of [Defendant].").

As the Court and the Parties discussed during the charge conference, *see* ECF No. [294] at 135–40, Florida law permits the jury to award nominal damages on breach of fiduciary duty claims, *see Am. Sales & Mgmt. Org. LLC v. Lopez*, 373 So. 3d 1198, 1206 n.5 (Fla. 3d DCA 2023) (collecting cases); *Minotty v. Baudo*, 42 So. 3d 824, 836 (Fla. 4th DCA 2010) ("Where a breach of fiduciary duty is shown but no actual damages are proved, nominal damages may be awarded."); *Rocco v. Glenn, Rasmussen, Fogarty & Hooker, P.A.*, 32 So. 3d 111, 116 n.2 (Fla. 2d DCA 2009) ("[A] defendant may be liable for nominal damages for a breach of fiduciary duty even if the plaintiff cannot prove actual damages.").[9]  And "Florida courts have held" that "a breach of

---

[9] The Court had earlier determined Florida substantive law applies to the breach of fiduciary duty claim. *See* ECF No. [294] at 139; ECF No. [282] at 17, 31 (noting Defendant agreed "to proceed under Florida law").

fiduciary duty will support an award of punitive damages, even if no compensatory damages are awarded." *Laney v. Am. Equity Inv. Life Ins. Co.*, 243 F. Supp. 2d 1347, 1354 (M.D. Fla. 2003); *cf. Ault v. Lohr,* 538 So. 2d 454, 456 (Fla. 1989) (holding that "a finding of liability alone will support an award of punitive damages even in the absence of financial loss for which compensatory damages would be appropriate" (quotation marks omitted)).  Under Florida law, then, it would be legally proper for a jury to award punitive damages for a claim on which it awarded only nominal actual damages and not compensatory actual damages, as "nominal damages will be presumed from an encroachment upon an established right."  *See Ault*, 538 So. 2d at 456.

The sum total of the jury instructions and Florida law is this: the jury was legally empowered to award nominal damages and punitive damages on Plaintiffs' breach of fiduciary duty claim while at the same time awarding compensatory damages and exemplary damages on Plaintiffs' misappropriation claim.  Despite Defendant's argument that the jury was "confused and misapplied the law," *see* ECF No. [308] at 8–10, there is nothing legally inconsistent about the verdict's award of all four categories of damages Plaintiffs requested, *see Lopez*, 373 So. 3d at 1203 ("[F]or a verdict to be legally inconsistent, it must contain two material findings that legally cannot co-exist."); *Coba v. Tricam Indus., Inc.*, 164 So. 3d 637, 643–44 (Fla. 2015). While the Court acknowledges that the jury initially misunderstood its instructions as they related to the exemplary damages cap, *see* ECF No. [294] at 214–22, the final verdict form suffers from no such infirmity, *see* ECF No. [294] at 228–29; ECF No. [286].

Given the series of events as the jury deliberated and returned its verdict, however, there is of course the possibility that, as Defendant argues, the "jury was plainly confused and misapplied the law." *See* ECF No. [308] at 8–10.  But "the Seventh Amendment demands that, if there is a view of the case which makes the jury's answers consistent, this Court must adopt that view."

32

*Aquachem Co. v. Olin Corp.*, 699 F.2d 516, 521 (11th Cir. 1983). "It does not matter whether" Defendant "can suggest equally plausible reasons for the verdict that would require reversal" because the "test to be applied in reconciling apparent conflicts between the jury's answers is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted." *See id.* (quotation marks omitted). This is true even if "the form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict." *See id.* (quotation marks omitted).

For those reasons, "it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them." *Gallick v. Baltimore & O. R. Co.*, 372 U.S. 108, 119 (1963); *see also Tech. Res. Servs., Inc. v. Dornier Med. Sys., Inc.*, 134 F.3d 1458, 1464 (11th Cir. 1998). "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962). Courts "therefore must attempt to reconcile the jury's findings, by exegesis if necessary," before they "are free to disregard the jury's special verdict and remand the case for a new trial." *Gallick*, 372 U.S. at 119. Only if a court cannot reconcile the jury's findings can it conclude that there is a "fatal inconsistency" mandating a new trial. *See id.* at 120.

In keeping with its duty to adopt a view of the case that makes the jury's answers consistent, *see Aquachem*, 699 F.2d at 521, the Court concludes that the jury could have awarded nominal damages and punitive damages on Plaintiffs' breach of fiduciary duty claim while at the same time awarding compensatory damages and exemplary damages on Plaintiffs' misappropriation claim. That result is consistent with Florida law, the Amended Complaint, and the jury instructions, which is to say that it fairly can be said to represent a logical and probable decision on the relevant issues as submitted. *See id.* Stated in a more modern way, that reading of the jury verdict is legally

33

supportable. And because it is, the Court must resolve any apparent conflict that way. *See Ellerman Line*, 369 U.S. at 364; *Gallick*, 372 U.S. at 119; *Dornier*, 134 F.3d at 1464.

There is no fatal inconsistency in the jury's decision to award both compensatory damages and nominal damages. *See Gallick*, 372 U.S. at 120. The Court is thus not free to disregard the jury's verdict and grant Defendant's request for a new trial.[10] *See id.* at 119. So Defendant has not shown his entitlement to a new trial based on the jury's award of both compensatory damages and nominal damages. *See Complete Bus. Sols.*, 608 F. Supp. 3d at 1239. Accordingly, Defendant's Rule 59 Motion, **ECF No. [300]**, is **DENIED**.

## IV.    CONCLUSION

For the reasons explained above, Defendant's Motion for Judgment as a Matter of Law, or alternatively, an Order Granting a New Trial, **ECF No. [300]**, is **DENIED**.

**DONE and ORDERED** in Chambers in Miami, Florida on March 6, 2026.

_____

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record

---

[10] The jury's attempt to award attorney's fees as part of nominal damages does not change this result. *See* ECF No. [294] at 217. Although Defendant argues that "the solution to this error is not for the parties (and the Court) to pick and choose what parts of the verdict it should follow" but instead to hold a new trial, *see* ECF No. [308] at 10, Plaintiffs are correct that Defendant, not Plaintiffs, raised that issue with the jury, *see* ECF No. [305] at 20. For that reason, the Court agrees with Plaintiffs that Defendant invited any error in the jury's attempt to award attorney's fees as part of nominal damages. *See* ECF No. [305] at 20; *Sarras*, 575 F.3d at 1216. The Court also notes it has consistently indicated that "the entitlement to and amount of attorney's fees are a matter of law to be decided by the Court," *see* ECF No. [288] at 1 n.1, which Plaintiffs concede, *see* ECF No. [305] at 20. So there is no possibility Defendant will be subjected to an unlawful award of attorney's fees based on the verdict form, and there is no reason to resort to the drastic measure of granting a new trial to remedy that issue.