**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-CV-24868-ELFENBEIN

**PLITEQ, INC.**, *et al.*,

      Plaintiffs,

v.

**MAGED MOSTAFA**,

      Defendant.

_____/

## <u>ORDER ON MOTION FOR ATTORNEY'S FEES</u>

**THIS CAUSE** is before the Court on Plaintiffs Pliteq, Inc. ("Pliteq") and Pliteq Building Materials, LLC's ("PBM") Motion for Attorney's Fees (the "Motion"), ECF No. [310], in which Plaintiffs request an award of $848,133.45 in attorney's fees. Defendant, Maged Mostafa ("Defendant"), has since filed a Response in opposition to the Motion, ECF No. [314], and Plaintiffs have filed a Reply in support of the Motion, ECF No. [319]. For the reasons explained below, Plaintiffs' Motion, **ECF No. [310]**, is **GRANTED in part and DENIED in part**.

### I. INTRODUCTION

Because the Parties are familiar with the facts and the Court has recounted them in several earlier orders, *see* ECF No. [73]; ECF No. [214]; ECF No. [251], it includes only the most relevant details here. As the Court has noted before, this case arose out of a dispute between an employer (Pliteq and PBM, collectively "Plaintiffs") and a former employee (Defendant). Pliteq is a Canadian corporation that operates in the engineering and manufacturing fields. *See* ECF No. [120] at 2. PBM is a Pliteq affiliate limited liability company organized under the laws of the United Arab Emirates ("UAE") and based in Dubai. *See* ECF No. [120] at 2. Defendant is a

resident of Dubai, who from 2018 to 2023 was PBM's General Manager. *See* ECF No. [120] at 2, 5.

During his employment with Plaintiffs, Defendant signed two documents important to this case: an employment contract, *see* ECF No. [121-1], and a standalone confidentiality agreement, *see* ECF No. [121-2]. *See* ECF No. [120] at 16–17. In those documents, Defendant agreed to "a strict confidentiality provision prohibiting the use or disclosure of PBM's confidential and trade secret information." *See* ECF No. [120] at 5–6. After an investigation revealed Defendant had performed an "unauthorized mass-download of Plaintiffs' most sensitive financial and trade secret Information," Plaintiffs fired Defendant in November 2023. *See* ECF No. [120] at 7–10. When Defendant refused to confirm that he had deleted Plaintiffs' proprietary information and refused to return his company-issued cellphone and laptop, Plaintiffs filed this lawsuit in December 2023. *See* ECF No. [1] at 7–9; ECF No. [120] at 2, 7–10.

In their Amended Complaint, filed in August 2024, Plaintiffs asserted seven claims: misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), unfair competition, injunctive relief, breach of employment contract, breach of confidentiality agreement, breach of fiduciary duty, and conversion. *See* ECF No. [120] at 10–20. Plaintiffs sought punitive damages in their misappropriation, unfair competition, and breach of fiduciary duty claims. *See* ECF No. [120] at 10–15, 18–19. Plaintiffs also requested "damages addressing the consequences of Mostafa's misconduct" in their misappropriation and unjust enrichment claims, *see* ECF No. [120] at 12–15, and damages addressing the harm to their "reputation and goodwill" in the breach of fiduciary duty claim, *see* ECF No. [120] at 19.

Although Defendant initially contested Plaintiffs' claims, at the pretrial conference, he "stipulated to liability on all counts of the Amended Complaint," so the jury trial proceeded "only

on the issues of whether Defendant acted willfully and whether Plaintiffs sustained any damages, including compensatory and punitive damages." *See* ECF No. [268].  Following a two-day trial, the jury ultimately returned a verdict finding that Plaintiffs had sustained all four categories of damages (compensatory, nominal, exemplary, and punitive), awarding Plaintiffs $500,000 in compensatory damages, $100 in nominal damages, $1 million in exemplary damages, and $1.6 million in punitive damages.  *See* ECF No. [294] at 228–29; ECF No. [286].  The Court thereafter entered a Final Judgment in favor of Plaintiffs and against Defendant in the amount of $3,110,000, which was later amended solely to add clarifying language regarding the injunctive relief.  *See* ECF No. [228]; ECF No. [327].

Plaintiffs thereafter timely filed the Motion, ECF No. [310], in which they explain that under the DTSA, a court may award attorney's fees to a prevailing party "if the 'trade secret was willfully and maliciously misappropriated.'"  *See* ECF No. [310] at 3 (quoting 18 U.S.C. § 1836(b)(3)(C)).  And Plaintiffs argue that they were the prevailing parties at trial as they received relief on each of their claims in the form of a permanent injunction as well as a damages award. *See* ECF No. [310] at 4.  Further, Plaintiffs aver that the jury's award of punitive damages in their favor further supports the entry of an attorney's fees award here.  *See* ECF No. [310] at 4.

Regarding the reasonableness of their fees, Plaintiffs provided the Court with the time entries for all lawyers and paralegals who worked on this matter; the Declaration of lead counsel Kevin Kaplan ("Kaplan"), which sets forth the rates for each timekeeper; the biographies of each paralegal who worked on the case; the Declaration of attorney Jacqueline Arango ("Arango"), a shareholder at Akerman LLP in her capacity as an attorney's fees expert in which she attests to the reasonableness of the amounts, rates, and hours expended in this case; and the Declaration of Terry Jesse ("Jesse"), the Executive Director for the National Association of Legal Fee Analysis

("NALFA"), along with a survey of litigators in the Miami area, to establish the reasonableness of counsel's rate. *See* ECF No. [310] at 6; ECF No. [310-1], ECF No. [310-2]; ECF No. [310-3]; ECF No. [310-4]; ECF No. [310-5]; ECF No. [310-6]. Specifically, Plaintiffs ask the Court to reconsider the rates it previously established for attorneys Kaplan and Jared Whaley ("Whaley") in this matter, because, at the time of the Order Awarding Rule 37 Sanctions, the Court did not have the benefit of certain information, such as a survey from NALFA supporting the current market rates in South Florida and information about the quick legal market growth in the last five years in South Florida. *See* ECF No. [310] at 7. In further support, Plaintiffs argued that the claims in this case involving misappropriation of trade secrets under the DTSA, unfair competition, breach of fiduciary duty, conversion, and injunctive relief were all intertwined, making it impossible to divide up their time entries on a claim-by-claim basis. *See* ECF No. [310] at 8-10. Finally, Plaintiffs also took the position that Defendant waived any objection to the hourly rate or reasonableness of Plaintiffs' fees because Defendant failed to timely comply with Local Rule 7.3(a). *See* ECF No. [310] at 11.

In his Response, Defendant does not contest Plaintiffs' entitlement to an award of attorney's fees under the DTSA. *See generally* ECF No. [314]. Instead, Defendant first focuses on his own compliance with Local Rule 7.3(a), establishing that he timely provided his position on Plaintiffs' claim for attorney's fees within 21 days of receiving the draft Motion by providing legal authorities in support of his opposition, defense counsel's Declaration containing his hourly rate, and specific objections to Plaintiffs' time entries (mostly related to block billing). *See* ECF No. [314] at 1-4, 6-7. Regarding the reasonableness of the fees, Defendant takes issue with Plaintiffs' use of block billing throughout the entries and argues that, because of the block billing practice and the Court's inability to meaningfully determine whether the work done within such

entries is reasonable, it should exercise its discretion to conduct an across-the-board cut of Plaintiffs' attorneys fees, suggesting a 30% reduction. *See* ECF No. [314] at 8-10. Alternatively, Defendant asks the Court to reduce Plaintiffs' counsel's hourly rate to be consistent with the rates set forth in its prior Order Awarding Rule 37 Sanctions, ECF No. [179], but Defendant does not object to the hourly rate of the remaining timekeepers who worked on this case. *See* ECF No. [314] at 6-9, n.3.

In their Reply, Plaintiffs recede from and abandon their argument that Defendant waived his right to contest the hourly rate or the reasonableness of the billing entries.[1] *See* ECF No [319]. Instead, Plaintiffs focused their Reply on Defendant's failure to dispute their entitlement to attorney's fees under the DTSA, Defendant's failure to address Plaintiff's hourly rate evidence, and Defendant's argument regarding block billing. *See* ECF No. [319] at 2-5. Regarding the reasonableness of counsel's hourly rate, Plaintiffs explain that they made an extensive showing through the Declaration of Arango and the Declaration of Jesse along with a survey from NALFA, but Defendant failed to address or otherwise dispute this evidence. *See* ECF No. [319] at 2-3. And as to Defendant's block-billing argument, Plaintiffs aver that their work on the claims at issue here was inextricably intertwined, which made it impossible to adjust the entries for work done on individual claims, and that to the extent tasks were billed together, they were sufficiently descriptive to determine the services performed and the reasonableness of time spent on those tasks. *See* ECF No. [319] at 5.

Based on the Parties' briefing, the Court does not address whether Plaintiffs are entitled to an award of attorney's fees under the DTSA, as Defendant has conceded that point in his Response,

---

[1] *See, e.g.*, *Melendez v. Town of Bay Harbor Islands*, No. 14-CV-22383, 2014 WL 6682535, at *7 (S.D. Fla. Nov. 25, 2014) ("[The plaintiff] wholly fails to address this argument in her Response . . . , and therefore concedes the point." (citing *Glass v. Lahood*, 786 F. Supp. 2d 189, 210 (D.D.C. 2011)).

nor does the Court address whether Defendant waived his right to contest the hourly rate or reasonableness of the fees under Local Rule 7.3, as Plaintiffs conceded that point in their Reply. Instead, the Court focuses its analysis on the reasonableness of the timekeepers' hourly rates and the amount of hours expended to determine the appropriate lodestar.

## II.    LEGAL STANDARDS

To calculate attorney's fee awards, courts generally use the "lodestar" method. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Inj. Treatment Ctr.*, 2022 WL 17325834, at *2. "The most useful starting point for determining the amount of a reasonable fee" using the lodestar method "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (noting that the lodestar is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate" (quoting *Blum v. Stenson,* 465 U.S. 886, 888 (1984))). "[T]here is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66 (1986)).

"The first step in the computation of the lodestar is determining the reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* (quoting *Norman*, 836 F.2d at 1299). "The general rule is that the relevant market for purposes of determining the reasonable

6

hourly rate for an attorney's services is the place where the case is filed." *Barnes*, 168 F.3d at 437.

"The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which requires "more than the Declaration of the attorney performing the work." *Loranger*, 10 F.3d at 781 (citation and quotation marks omitted). Of course, the court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."[2] *Id.* (quotation marks omitted).

To aid in determining what reasonable hourly rate applies in each case, the Eleventh Circuit has approved of courts considering "the twelve factors discussed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)." *Id.* at 781 n.6; *see also Norman*, 836 F.2d at 1299. "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3.

"The next step in the computation of the lodestar is the ascertainment of reasonable hours." *Norman*, 836 F.2d at 1301. "Counsel for the prevailing party should make a good faith effort to

---

[2] Indeed, where "there is a lack of documentation or testimonial support the court may make the award on its own experience. Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing. Likewise, no additional evidentiary hearing or pleadings are required where fee counsel fails to provide evidence on some factor which it contends the court ought to take into account. It is perfectly proper to award attorney's fees based solely on Declarations in the record." *Norman*, 836 F.2d at 1303 (footnote and citations omitted).

exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. "In other words, the Supreme Court requires fee applicants to exercise 'billing judgment.'" *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 437). "This must necessarily mean that the hours excluded are those that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel. If it were otherwise, an inexperienced or unskillful attorney would face a double penalty. First, his hourly rate would be lowered and second, his time reduced." *Id.* (emphasis and citation omitted).

The "district court is charged with deducting for redundant hours. Redundant hours generally occur where more than one attorney represents a client. There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id.* at 1301–02. The "district court must deduct time spent on discrete and unsuccessful claims." *Id.* at 1302. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350; *see also Hensley*, 461 U.S. at 436–37 ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

As noted above, the "product" of the reasonable hourly rate and the number of hours reasonably expended on the litigation "is the lodestar." *See Bivins*, 548 F.3d at 1350. After determining the lodestar amount, courts can "adjust the fee upward or downward, including [by considering] the important factor of the results obtained." *Hensley*, 461 U.S. at 434 (quotation

8

marks omitted). "If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman*, 836 F.2d at 1302. "If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive." *Id.*; *see also Bivins*, 548 F.3d at 1350–51 ("When the number of compensable hours and the hourly rate are reasonable, a downward adjustment to the lodestar is merited only if the prevailing party was partially successful in its efforts."). "A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Norman*, 836 F.2d at 1302. "Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours. It is improper to make the reduction based on a simple ratio of successful issues to issues raised." *Id.* (citation omitted).

"[T]he determination of fees should not result in a second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quotation marks omitted). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* Whatever the court decides, it must "provide a concise but clear explanation of its reasons for the fee award. When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Hensley*, 461 U.S. at 437.

### III. DISCUSSION

As noted above, the Court's focus here is only on determining the appropriate lodestar because Defendant does not dispute Plaintiffs' entitlement to an attorney's fee award. The Court

9

first starts its analysis with a determination of the appropriate hourly rate for the timekeepers in this case and then turns to the reasonableness of the amount of hours expended in the litigation.

The lodestar is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. *See Barnes*, 168 F.3d at 427. Starting with the reasonable hourly rate, the Court must determine what the prevailing market rate in South Florida is for similar services by lawyers of skills, experience, and reputation reasonably comparable to those of Plaintiffs' counsel. *See Loranger*, 10 F.3d at 781; *Barnes*, 168 F.3d at 437. To do that, the Court may use its own knowledge and experience and may consider the twelve *Johnson* factors. *See Loranger*, 10 F.3d at 781; *Norman*, 836 F.2d at 1299. Ultimately, however, it is Plaintiffs' burden to prove the requested rate is in line with prevailing market rates. *See Loranger*, 10 F.3d at 781.

Here, Defendant does not dispute the rates of the following timekeepers: attorney Sean Parys ($500), attorney Amanda Comas ($500), attorney George Kyriakopoulos ($400), paralegal Juan Hernandez ($250), paralegal Michael Candler ($175), and paralegal Haydrich Estrada ($250). *See* ECF No. [314] at 6, n.3. Instead, as an alternative to his request for a 30% across-the-board cut for block billing, Defendant asks the Court to consider reducing the hourly rate of attorney Kaplan in the amount of $895 and attorney Whaley in the amount of $595 to be consistent with the rate the Court applied in its Order Awarding Rule 37 Sanctions, ECF No. [179]. Plaintiffs, on the other hand, have asked the Court to reconsider their rates, providing the Court with evidence that they are consistent with the prevailing rates in the South Florida legal community for commercial litigators. Thus, the Court first starts with determining Kaplan and Whaley's hourly rates before moving on to assess their billing judgment.

To support their position, Plaintiffs first provided Kaplan's Declaration in which he states that he is President of his law firm, Coffey Burlington, a 1989 graduate from Duke University School of Law, a member of the California and Florida Bars, and has practiced continuously in Florida since 1992. *See* ECF No. [310-1] at 2. The Declaration notes that Kaplan's "primary practice area is commercial litigation" and that he has "extensive experience practicing before State and Federal courts." *See* ECF No. [310-1] at 2. He further explains that he has "actively litigated and tried matters ranging from finance, banking, and partnership disputes, to trademark, copyright, unfair competition, construction defect, and contract claims." *See* ECF No. [310-1] at 2.

As for Whaley, the Declaration notes that he graduated from George Washington University School of Law in 2009, is a member of the Florida, New Jersey, and District of Columbia Bars, and has practiced continuously in Florida since 2013. *See* ECF No. [310-1] at 3. It also notes that his "primary practice area is commercial litigation, and he has extensive experience in both State and Federal courts." *See* ECF No. [310-1] at 3. Finally, it avers that Whaley "has actively litigated and tried civil matters ranging from construction defect, finance, insurance, trade secret, and contract claims, to criminal matters including conspiracy, money laundering, bribery, homicide, and organized fraud." *See* ECF No. [310-1] at 3.

When the Court previously reduced Kaplan's and Whaley's rates to $700 and $500 respectively, the Court noted that the Declaration Plaintiffs presented in support of their fees at the time did "not contain details about any other attorneys in the relevant legal community (which in this case is South Florida) with skills, experience, and reputations reasonably comparable to Kaplan or Whaley." *See* ECF No. [179] at 7. Rather, the Court noted that Plaintiffs' then-Declaration summarily stated, without explanation, that their law firm considers Kaplan's and

Whaley's "rates to be reasonable and to reflect market rates compared to other lawyers with similar practices and levels of experience practicing in this jurisdiction."  *See* ECF No. [179] at 7. However, this time, Plaintiffs have indeed supported their rates with persuasive information about the relevant South Florida legal community.  Particularly, Plaintiffs have supplied the Court with Arango's Declaration.  She is a shareholder at Akerman LLP, has been a member of the Florida Bar since 1987, and works on commercial litigation matters, such as "contractual disputes, civil fraud claims, anti-money laundering regulations, securities, class action defense, and insolvency." *See* ECF No. [310-5] at 3.  Arango explains that Kaplan's and Whaley's hourly rates "are in keeping with hourly rates customarily charged in this locality for legal services comparable in nature," noting that Kaplan's rate of $895 an hour "is actually at the lower end of hourly rates customarily charged in the Miami market by commercial litigators with over 20 years of experience, which typically exceed $900 per hour."  *See* ECF No. [310-5] at 5. As an example, Arango states that her hourly rate is $1,220 per hour, which is 30% higher than Kaplan's hourly rate.  *See* ECF No. [310-5] at  3, 5.  Arango also explains in her Declaration that developments in the South Florida legal market affected the rates for commercial litigation during and after the COVID-19 pandemic.  *See* ECF No. [310-5] at 8.  Specifically, due "to an influx of companies and capital" during this timeframe, there was a demand for "high-quality legal services," which led to national firms opening offices in Miami between 2021 and 2023, which in turn "dramatically increased market rates for legal services, including commercial litigators."  *See* ECF No. [310-5] at 8-9.  By way of example, Arango explains that her rate increased from $850 in 2021 to $1,220 in 2025 and Kaplan's rate increased from $625 in 2021 to $895 in 2023.  *See* ECF No. [310-5] at 9.

In addition, Plaintiffs provide Jesse's Declaration, who serves as the Executive Director of NALFA, a "non-profit professional association for the legal fee analysis field" that "publishes an annual Litigation Hourly Rate Survey" containing "the nation's largest and most comprehensive survey or study of billing rates in civil litigation across the United States." *See* ECF No. [310-6] at 2.  In his Declaration, Jesse explains that the law firm of Coffey Burlington retained him "to conduct a survey of hourly billing rates for complex federal litigation in the Miami market" and that, as part of that survey, NAFLA reached out to its database of 9,511 attorneys in Miami via email.  *See* ECF No. [310-6] at 3.  In response to this survey, Jesse states that there were 246 qualified participants and, of those participants, "89 of the 111 respondents (80.9%) with more than 20 years of experience had an hourly rate of $800 or higher" and among that subset of respondents, 64 of them "had an hourly rate of $900 or more," meaning that "58% of the respondents with more than 20 years of experience had hourly rates in excess of $900."  *See* ECF No. [310-6] at 3.

The Court finds the foregoing evidence showing the increase in hourly rates within the South Florida legal community during and following the COVID-19 pandemic coupled with the survey evidence of hourly rates of lawyers with more than 20 years of experience within this legal market to be persuasive.  Based on the foregoing evidence, the Court finds that Kaplan's and Whaley's respective hourly rates of $895 and $595 are reasonable and commensurate with the rates charged by federal commercial litigators in South Florida.

Moving to the second step in the lodestar analysis, the Court must determine the number of hours reasonably expended on the litigation.  *See Barnes*, 168 F.3d at 427.  In doing so, the Court has a duty to exercise "billing judgment" if counsel has not, including by deducting redundant hours and hours billed for discrete and unsuccessful claims and by reducing excessive

hours. *See Norman*, 836 F.2d at 1301–02; *Hensley*, 461 U.S. at 434, 437. If a court determines that the number of hours claimed is unreasonably high, it may either attempt to identify specific hours that should be eliminated or reduce the requested hours with an across-the-board cut. *See Bivins*, 548 F.3d at 1350; *Hensley*, 461 U.S. at 436–37.

Here, the Court starts off by noting that Plaintiffs have already eliminated from their fee request the amount of attorney's fees previously awarded as a discovery sanction against Defendant. Specifically, Plaintiffs discounted the total sum by $15,830. *See* ECF No. [310] at 8. The question then remains whether the remainder of Plaintiffs' time entries are reasonably compensable.

Plaintiffs focus their analysis by arguing that their work in this case involved claims that were inextricably intertwined, explaining that the claims under the DTSA and for breach of contract, unfair competition, breach of fiduciary duty, conversion, and injunctive relief could not be parsed out into separate time entries, making "allocation" "neither feasible nor appropriate." *See* ECF No. [310] at 8-10. Defendant does not take issue with this argument or otherwise suggest that Plaintiffs' counsel should have made efforts to allocate and identify work done on each individual claim within the Amended Complaint. *See* ECF No. [314] at 8-9. Instead, Defendant argues that Plaintiffs' "fee claim is rife with block billing" so the Court should make an across-the-board cut of their attorney's fees. *See* ECF No. [314] at 8-9.

"'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012). The Eleventh Circuit has noted that block billing is a problem because imprecise billing records "make[] it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular

14

CASE NO. 23-CV-24868-ELFENBEIN

task in th[e] litigation" when "all the tasks performed by an attorney on a given day [do not] break[] out the time spent on each task." *See Barnes*, 168 F.3d at 429. Indeed, the opponent should not be penalized for such imprecise billing practices, so in such instances, many courts have applied across-the-board reductions "to offset the effects of block billing." *Ceres Env't Servs.*, 476 F. App'x at 203 (citing *Kearney v. Auto–Owners Ins. Co.,* 713 F. Supp. 2d 1369, 1377–78 (M.D. Fla. 2010); *Lil' Joe Wein Music, Inc. v. Jackson,* 2008 WL 2688117 at *13 (S.D. Fla. 2008)).

Indeed, courts in this Circuit routinely reduce the fee award to avoid penalizing the opponent for such imprecision in timekeeping, noting that it becomes particularly difficult to ascertain the reasonableness of an attorney's billing when the billing entries group entirely *unrelated* tasks together in a single entry. *See Ceres Env't Servs.,* 476 F. App'x at 203 (affirming a 10% reduction in counsel's hours to address the block billing issue when the district court recognized that, although some entries were informative, other entries routinely included multiple separate tasks or otherwise vague language, making it difficult for the court to ascertain the number of hours devoted to each task in the litigation); *Molina v. Kijakazi*, No. 22-CV-21480, 2024 WL 4501033, at *2 (S.D. Fla. Oct. 16, 2024) (reducing fee award only by 5% due to block billing in entries reflecting time spent on legal research, reviewing the transcript, and drafting a motion for summary judgment because the block billing was not as egregious when the tasks possessed "an inherent connection."); *Hiscox Dedicated Corp. Member, Ltd. v. Matrix Grp. Ltd., Inc.*, No. 09-CV-2465-T-33AEP, 2012 WL 2226441, at *5 (M.D. Fla. June 15, 2012) (applying a 20% reduction when "not a single page exists without a block billed entry among the hundreds of pages of timesheets"); *Lil' Joe Wein Music, Inc.*, 2008 WL 2688117 at *12 (reducing the amount of recoverable attorney's fees by 20% when attorneys repeatedly billed eight or more unrelated tasks into one entry).

Here, the Court agrees that Plaintiffs' time entries are replete with block billing.  Indeed, Defendant objected to 347 of the 542 billing entries because of block billing.  *See* ECF No. [314] at 5, n. 2; ECF No. [314-1] at 27-45.  However, the Court must look at the individual billing entries to determine whether it can ascertain the amount of hours expended on the tasks. And in many instances, the Court determines that the block billing entries are sufficiently related, descriptive and discrete, allowing the Court to reasonably ascertain whether the amount of time spent on those tasks was reasonable.  However, the Court finds that various time entries reflect instances in which counsel billed large chunks of time for unrelated tasks, making it impossible for the Court to determine how much time was spent on each task and whether the time spent was reasonable.  For example:

- On March 29, 2024, Whaley billed 4.3 hours for the following tasks: "Review paperless order on default motions; conferral with clerk of courts; prepare notice of filing and default motion; finalize and file same; continued research & drafting re: proposed order of injunction including findings of fact and conclusions of law; status email to client."

- On April 2, 2024, Whaley billed 8.4 hours for the following tasks: "Review Dropbox response & objections; meet and confer with Dropbox counsel re: same; research re: same; memo to Dropbox re: certain legal objections; status updates to team; continued draft re: motion for final judgment of injunction, proposed injunction, and supporting documents."

- On May 6, 2024, Whaley billed 4.2 hours for the following tasks: "Continued drafting & finalize motion to expedite; confer with Mr. Kaplan & team re: same;

16

continued research & analysis re: injunction; research & analysis re: opposition to Mostafa's motion to vacate default & quash service."

- On May 23, 2024, Whaley billed 7.3 hours for the following tasks: "Prep for and attend discovery hearing; Teams meeting with UAE counsel; emails with client re: additional document collection; review & analyze Defendant's motion to dismiss based on personal jurisdiction; research & analysis re: response in opposition to same."

- On June 4, 2024, Whaley billed 8.7 hours for the following tasks: "Continued draft of response to motion to dismiss; finalize & file preliminary injunction motion; meet & confer with opposing counsel; email to chambers re: discovery hearing."

- On June 5, 2024, Whaley billed 9.8 hours for the following tasks: "Coordinate various hearings with chambers and opposing counsel; prepare notice of discovery hearing and supporting materials; prepare and transmit business records Declaration to DropBox counsel; call with client re: status; research re: various issues; continued draft opposition to motion to dismiss; finalize and file same."

- On June 10, 2024, Whaley billed 5.3 hours for the following tasks: "Hearing re: status conference; legal research & analysis re: various issues; document review re: production to defendant; coordinate document production; call with expert re: report and additional documents; Teams meeting with Dubai counsel and client."

- On June 18, 2024, Whaley billed 6.8 hours for the following tasks: "Revise and circulate proposed confidentiality agreement; meet and confer with opposing counsel, prep for depo and hearing; confer with team re: open items; confer with

expert re: report; prepare notice of intent to rely upon business records and supporting documents."

*See* ECF No. [314-1] at 27-34.  These are a handful of examples of block billing on unrelated tasks within the hundreds of billing entries.  And while not all the block billing entries suffer from the same flaws — that is, grouping unrelated tasks into one billing entry for a large chunk of time — many of them do.

As the Supreme Court has explained, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley,* 461 U.S. at 437 (1983).  Because the billing records here in many instances do not allow the Court to identify the amount of time expended on particular tasks to determine their reasonableness, the Court will apply an across-the board cut.  However, the Court does not agree with Defendant that the block billing is so egregious as to warrant a 30% cut as suggested. This is because many of the block billed entries were sufficiently descriptive and for small chunks of time, allowing for meaningful review.  The Court also recognizes that a significant amount of work went into this litigation.  Indeed, this case was heavily litigated from its inception with significant motion practice and complex issues, culminating with trial and post-trial motions. Nonetheless, the complexity of the issues and the disputed nature of the litigation does not excuse Plaintiffs' counsel from parsing out the particular tasks performed on behalf of Plaintiffs at each step of the litigation, especially when those tasks are unrelated to one another, as set forth in the examples above, and for large blocks of time.  As a result, the Court finds that a 10% across-the-board reduction is appropriate to counter the problem with counsel's block-billed entries.

CASE NO. 23-CV-24868-ELFENBEIN

Accordingly, the Court will reduce the total amount of recoverable fees to $763,320.10 ($848,133.45 - $84,813.34 = $763,320.10).

## IV.      CONCLUSION

Accordingly, Plaintiffs' Motion for Attorney's Fees, **ECF No. [310]**, is **GRANTED in part and DENIED in part**.  The Court **AWARDS** Plaintiffs **$763,320.10** in attorney's fees.

**DONE and ORDERED** in Chambers in Miami, Florida on March 30, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record

19